LARKIN HOFFMAN DALY & LINDGREN Ltd.
BRUCE J. DOUGLAS (*Pro Hac Vice,* SBN 23966MN)
WILLOW J. NAJJAR (*Pro Hac Vice,* SBN 320948MN)
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, MN 55431-1194
Phone: 952.896.1569
Fax:    952.842.1717

Attorneys for Defendant THE BERGQUIST COMPANY


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


MICHEL GELINAS,                        )     NO. 08-CV-02137 (PVT)
                                       )
                 Plaintiff,            )
                                       )     **DECLARATION OF**
        v.                             )     **BRUCE J. DOUGLAS**
                                       )
THE BERGQUIST COMPANY,                 )
                                       )
                 Defendant.            )
_____)


I, Bruce J. Douglas, declare that:

1.      I am an attorney with the law firm of Larkin, Hoffman, Daly & Lindgren, Ltd.  I am one of the attorneys for Defendant, The Bergquist Company ("Bergquist"), in the above-entitled action.

2.      Attached hereto as **Exhibit A** is a true and correct copy of the Complaint filed in the action commenced in the U.S. District Court for the District of Minnesota on February 28, 2008.


DECLARATION OF BRUCE J. DOUGLAS - 1

1103159v1 29501/0004

3.      Attached hereto as **Exhibit B** is a true and correct copy of the March 27, 2008 letter to Gelinas with the Rule 4 Notice of Lawsuit and Request for Waiver of Service of Summons in the Minnesota action.  Also attached is a true and correct copy of the returned receipt card noting the date of delivery of April 1, 2008.

4.      Attached hereto as **Exhibit C** is a true and correct copy of the Affidavit of Personal Service upon Gelinas of the Summons and Complaint in the Minnesota action served upon him on May 13, 2008.

5.      Attached hereto as **Exhibit D** is a true and correct copy of Bergquist's Motion to Compel Arbitration filed in the District of Minnesota on June 4, 2008.

6.      Attached hereto as **Exhibit E** is a true and correct copy of the Notice of Hearing scheduled for July 18, 2008 in the District of Minnesota.

7.      Attached hereto as **Exhibit F** is a true and correct copy of The Bergquist Company's Claim Form dated February 28, 2008 and which was filed with the National Arbitration Forum (NAF) on March 18, 2008.  Also attached is a copy of the Proof of Service of same.

8.      Attached hereto as **Exhibit G** is a true and correct copy of the letter dated March 18, 2008 from NAF advising that the case was accepted and assigned a file number.

9.      Attached hereto as **Exhibit H** is a true and correct copy of Response, Proof of Service, Counterclaim, Counterclaim Proof of Service, dated May 5, 2008 and all associated documents filed by Gelinas with the NAF.

DECLARATION OF BRUCE J. DOUGLAS - 2

11.     Attached hereto as **Exhibit J** is a true and correct copy of the NAF's letter staying the Arbitration proceeding, dated May 20, 2008.

12.     Attached hereto as **Exhibit K** is a true and correct copy of Gelinas' letter to the NAF seeking a Participatory Hearing to resolve the issues raised by the parties at the NAF, dated May 23, 2008.

13.     Attached hereto as **Exhibit L** is a true and correct copy of Bergquist's offer of employment to Gelinas, dated and executed on April 12, 2004.

14.     Attached hereto as **Exhibit M** is a true and correct copy of the Non-Competition, Non-Solicitation and Confidentiality Agreement dated May 3, 2004.

15.     Attached hereto as **Exhibit N** is a true and correct copy of the Separation Agreement and General Release dated October 23, 2007 and signed by Gelinas and dated by him November 26, 2007.

16.     Attached hereto as **Exhibit O** is a true and correct copy of relevant parts of Bergquist's RSM NA Sales Incentive Compensation Plan FY07 (policy) dated February 5, 2007.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 5, 2008 at Minneapolis, Minnesota.

Bruce J. Douglas

1200057.1

DECLARATION OF BRUCE J. DOUGLAS - 3

1

CERTIFICATE OF SERVICE

2

I certify that on the 6th day of June, 2008 I mailed a copy of the foregoing Declaration of

3

Bruce J. Douglas by U.S. Mail, postage prepaid to counsel of record for Plaintiff Michael

4

Gelinas, whose address is:

5

6      Lisa Chapman, Esq.
       Nixon Peabody, LLP
7      200 Page Mill Road, Suite 200
       Palo Alto, CA 94306
8

9

10                                              /s/ Beba Maletic-Arsov
                                                BEBA MALETIC-ARSOV
11

12

13     1200057.1

14

15

16

17

18

19

20

21

22

23

24

25

26


DECLARATION OF BRUCE J. DOUGLAS - 4

# <u>EXHIBIT A</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------

The Bergquist Company,                          File No. _____

              Plaintiff,

      v.                                       **COMPLAINT**

Michel Gelinas,

              Defendant.

------------------------------------------

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. § 1332, because the parties are citizens of different states (California and Minnesota).

2.     The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3.     Venue is proper in this Court because the parties' Agreements at issue specifically provide that venue will be in Minnesota and Defendant has consented to jurisdiction in the State and Federal courts in Hennepin County, Minnesota.

## THE PARTIES

4.     The Plaintiff, The Bergquist Company ("Bergquist"), is a Minnesota corporation. Its principal place of business is in Chanhassen, Minnesota.

5.     Upon information and belief, the Defendant, Michel Gelinas is citizen of the State of California.

## BACKGROUND FACTS

6.     The Bergquist Company is in the business of manufacturing and supplying thermal management products and other products.

7.      Michel Gelinas was formerly employed with The Bergquist Company as a Regional Sales Manager.

8.      On or about May 3, 2004, The Bergquist Company and Mr. Gelinas entered into a Non-Competition, Non-Solicitation and Confidentiality Agreement.

9.      On or about October 23, 2007, Mr. Gelinas' employment with The Bergquist Company ended on an amicable basis.

10.     Mr. Gelinas executed a Separation Agreement and General Release on November 26, 2007.

11.     The Separation Agreement contains the following arbitration provision:

> 6.      Any controversy or claim arising out of or relating to this Agreement, or its breach, or to the employment relationship between the Employee and the Company, shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota. Such arbitration shall proceed in accordance with the then governing rules of the National Arbitration Forum (NAF). Judgment upon the award rendered may be entered and enforced in any court of competent jurisdiction. It is agreed that the parties shall choose a single, neutral arbitrator from among a panel of not less than seven (7) proposed arbitrators, and that the parties may have no more than two (2) panels of arbitrators presented to them by the NAF. The parties agree that they shall each bear their own costs associated with the arbitration, including any filing fee to be paid by them and their own legal counsel expenses. The parties further agree that they shall share equally in the reasonable costs and the fees of the neutral arbitrator.

12.     On or about January 23, 2008, Bergquist learned of Mr. Gelinas' employment or working relationship with one or possibly more of its competitors.

13.     On February 5, 2008, Bergquist, through its legal counsel, informed Mr. Gelinas of the claimed breach of his Agreements and requested that he refrain from any activities in violation thereof.

2.

14.     On February 28, 2008, Bergquist filed an Initial Claim/Demand for Arbitration with the National Arbitration Forum (NAF).

## FIRST CAUSE OF ACTION:  ORDER TO COMPEL ARBITRATION

15.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs 1 through 14 as if fully set forth herein.

16.     The Separation Agreement compels the parties to participate in arbitration in Minneapolis, Minnesota.

17.     The making of the Agreements, including the provision to submit all disputes to arbitration, is not at issue.

18.     Pursuant to the United States Arbitration Act (9 U.S.C. § 4) and the parties' Agreement, Plaintiff requests that this Court issue an Order compelling the Defendant to engage in arbitration in Minneapolis, Minnesota.

## SECOND CAUSE OF ACTION:  ORDER STAYING ALL JUDICIAL PROCEEDINGS

19.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs 1 through 18 as if fully set forth herein.

20.     Pursuant to the United States Arbitration Act (9 U.S.C. § 3) and the parties' Agreements, Plaintiff requests that this Court Order that all other judicial proceedings are stayed pending arbitration.

WHEREFORE, Plaintiff requests that this Court:

1.    Order that the parties engage in arbitration in Minneapolis, Minnesota.

2.    Order that all other judicial proceedings are stayed in light of this action and the arbitration provision in the parties' Agreements.

3.    Award Plaintiff its costs and reasonable attorneys' fees incurred in this action.

4.    Grant Plaintiff such other and further relief as this Court deems just and equitable in the premises.

Dated:    2/28/08

Bruce J. Douglas (23966)
Larkin Hoffman Daly & Lindgren Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota  55431-1194
Telephone:  952-896-1569
Facsimile:  952-842-1717
Email:  bdouglas@larkinhoffman.com

ATTORNEYS FOR PLAINTIFF
THE BERGQUIST COMPANY

1187364.1

4.

# EXHIBIT B



**Larkin Hoffman Daly & Lindgren Ltd.**

1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

GENERAL: 952-835-3800
FAX:    952-896-3333
WEB:    www.larkinhoffman.com

March 27, 2008

**CONFIDENTIAL**

Mr. Michel Gelinas                          **VIA CERTIFIED MAIL**
2380 Dryden Avenue                **RETURN RECEIPT REQUESTED**
Gilroy, CA 95020                         **7004 0550 0001 5172 8636**

Re:    The Bergquist Company v. Michel Gelinas
       U.S. D.C. – Minn. Court File No. 08-CV-569 DWF/AJB

Dear Mr. Gelinas:

As you know, we represent The Bergquist Company.  I write to inform you that The Bergquist Company has initiated legal action in the Minnesota District of the U. S. District Courts.

Enclosed, in accordance with Rule 4 of the Federal Rules of Civil Procedure, are the following:

1.     Notice of a Lawsuit and Request to Waive Service of a Summons;

2.     A copy of the filed Complaint; and

3.     Two copies of a Waiver of the Service of a Summons.

One of the waivers should be signed by you and returned to me in the postage-paid envelope also enclosed.  Your signature on this form indicates only that you waive the service of a summons. Please read the waiver carefully.

If you should have any questions regarding this matter, please feel free to contact me.

Very truly yours,

Bruce J. Douglas, for
Larkin Hoffman Daly & Lindgren Ltd.

Enclosures

1191762.1

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired. <br> ■ Print your name and address on the reverse so that we can return the card to you. <br> ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature <br> x _Michel_ ☐ Agent ☐ Addressee <br> B. Received by ( Printed Name)    C. Date of Delivery   4-1-08 |
| 1. Article Addressed to: <br><br><br> Mr. Michel Gelinas <br> 2380 Dryden Avenue <br> Gilroy, CA 95020 | D. Is delivery address different from item 1? ☐ Yes <br> If YES, enter delivery address below: ☐ No |
| | 3. Service Type   *Return Receipt Requested* <br> ☒ Certified Mail ☐ Express Mail <br> ☐ Registered ☐ Return Receipt for Merchandise <br> ☐ Insured Mail ☐ C.O.D. <br> 4. Restricted Delivery? (Extra Fee) ☐ Yes |
| 2. Article Number <br> (Transfer from service label) | 7004 0550 0001 5172 8636 |

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

UNITED STATES POSTAL SERVICE   GILROY CA 95

01 APR 2008 PM L 1

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Larkin Hoffman Daly & Lindgren Ltd.
*Attorneys*
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

BJA 25414-23 (fed)

134

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Bergquist Company,                    File No. 08-CV-569 DWF/AJB

                    Plaintiff,

        v.                                **NOTICE OF A LAWSUIT**
                                          **AND REQUEST TO WAIVE**
Michel Gelinas,                           **SERVICE OF A SUMMONS**

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TO:   Defendant Michel Gelinas, 2380 Dryden Avenue, Gilroy, CA 95020.

        **Why are you getting this?**

        A lawsuit has been filed against you, or the entity you represent, in this court

under the number shown above.  A copy of the complaint is attached.

        This is not a formal summons, or an official notice from the court.  It is a request

that, to avoid expenses, you waive formal service of a summons by signing and returning

the enclosed waiver.  To avoid these expenses, you must return the signed waiver within

30 days from the date shown below, which is the date this notice was sent.  Two copies of

the waiver form are enclosed, along with a stamped, self-addressed envelope or other

prepaid means for returning one copy.  You may keep the other copy.

        **What happens next?**

        If you return the signed waiver, I will file it with the court.  The action will then

proceed as if you had been served on the date the waiver is filed, but no summons will be

served on you and you will have 60 days from the date this notice is sent (see the date

below) to answer the complaint.

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Dated: March 27, 2008

Bruce J. Douglas (23966)
Larkin Hoffman Daly & Lindgren Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194
Telephone: 952-896-1569
Facsimile: 952-842-1717
Email: bdouglas@larkinhoffman.com

ATTORNEYS FOR PLAINTIFF
THE BERGQUIST COMPANY

[Effective December 1, 2007]

1191673.1

2.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

-----------------------------------------

The Bergquist Company,

File No. _____

Plaintiff,

v.

**COMPLAINT**

Michel Gelinas,

Defendant.

-----------------------------------------

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C.

§ 1332, because the parties are citizens of different states (California and Minnesota).

2.     The amount in controversy exceeds the sum or value of $75,000, exclusive of

interest and costs.

3.     Venue is proper in this Court because the parties' Agreements at issue specifically

provide that venue will be in Minnesota and Defendant has consented to jurisdiction in the State

and Federal courts in Hennepin County, Minnesota.

## THE PARTIES

4.     The Plaintiff, The Bergquist Company ("Bergquist"), is a Minnesota corporation.

Its principal place of business is in Chanhassen, Minnesota.

5.     Upon information and belief, the Defendant, Michel Gelinas is citizen of the State

of California.

## BACKGROUND FACTS

6.     The Bergquist Company is in the business of manufacturing and supplying

thermal management products and other products.

7.    Michel Gelinas was formerly employed with The Bergquist Company as a Regional Sales Manager.

8.    On or about May 3, 2004, The Bergquist Company and Mr. Gelinas entered into a Non-Competition, Non-Solicitation and Confidentiality Agreement.

9.    On or about October 23, 2007, Mr. Gelinas' employment with The Bergquist Company ended on an amicable basis.

10.    Mr. Gelinas executed a Separation Agreement and General Release on November 26, 2007.

11.    The Separation Agreement contains the following arbitration provision:

> 6.    Any controversy or claim arising out of or relating to this Agreement, or its breach, or to the employment relationship between the Employee and the Company, shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota. Such arbitration shall proceed in accordance with the then governing rules of the National Arbitration Forum (NAF). Judgment upon the award rendered may be entered and enforced in any court of competent jurisdiction. It is agreed that the parties shall choose a single, neutral arbitrator from among a panel of not less than seven (7) proposed arbitrators, and that the parties may have no more than two (2) panels of arbitrators presented to them by the NAF. The parties agree that they shall each bear their own costs associated with the arbitration, including any filing fee to be paid by them and their own legal counsel expenses. The parties further agree that they shall share equally in the reasonable costs and the fees of the neutral arbitrator.

12.    On or about January 23, 2008, Bergquist learned of Mr. Gelinas' employment or working relationship with one or possibly more of its competitors.

13.    On February 5, 2008, Bergquist, through its legal counsel, informed Mr. Gelinas of the claimed breach of his Agreements and requested that he refrain from any activities in violation thereof.

2.

14.     On February 28, 2008, Bergquist filed an Initial Claim/Demand for Arbitration with the National Arbitration Forum (NAF).

### FIRST CAUSE OF ACTION:  ORDER TO COMPEL ARBITRATION

15.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs 1 through 14 as if fully set forth herein.

16.     The Separation Agreement compels the parties to participate in arbitration in Minneapolis, Minnesota.

17.     The making of the Agreements, including the provision to submit all disputes to arbitration, is not at issue.

18.     Pursuant to the United States Arbitration Act (9 U.S.C. § 4) and the parties' Agreement, Plaintiff requests that this Court issue an Order compelling the Defendant to engage in arbitration in Minneapolis, Minnesota.

### SECOND CAUSE OF ACTION:  ORDER STAYING ALL JUDICIAL PROCEEDINGS

19.     Plaintiff realleges and incorporates by reference all of the allegations contained in the preceding paragraphs 1 through 18 as if fully set forth herein.

20.     Pursuant to the United States Arbitration Act (9 U.S.C. § 3) and the parties' Agreements, Plaintiff requests that this Court Order that all other judicial proceedings are stayed pending arbitration.

3.

WHEREFORE, Plaintiff requests that this Court:

1.  Order that the parties engage in arbitration in Minneapolis, Minnesota.

2.  Order that all other judicial proceedings are stayed in light of this action and the arbitration provision in the parties' Agreements.

3.  Award Plaintiff its costs and reasonable attorneys' fees incurred in this action.

4.  Grant Plaintiff such other and further relief as this Court deems just and equitable in the premises.

Dated:  2/28/08

Bruce J. Douglas (23966)
Larkin Hoffman Daly & Lindgren Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194
Telephone: 952-896-1569
Facsimile: 952-842-1717
Email: bdouglas@larkinhoffman.com

ATTORNEYS FOR PLAINTIFF
THE BERGQUIST COMPANY

1187364.1

4.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------------

The Bergquist Company,                          File No. 08-CV-569 DWF/AJB

                        Plaintiff,

            v.                                  **WAIVER OF THE**
                                                **SERVICE OF SUMMONS**
Michel Gelinas,

                        Defendant.

------------------------------------------

TO:    Plaintiff The Bergquist Company, and it's attorney Bruce J. Douglas, Larkin
       Hoffman Daly & Lindgren Ltd, 1500 Wells Fargo Plaza, 7900 Xerxes Avenue
       South, Minneapolis, Minnesota 55431.

       I have received your request to waive service of a summons in this action along

with a copy of the complaint, two copies of this waiver form, and a prepaid means of

returning one signed copy of the form to you.

       I, or the entity I represent, agree to save the expense of serving a summons and

complaint in this case.

       I understand that I, or the entity I represent, will keep all defenses or objections to

the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any

objections to the absence of a summons or of service.

       I also understand that I, or the entity I represent, must file and serve an answer or a

motion under Rule 12 within 60 days from March 27, 2008, the date when this request

was sent.  If I fail to do so, a default judgment will be entered against me or the entity I

represent.

Dated: _____

_____
&lt;signature&gt;
Michele Gelinas
Defendant
2380 Dryden Avenue
Gilroy, CA 95020

## DUTY TO AVOID UNNECESSARY EXPENSES OF SERVING A SUMMONS

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint.  A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

[Effective December 1, 2007]

1191672.1

2.

# <u>**EXHIBIT C**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Bergquist Company,                    File No. 08CV569
                                                   DWF/AJB
                         Plaintiff,

        v.                                **SUMMONS**

Michel Gelinas,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TO:    THE ABOVE-NAMED DEFENDANT:

        You are hereby summoned and required to serve upon Bruce J. Douglas, of Larkin

Hoffman Daly & Lindgren Ltd., Plaintiff's attorneys, whose address is 1500 Wells Fargo Plaza,

7900 Xerxes Avenue South, Minneapolis, Minnesota 55431, an answer to the complaint which is

herewith served upon you within 20 days after service of this summons upon you, exclusive of

the day of service.  If you fail to do so, judgment by default will be taken upon you for the relief

demanded in the complaint.


Dated:  FEB 2 8 2008                    RICHARD D. SLETTEN
                                         _____
1187441.1                                Clerk of Court



                                         _____
                                         Deputy Clerk

**METRO LEGAL SERVICES**
Legal Support Specialists Since 1969

Metro Legal Serial # LARHOD 33738 1001

Re: 25414-23

**STATE OF CALIFORNIA**

**AFFIDAVIT OF SERVICE**

**COUNTY OF SANTA CLARA**


_____Robert T. Dillon_____, being duly sworn, on oath says that on
(Name of Server)

_____05__ / _13___ /2008 at _____07_ : _24____ _A_M
(Date of Service)              (Time of Service)

s(he) served the attached: Summons & Complaint

upon: Michel Gelinas

therein named, personally at:   2380 Dryden Avennue
                                Gilroy, CA 95020

by handling to and leaving with:

[ X ]  Michel Gelinas
[   ]  a person of suitable age and discretion then and there residing at the usual abode
       of said, Michel Gelinas


_____        _____
(Name of the Person with whom the documents were left)      (Title or Relationship)

a true and correct copy thereof.


Subscribed and Sworn to before me                

_____/_____/2008.                        _____
                                                 (Signature of Server)


_____
(Signature of Notary)

State of California, County of _Santa Clara_
Subscribed and sworn to (or affirmed) before me on this
_27_ day of _May_, 20_08_, by _Robert T Dillon_
personally known to me or proved to me on the basis
of satisfactory evidence to be the person who
appeared before me. _____
                     (Signature of Notary)

PHYLLIS I. ARMENTA
COMM. # 1598513
NOTARY PUBLIC-CALIFORNIA
SANTA CLARA COUNTY
MY COMM. EXP. AUG. 19, 2009

---

* Service was completed by an independent contractor retained by Metro Legal Services, Inc.

# <u>EXHIBIT D</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

The Bergquist Company,                      File No. 0:08-cv-00569 DWF/JJK

                Plaintiff,

      v.                                              **MOTION TO COMPEL ARBITRATION,**
                                       **STAY ACTION, AND ENJOIN**
Michel Gelinas,                                  **PARALLEL PROCEEDINGS**

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff The Bergquist Company hereby moves this Court for an Order:

1. Compelling Defendant to arbitration in Minneapolis, Minnesota in accordance
   with their Agreements;

2. Staying this lawsuit, pending the determination of the arbitration;

3. Enjoining the action in the United States District Court, Northern District of
   California, in light of this first-filed action in Minnesota Federal Court;

4. Ordering Defendant to pay Plaintiff's attorneys' fees, costs and disbursements
   incurred in connection with this motion; and

5. For such other and further relief as the Court may deem just and appropriate.

This Motion is based on all files, records, and other proceedings in this matter, including

Bergquist's Memorandum of Law and Declarations in support thereof.

Dated:  June 4, 2008                s/*Bruce J. Douglas*
                                    Bruce J. Douglas (23966)
                                    Willow J. Najjar (324908)
                                    Larkin Hoffman Daly & Lindgren Ltd.
                                    1500 Wells Fargo Plaza
                                    7900 Xerxes Avenue South
                                    Minneapolis, Minnesota  55431-1194
                                    Telephone:  952-896-1569
                                    Facsimile:  952-842-1717
                                    Email:  bdouglas@larkinhoffman.com
                                            wanderson@larkinhoffman.com

                                    ATTORNEYS FOR PLAINTIFF
                                    THE BERGQUIST COMPANY

1199558.1

# <u>EXHIBIT E</u>

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

------------------------------------

The Bergquist Company,           File No. 0:08-cv-00569 DWF/JJK

          Plaintiff,

    v.                 **NOTICE OF HEARING ON MOTION
TO COMPEL ARBITRATION, STAY
ACTION, AND ENJOIN PARALLEL
PROCEEDINGS**

Michel Gelinas,

          Defendant.

------------------------------------

TO:    Defendant above-named and his counsel:

PLEASE TAKE NOTICE that on July 18, 2008 at 9:00 a.m., or as soon as the parties

may be heard, before District Court Judge Donovan W. Frank, at the United States Courthouse

[temporary location], Courtroom 1, 180 East Fifth Street, St. Paul, Minnesota, Plaintiff The

Bergquist Company ("Bergquist") will present oral argument on its Motion to Compel

Aribitration, Stay Action, and Enjoin Parallel Proceedings.

Dated: June 4, 2008          _s/Bruce J. Douglas_
                             Bruce J. Douglas (23966)
                             Willow J. Najjar (324908)
                             Larkin Hoffman Daly & Lindgren Ltd.
                             1500 Wells Fargo Plaza
                             7900 Xerxes Avenue South
                             Minneapolis, Minnesota  55431-1194
                             Telephone:  952-896-1569
                             Facsimile:  952-842-1717
                             Email:  bdouglas@larkinhoffman.com
                                     wanderson@larkinhoffman.com

                         ATTORNEYS FOR PLAINTIFF
                         THE BERGQUIST COMPANY

1203995.1

# **<u>EXHIBIT F</u>**

NATIONAL ARBITRATION

# ▥ FORUM

| | |
|---|---|
| Name, address, and phone number for<br>**Claimant(s)**<br><br>The Bergquist Company<br>18930 West 78th Street<br>Chanhassen, MN 55317<br><br>Telephone: (see Representative information) Fax:<br>E-mail:_____<br>Name, address, and phone number for<br>**Respondent(s)**<br><br>Michel Gelinas<br>2380 Dryden Avenue<br>Gilroy, CA 95020<br><br>Telephone: 404-846-9184 Fax: _____<br>E-mail: migelinas@verizon.net | **CLAIM FORM**<br><br><br>File Number:_____<br>*(To be assigned by the Forum)*<br><br><br>Filing Date:_____<br>*(To be assigned by the Forum)* |

> **NOTICE TO RESPONDENT(S):** This is an arbitration Claim filed against you with the National Arbitration Forum for money or other relief. You have <u>thirty (30) days</u> to Deliver to the Claimant(s) and file with the Forum a Written Response and/or file a Counter Claim, Cross-claim or Third Party Claim in accord with the Code of Procedure. If you <u>do not</u> Deliver to the Claimant(s) and file with the Forum a Written Response within thirty (30) days, an Award may be entered against you. You can obtain a free copy of the Code of Procedure from the Claimant or the Forum.

**Claimant(s) states:**

Respondent has violated and continues to violate provisions of his Confidentiality, Non-Competition and Non-Solicitation Agreement and Separation Agreement.  See Agreements attached.

_____

**Calculating the Total Claim Amount**:

| | | |
|---|---|---|
| **List Monetary Claim Amount** | <u>Unknown at this time</u> | Specify amount of money being sought. |
| **List Attorney Fees Amount** | <u>To be determined by amended claim or by order of the arbitrator</u> | If Requested, specify the dollar amount of attorney fees. See Rule 12B of the Code of Procedure. |
| **List Interest Amount** | _____ | If Requested, specify the dollar amount of interest accrued. |
| **List Non-Monetary Claim Amount** | <u>Injunctive relief</u> | If Requested, specify the value of non-monetary relief sought. |
| **Add the above figures** | _____ | **Total Claim Amount** |

**Calculating the Filing Fee**:

If you have requested non-monetary relief, your Claim involves at least one (1) Consumer Party as defined by Rule 2L, and your total Claim amount is $74,999 or less, your Filing Fee is $240.00.

If you have not requested non-monetary relief or if your total Claim amount is $75,000 or larger, see the Fee Schedule to determine the Filing Fee based on your total Claim amount.

List the Filing Fee Amount $<u>240.00</u>.

Select the Method of Payment for the Filing Fee: ☒ Check ☐ Credit Card

Account Type: ☐ Visa    ☐ MasterCard    ☐ Discover    ☐ American Express

Account Number :_____ Exp. Date:_____

If you are an indigent Consumer Party, you may Request a waiver of Common Claim fees pursuant to Rule 45.

**Arbitration Award:**

Do you Request that the arbitration Award include recovery of Filing Fees and other fees and costs incurred during the arbitration process?    ☒ Yes    ☐ No

If there is no Response to the Initial Claim, the Claim will be reviewed by an Arbitrator and an Award may be issued. If a Response is submitted, the Forum will advise the Parties of the Hearing.

**Representation Information:**

If you are represented and want the Representative to Receive all correspondence, list the information below:

Representative's Name: _Bruce J. Douglas, Esq., Larkin Hoffman Daly & Lindgren Ltd_

Address: _7900 Xerxes Avenue South, Suite 1500_  City: _Minneapolis_  State: _MN_  Zip: _55431-1194_

Telephone: _952-896-1569_  Fax Number: _952-842-1717_  E-mail: _bdouglas@larkinhoffman.com_

**Claimant's Affidavit of Authenticity:**

    I, _Bruce J. Douglas, on behalf of The Bergquist Company_, assert, under penalty of perjury, that the facts supporting the Claim, the supporting Documents and the Arbitration Agreement are accurate and correct.

Signature: _[signature]_       Date: _2/25/09_

1175983.1

**Larkin Hoffman** ATTORNEYS

Larkin Hoffman Daly & Lindgren Ltd.

1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

GENERAL: 952-835-3800
FAX: 952-896-3333
WEB: www.larkinhoffman.com

March 11, 2008

Brock Peterson
Case Coordinator
National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405-0191

Re:     *The Bergquist Company v. Michel Gelinas*
        File No.:  MX0802002048690

Dear Mr. Peterson:

Thank you for your correspondence dated March 5, 2008.

You state that we must include a total Claim Amount as required by Rule 12A(1) of the Code of Procedure. You asked for a specific dollar amount for the monetary and non-monetary relief requested for purposes of determining the fees due to administer arbitration. You state that these amounts may be amended later if necessary pursuant to Rule 17 of the Code of Procedure.

The monetary claim amount we are seeking at this time is $75,000. Since we already submitted a filing fee in the amount of $240, enclosed is a check in the amount of $60 to cover the higher $300 filing fee for a claim more than $74,999.

Please contact me if you have questions or require additional information. Again, thank you for your correspondence.

Sincerely,

Bruce J. Douglas, for
Larkin Hoffman Daly & Lindgren Ltd.

Enclosures

1189490.1

**III FORUM**
NATIONAL ARBITRATION

| | |
|---|---|
| Name, address, and phone number for **Claimant(s)** | **CLAIMANT'S PROOF OF SERVICE** |
| The Bergquist Company<br>18930 West 78th Street<br>Chanhassen, MN 55317 | |
| Telephone: (see Representative information) Fax:<br>E-mail:_____ | |
| Name, address, and phone number for **Respondent(s)** | File Number: MX0802002048690<br>*(As it appears on Initial Claim)* |
| Michel Gelinas<br>2380 Dryden Avenue<br>Gilroy, CA 95020 | |
| Telephone: 404-846-9184 Fax: _____<br>E-mail: migelinas@verizon.net | |

1.  I, the Claimant(s), have served the following Documents to the Respondent(s):

    ☒ Initial Claim Documents             ☒ Arbitration Agreement
    ☒ Documents Supporting the Initial Claim   ☐ Other:_____
    ☒ Notice of Arbitration

2.  All of the above Documents were served on the Respondent(s) by one of the methods described below:
    *(You may attach any documents that evidence the delivery method used)*

    ☒ United States Postal Service Certified Mail Signed Return Receipt
    ☐ Delivery by Private Service
    ☐ Other Service **(describe service)**_____

---

I, __Bruce J. Douglas__, assert, under penalty of perjury, that the above listed
  *(Print Claimant's Name)*

Documents were served on the Respondent(s) __Michel Gelinas__ on __03/26/2008__
                                          *(Print Respondent's Name)*   *(Month/Day/Year)*

and that this service conforms to the requirements of Rule 6 of the NAF Code of Procedure and the

applicable law.

Claimant's Signature: _____     Date: _4-7-08_

---



- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X _Michel Gelin___
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

1. Article Addressed to:

Mr. Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:    ☐ No

3. Service Type    Return Receipt Requested
☒ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
(Transfer from service label)    7005 3110 0001 3636 9218

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1548

UNITED STATES POSTAL SERVICE CA 951

31 MAR 2000 PM 5

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Larkin Hoffman Daly & Lindgren Ltd.
Attorneys
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

BJD 25414-33 (A-b)

194



**Larkin Hoffman Daly & Lindgren Ltd.**

1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

GENERAL: 952-835-3800
FAX:      952-896-3333
WEB:      www.larkinhoffman.com

March 26, 2008

**CONFIDENTIAL**

Mr. Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

<div align="right">

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**7005 3110 0001 3636 9218**

</div>

Re:    The Bergquist Company v. Michel Gelinas
       National Arbitration Forum (NAF) File No. MX0802002048690

Dear Mr. Gelinas:

Enclosed and served upon you please find the following:

1.    Notice of Arbitration

2.    Copy of the Initial Claim;

3.    Copy of the Separation Agreement and General Release with the Arbitration clause at
      paragraph 6; and

4.    Copy of the Non-Compete, Non-Solicitation and Confidentiality Agreement.

Very truly yours,

Bruce J. Douglas, for
Larkin Hoffman Daly & Lindgren Ltd.

Enclosures

1191483.1

# EXHIBIT G

# NATIONAL ARBITRATION FORUM.

March 18, 2008

Larkin Hoffman Daly & Lindgren Ltd
Bruce J. Douglas
7900 Xerxes Ave S
Suite 1500
Minneapolis, MN 55431-1194

**RE:  The Bergquist Company v Michel Gelinas**
**File Number:  MX0802002048690**

Dear Claimant:

Your Claim has been accepted by the National Arbitration Forum and the above file number assigned.  <u>Please include the above file number on the first page of all documents you submit to the Forum.</u>

You should now proceed with service pursuant to Rule 6 of the Code of Procedure.  We anticipate receiving the completed Affidavit of Service from you once service has been achieved.

If you have any additional documentation that you want to submit regarding your Claim, please submit it to the Forum and the Respondent at this time.

Sincerely,

Brock Peterson
Case Coordinator
1-800-474-2371 x6614
Fax:  1-866-695-1907

# EXHIBIT H



NATIONAL ARBITRATION

| Name, address and phone number for | **RESPONSE FORM** |
|---|---|

**Claimant(s):**
The Bergquist Company
18930 West 78th Street
Chanhassen, MN 55317

Telephone: (See Representative Information)
Fax: (See Representative Information)
E-Mail Address: (See Representative Information)

Name, address and phone number for
**Respondent(s):**
Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

File Number: MX0802002048690
*(As it appears on Initial Claim)*

Telephone: (See Representative Information)
Fax:  (See Representative Information)
E-Mail Address: (See Representative Information)

**Respondent(s) states:**

_____ In response to Claimant's Claim, Respondent affirmatively states that he has not violated nor does he continue to violate the provisions of his Confidentiality, Non-Competition and Non-Solicitation Agreement ("Non-Compete Agreement"), attached as Exhibit "A," and Separation Agreement and General Release ("Separation Agreement"), attached as Exhibit "B."

_____ Additionally, Respondent asserts the following defenses and makes the following objections to Claimant's Claim:

1.    The Non-Compete Agreement was not signed by both parties and it is therefore unenforceable as no binding contract was created.

2.    The Non-Compete Agreement is not supported by adequate consideration and is therefore unenforceable.  On or about April 12, 2004, Claimant offered Respondent a Regional Sales Manager position whereby he would be responsible for Claimant's Northern California, Oregon, Washington and Canada sales territory.  Claimant subsequently confirmed its verbal offer with a written offer letter, attached as Exhibit "C,"  which Respondent accepted.  On or about April 27, 2004, Respondent commenced his employment with Claimant by attending a mandatory new employee orientation at Claimant's corporate office in Minneapolis, Minnesota.  During that orientation and without any prior notification to Respondent, Claimant demanded that Respondent execute the Non-Compete Agreement.  At no time during the recruitment process or in making its oral or written offers of

employment had Claimant informed Respondent that his employment with Claimant was conditioned upon the execution of the Non-Compete Agreement. Respondent was not provided with any consideration by Claimant in exchange for his execution of the Non-Compete Agreement.

3.      The choice of law provision in paragraph 14 of the Non-Compete Agreement, which provides that its terms should be interpreted in accordance with the laws of Minnesota, is unenforceable. (See Exhibit "A"). At all times during his employment with Claimant, Respondent was a California resident. Additionally, Respondent did not perform any employment-related activities in Minnesota during the course of his employment with Claimant; all were to be performed and were actually performed by Respondent in California and other areas of the assigned sales territory, i.e., Oregon, Washington and Canada. The Non-Compete Agreement contains an illegal covenant not to compete and thereby violates the public policy of the State of California. The choice of law provision in the Non-Compete Agreement is unenforceable and California law must be applied to determine the validity of the Non-Compete Agreement and must govern any dispute arising out of the Non-Compete Agreement.

4.      The Non-Compete Agreement is unenforceable because it restricts Respondent's right to work for a competing business, and in doing so violates California Business & Professions Code § 16600, et seq. This statute provides that covenants not to compete which restrict the rights of employees to work wherever they choose are unenforceable. Under this statute and California law, covenants which contain improper restrictions relating to an employee's right to work violate the public policy of the State of California and are unenforceable. Respondent resided in California throughout his employment with Claimant and he continues to reside in California. If Claimant's claim is upheld, Respondent would not be allowed to work in his chosen field – a field in which he has devoted multiple years of service. Thus, Respondent would be unable to work and would be forced to avail himself of unemployment benefits.

5.      The Separation Agreement is not supported by adequate consideration and is therefore unenforceable. On or about October 23, 2007, Claimant terminated Respondent's employment without cause. As of the date of his termination, Respondent was entitled to a bonus pursuant to Claimant's "RSM NA Sales Incentive Compensation" plan. The only consideration set forth in the Separation Agreement was the payment of the RSM NA Sales Incentive, which was already due and owed to Respondent by Claimant. Therefore, Respondent did not receive any consideration from Claimant in exchange for his execution of the Separation Agreement. Moreover, Claimant has not paid Respondent the entire amount of the RSM NA Sales Incentive to which he is entitled. (See Respondent's Counterclaim, filed concurrently with this Response).

6.      Any purported claims arising out of the Non-Compete Agreement are not subject to arbitration and Respondent objects to arbitration of any such claims. The Non-Compete Agreement does not include an arbitration provision. (See Exhibit "A"). While the Separation Agreement, if enforceable,

does include an arbitration provision, the Separation Agreement does not integrate the Non-Compete Agreement.  (See Exhibit "B," paragraphs 4 and 6).  Therefore, the arbitration provision of the Separation Agreement is not binding on any dispute arising out of the Non-Compete Agreement.

7.    If the Separation Agreement's arbitration provision is binding on the Non-Compete Agreement, it is also unenforceable because it is unconscionable.  Under California law, arbitration provisions that are procedurally or substantively unconscionable are unenforceable.  The arbitration provision in the Separation Agreement is both procedurally and substantively unconscionable, because, among other reasons, it obligates Respondent to pay for one half of the arbitrator's fees and for the arbitration to be held in Minneapolis, Minnesota.

1.  Attach accurate and correct copies of all Documents that support the Response **(See Rule 13)**.

2.  If you are asserting a Counter Claim, Cross-claim or Third Party Claim, complete those Documents and forward them with the Filing Fee and your Response to the Forum **(See Rules 14, 15 and 16)**.

3.  **If you do not file a Response, the Claim will be reviewed by an Arbitrator and an Award and later judgment may be issued against you.**

<u>**Selecting the Hearing Type (See Part V of the Code of Procedure):**</u>

You have a choice of Hearings.  Do you request a Hearing at this time?   ☐ Yes    ☒ No

Type of Hearing Requested:   ☐ Document ☐ Telephone ☐ Online ☐ In-person

Hearing Fee amount to be paid or charged $_____ **(See Fee Schedule)**

Select the Method of Payment:   ☐ Check    ☐ Credit Card

Account Type:    ☐ Visa    ☐ MasterCard    ☐ Discover    ☐ American Express

Account Number :_____ Exp. Date:_____

If you are an indigent Consumer Party, you may Request a waiver of Common Claim fees pursuant to Rule 45.

<u>**Representation Information:**</u>

If you are represented and want the Representative to receive all correspondence, list the information below:

Representative's Name: Margaret Hershiser, Koley Jessen, P.C. L.L.O.

Address: One Pacific Place, Suite 800, 1125 South 103rd Street  City: Omaha  State: NE  Zip: 68124

Telephone: (402) 390-9500   Fax Number: (402) 390-9005  E-mail: Margaret.Hershiser@koleyjessen.com

<u>**Respondent's Affidavit of Authenticity:**</u>

I, _____Michel Gelinas_____, assert, under penalty of perjury, that the facts supporting the
*(Print Respondent's Name)*

Response and the supporting Documents are accurate and correct.

Respondent's Signature:_____ Date: 05/02/08

1/2006
430155.2

NATIONAL ARBITRATION
# IIII FORUM

| | |
|---|---|
| Name, address, and phone number for **Respondent(s):** The Bergquist Company 18930 West 78th Street Chanhassen, MN 55317 | **RESPONDENT'S PROOF OF SERVICE** |

Telephone: (See Representative Information)
Fax: (See Representative Information)
E-mail Address: (See Representative Information)

Name, address, and phone number for
**Claimant(s):**
Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

File Number: MX0802002048690
*(As it appears on Initial Claim)*

Telephone: (See Representative Information)
Fax: (See Representative Information)
E-mail Address: (See Representative Information)

1. I, the Respondent(s), have Delivered the following Documents to the Claimant(s):

   ☒ Respondent's Response          ☒ Documents Supporting Response
   ☐ Other:_____

2. All of the above Documents were Delivered to the Claimant(s) by one of the methods described below:
   *(You may attach any documents that evidence the delivery method used)*

   ☒ United States Postal Service Regular Mail
   ☐ United States Postal Service Certified Mail Signed Return Receipt
   ☐ Delivery by Private Service
   ☒ Other Service *(describe service)* ___ Facsimile (952) 835-3800

---

I, __Leilani M. Harbeck__, assert, under penalty of perjury, that the above listed Documents were
   *(Print Respondent's Name)*

served on the Claimant(s)__The Bergquist Company__ on __May 5, 2008__ and that this service
                          *(Print Claimant's Name)*       *(Month/Day/Year)*

conforms to the requirements of Rule 6 of the NAF Code of Procedure and the applicable law.

**Respondent's Signature:** __Leilani M. Harbeck__ **Date:** __5/5/08__

---



NATIONAL ARBITRATION

| Name, address and phone number for **Claimant(s):** The Bergquist Company 18930 West 78th Street Chanhassen, MN 55317 | **COUNTER CLAIM FORM** |
|---|---|

Telephone: (See Representative Information)
Fax: (See Representative Information)
E-Mail Address: (See Representative Information)

Name, address and phone number for
**Respondent(s):**
Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

File Number: MX0802002048690
*(As it appears on Initial Claim)*

Telephone: (See Representative Information)
Fax: (See Representative Information)
E-Mail Address: (See Representative Information)

---

**NOTICE TO INITIAL CLAIMANT(S): A Counter Claim has been filed against you with the National Arbitration Forum for money or other relief. You have <u>thirty (30) days</u> to Deliver to the Respondent(s) and file with the Forum a Written Response to the Counter Claim. If you <u>do not</u> Deliver to the Respondent(s) and file with the Forum a Written Response to the Counter Claim within thirty (30) days, an Award may be entered against you.**

---

I, _____Michel Gelinas_____ state the following Counter Claim against Initial Claimant(s):
*(Party Name)*

On October 23, 2007, I was entitled to a bonus pursuant to Claimant's "RSM NA Sales Incentive Compensation" plan. On or about October 23, 2007, Claimant terminated my employment and provided me with a copy of a Separation Agreement and General Release ("Separation Agreement"). (See Exhibit "B" to Respondent's Response, filed concurrently with this Counter Claim Form). Paragraph 2(c) of the Separation Agreement provides that: "[Claimant] will pay the year-end payout for the RSM NA Sales Incentive Compensation (which includes the Revenue, Design-Win and IPO components) to be paid in a single payment after financial audit on or about the 3rd week of December, after this [Separation] Agreement is signed, and upon the expiration of all applicable revocation periods stated in this Agreement." Beginning on October 27, 2007, I sent a series of emails requesting that Claimant determine and pay me my full bonus amount. On November 26, 2007, I executed the Separation Agreement and provided a copy of the executed Separation Agreement to Claimant. On December

14, 2007, I received check in the gross amount of $7,500.00 and on December 21, 2007, I received a check in the gross amount of $15,665.00, both from Claimant as purported payment for my RSM NA Sales Incentive Compensation.   These amounts constituted only partial payment for my RSM NA Sales Incentive Compensation, which I had earned prior to my termination and which was due to me under the Separation Agreement.   I believe that Claimant owes me a total amount of $92,618.40.  Of this amount, $76,440.00 represents unpaid bonus/commissions and $16,178.40, which represents wages that were not timely paid in accordance with California law.  I also reserve the right to request payment of interest and attorney fees, in an amount to be determined, later in this arbitration proceeding.

**Calculating the Total Counter Claim Amount:**

| | | |
|---|---|---|
| **List Monetary Counter Claim Amount** | $92,618.40 | Specify amount of money being sought. |
| **List Attorney Fees Amount** | To be requested later | If Requested, specify the dollar amount of attorney fees. See Rule 12B of the Code of Procedure. |
| **List Interest Amount** | To be requested later | If Requested, specify the dollar amount of interest accrued. |
| **List Non-Monetary Counter Claim Amount** | N/A | If Requested, specify the value of non-monetary relief sought. |
| **Add the above figures** | $92,618.40 | **Total Counter Claim Amount** |

**Calculating the Counter Claim Filing Fee:**

If you have requested non-monetary relief, your Counter Claim involves at least one (1) Consumer Party as defined by Rule 2L, and your total Counter Claim amount is $74,999 or less, your Filing Fee is $240.00.

If you have not requested non-monetary relief or if your total Counter Claim amount is $75,000 or larger, see the Fee Schedule to determine the Filing Fee based on your total Counter Claim amount.

List the Counter Claim Filing Fee Amount: _____ $300.00 _____

Select the Method of Payment:     ☐ Check     ☒ Credit Card

Account Type: ☐ Visa     ☐ MasterCard     ☐ Discover     ☐ American Express

Account Number : ▮▮▮▮▮▮▮▮▮ _____     Exp. Date: ▮▮▮▮▮▮▮ _____

**Arbitration Award:**

Do you Request that the arbitration Award include recovery of Filing Fees and other fees and costs incurred during the arbitration process?     ☒ Yes     ☐ No

**Selecting the Hearing Type (See Part V of the Code of Procedure):**

You have a choice of Hearings. Do you Request a Hearing on the Counter Claim at this time?
☐ Yes  ☒ No

Type of Hearing Requested:  ☐ Document ☐ Telephone ☐ Online ☐ In-person

Hearing Fee Amount to be paid or charged $_____ **(See Fee Schedule)**

Select the Method of Payment:     ☐ Check     ☐ Credit Card

Account Type:     ☐ Visa        ☐ MasterCard        ☐ Discover        ☐ American Express

Account Number:_____ Exp. Date:_____

If you are an indigent Consumer Party, you may Request a waiver of Common Claim fees pursuant to Rule 45.

**Respondent's Affidavit of Authenticity:**

I, _____Michel Gelinas_____, assert, under penalty of perjury, that the facts supporting
      *(Print Respondent's Name)*

the Counter Claim and the supporting Documents are accurate and correct.

Respondent's Signature:_Michel Gelinas_____ Date:_05/02/09_

# THE BERGQUIST COMPANY

## NON-COMPETE, NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

1. **Introduction.**  The Bergquist Company ("the Company") has developed a successful business in an extremely competitive business environment.  In order to continue our success, our employees are given considerable training and have access to confidential information and specialized knowledge regarding our products, services, customers, and vendors.  This Agreement and Acknowledgement of non-compete, non-solicitation and confidentiality obligations is dated 05-03-04 and executed by the undersigned employee MICHEL GELINAS ("the Employee").

2. **Consideration for Agreement.**  In consideration of the Employee's employment by the Company and his/her salary and benefits, the Employee agrees to the following terms and that the provisions of this Agreement are a condition of employment.

3. **Non-competition.**  During employment and for twelve (12) months after terminating employment with the Company, regardless of the reason, the Employee shall not, directly or indirectly, on behalf of the Employee or any other person or entity, provide services or products that compete with any product or service provided by the Company or which was in development during the Employee's employment.  Competition is defined to include acting as an employee, principal, partner, agent, or consultant with any organization engaging in a similar or same business as the Company, including, but not limited to, businesses that create, manufacture or distribute thermal materials, thermal substrates, electronic components, membrane switches, or touch screens.

4. **Confidentiality.**  Through this Agreement, the Company seeks to protect confidential information that is important to the success of our business.  The Employee acknowledges that the following information and items used in the Company's business are unique, valuable, confidential, and were developed at considerable cost by the Company.  Disclosure of the information, other than that authorized by the Company, is prohibited because it will cause irreparable harm to the Company.

The following items are "confidential information" and protected by this Agreement:  (a) any information not generally known or readily ascertainable in the thermal materials industry, thermal substrates industry, electronic components industry, membrane switches industry, touch screen industry, or any other industry in which the corporation is engaged or is about to be engaged, regarding the Company's products, development, research, marketing, servicing, contracts, business systems and techniques; (b) financial information concerning the Company and its customers, including, but not limited to, customer lists, information concerning the accounts receivable of the customers of the Company, and the Company's pricing strategies; (c) quantity and type of services purchased by customers of the Company; and (d) the Company's technologies, processes and product design, including, but not limited to, the Company's research and development information. Confidential Information includes trade secrets and confidential information developed by the Employee during employment with the Company



EXHIBIT

A

The Employee agrees not to disclose any confidential items noted above or any other confidential information or trade secrets, developed before or after the Employee's termination of employment, without the prior written consent of the Company, unless such information has already been disclosed by the Company or is in the public domain.

5. **Non-solicitation of customers.** The Employee agrees not to compete with the Company by doing business with or seeking orders from any customer of the Company for 12 months after termination of the employment relationship. The Employee agrees that soliciting customers will cause the Company irreparable harm.

6. **Non-solicitation of employees.** During employment and for 12 months after termination, the Employee agrees not to recruit, encourage, or induce other Company employees to terminate employment with the Company or, to hire or offer to hire any Company employees. The Employee agrees that soliciting employees will cause the Company irreparable harm.

7. **Applies to written materials, other forms of communication, and memory.** The Employee understands and agrees that the provisions of this Agreement apply not only to written documents and other forms of communications but also to information that the Employee has in Employee's memory.

8. **Return of Company property.** Upon termination of employment for any reason, the Employee agrees to return all Company property and materials in the Employee's possession or under the Employee's control, including all secret and confidential information in whatever form or medium it exists.

9. **Proprietary property.** The Employee agrees to disclose and assign to the Company the Employee's interests in all inventions, designs, trade secrets, processes, or developments developed during the course of the Employee's employment, regardless of whether the idea for such development occurred on or off the job. The Employee agrees that such developments are the Company's proprietary property in which the Company has exclusive right.

10. **Agreement binding after employment ends.** This Agreement survives and continues after termination of the Employee's employment, and shall be binding regardless of the reason for the termination.

11. **Other agreements.** This Agreement's provisions are supplementary and are not limited by other similar agreements that an employee might have with the Company.

12. **Agreement benefits Company's subsidiaries, affiliates, successors, and assigns.** This Agreement benefits and is enforceable by the Company and its subsidiaries, affiliated companies, successors, or assigns.

13. **Severability agreement.** An invalid portion of this Agreement does not affect the other provisions. If any part of the Agreement is found to be invalid or unenforceable by a court, the Company and the Employee agree to renegotiate to provide protections and provisions

2.

similar to those earlier agreed upon. If a provision involving time or geographic scope of this Agreement is determined to be unenforceable, then the time or geographic requirement will be adjusted to address the invalid provision.

14. **Applicable law.** This Agreement should be interpreted and enforced in accordance with the laws of the State of Minnesota, without regard to its choice of law principles or rules.

15. **Attorneys' fees and expenses.** The Employee agrees to reimburse the Company for its reasonable attorneys' fees, costs, and expenses incurred in enforcing the Employee's obligations hereunder.

16. **Employment at will.** This Agreement does not alter the at will nature of the employment relations between the Company and the Employee. Both parties understand that either party may end the employment relationship at any time, for any reason, without notice.

I HAVE READ AND UNDERSTAND THE FOREGOING NON-COMPETE, NON-SOLICITATION, AND CONFIDENTIALITY AGREEMENT AND I AGREE TO COMPLY WITH ITS TERMS.

_____        04-27-04
**Employee Name**                         **Date**

_____        _____
**Witness on Behalf of Employer**         **Date**

833518.1

3.



CONFIDENTIAL

October 23, 2007

Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

Re: **Separation Agreement and General Release**

Dear Michel:

This letter proposes the following Separation Agreement and General Release ("Agreement") between you and The Bergquist Company regarding the terms of your separation from employment.

1.  **Background.**
    a.  You were employed by the Company as Regional Sales Manager. You and the Company have agreed to end your employment relationship on an amicable basis.

    b.  On October 23, 2007 your employment with the Company will end.

2.  **Terms of Agreement.**
    In order to effect the end of your employment and to provide you with certain benefits that you would not otherwise be entitled to, you and the Company agree as follows:

    a.  This Agreement shall not be in any way construed as an admission by the Company that it has acted wrongfully with respect to you or any other person, or that you have any rights whatsoever against the Company.

    b.  Even if you do not sign this Agreement, the Company will pay you the compensation that you have earned through the date of your termination, any accrued vacation benefits, in accordance with the terms and conditions of such policy or plan. Similarly, even if you do not sign this Agreement, you will be offered benefits to which you are entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").

    c.  In exchange for the promises contained in this Agreement and release of claims as set forth below, and provided that you sign this Agreement and return it to me by forty-five (45) days from the date this Agreement is delivered to you or by December 5, 2007, whichever is later, and do not revoke this Agreement:

        (1) The Company will pay the year-end payout for RSM NA Sales Incentive Compensation (which includes the Revenue, Design-Win and IPO components) to be paid in a single payment after financial audit on or about the 3rd week of December, after this Agreement is signed, and upon the expiration of all applicable revocation periods stated in this Agreement.

    d.  In consideration of the promises contained in this Agreement, you agree:

**EXHIBIT**

B

Separation Agreement and General Release
Page 2

(1) On behalf of yourself and anyone claiming through you, irrevocably and unconditionally to release, acquit and forever discharge and covenant not to sue the Company, its subsidiaries, divisions, affiliated companies, predecessors, successors and assigns, as well as each's past and present officers, directors, employees, shareholders, trustees, joint venturers, partners, and anyone claiming through them (hereinafter "Released Parties" collectively), in each's individual and/or corporate capacities, from any and all claims, liabilities, promises, actions, damages and the like, known or unknown, which you ever had against any of the Released Parties arising out of or relating to your employment with the Company and/or the termination of your employment with the Company. Said claims include, but are not limited to: (1) employment discrimination (including claims of sex discrimination and/or sexual harassment) and retaliation under Title VII (42 U.S.C. section 2000e etc.) and under 42 U.S.C. section 1981 and section 1983; age discrimination under the Age Discrimination in Employment Act (29 U.S.C. sections 621-634) as amended, under the Minnesota Human Rights Act, and/or any other relevant state statutes, laws or municipal ordinances; (2) disputed wages; (3) wrongful discharge and/or breach of any alleged employment contract; or (4) claims based on any tort, such as invasion of privacy, defamation, fraud and infliction of emotional distress; (5) claims based on a contract of employment or written offer of employment, employee handbook or personnel policies, or any similar memorandum or writing or understanding of any kind pertaining to your terms and conditions of employment.

(2) That you shall not bring any legal action against any of the Released Parties for any claim waived and released under this Agreement and that you represent and warrant that no such claim has been filed to date. You further agree that should you bring any type of administrative or legal action arising out of claims waived under this Agreement, you will bear all legal fees and costs, including those of the Released Parties.

e. You agree to refer any and all reference checks to Diane Erdman, Human Resource Manager, and you know that any such references will be limited to confirmation of your dates of employment and last position held. The obligation under this Paragraph is separable and any failure by the Company to perform the obligation in this Paragraph will only give rise to an action to enforce this Paragraph.

f. You agree that you will not, directly or indirectly, disclose the fact of and terms of this Agreement, including the severance benefits, to anyone other than your spouse or attorney, except to the extent such disclosure may be required for accounting or tax reporting purposes or as otherwise required by law.

g. This Agreement shall be binding on the parties and upon their heirs, administrators, representatives, executors, successors and assigns and shall inure to their benefit and to that of their heirs, administrators, representatives, executors, successors and assigns.

h. On or before October 25, 2007 you will return to me all of the Company's property and documents and information in your possession including, but not limited to, notes, memoranda and diaries you may have kept, computer log-on information and passwords, customer lists, mailing lists, account information, samples, prototypes, price lists and pricing information any phone cards, cellular phone, automobile, credit cards, fax machine or any other office equipment or supplies, and all of the tangible and intangible property

belonging to the Company and relating to your employment with the Company.  You further represent and warrant that you have not retained any copies, electronic or otherwise, of such property.

i.    You will cooperate fully with the Company in its defense of or other participation in any administrative, judicial or other proceeding arising from any charge, complaint or other action which has been or may be filed.

j.    You agree that you will not make any comments relating to the Company or its employees which are critical, derogatory or which may tend to injure the business of the Company.

k.    In the event that you breach any of your obligations under this Agreement, any outstanding obligations of the Company hereunder shall immediately terminate, and any payments previously made to you under this Agreement shall be returned to the Company.

3.    The provisions of this Agreement are severable.  If any provision is held to be invalid or unenforceable, it shall not affect the validity or enforceability of any other provision.

4.    You will continue to comply with the terms of the Non-Compete, Non-Solicitation and Confidentiality Agreement between you and the Company, executed on May 3, 2004, and know and understand that the obligations contained in that Agreement survive execution of this Agreement and your termination of employment. In particular, you shall not disclose any confidential or proprietary information (specifically including pricing, margins, key customer contacts and their profiles not generally known to the public) which you acquired as an employee of the Company to any other person or entity, or use such information in any manner that is detrimental to the interest of the Company. A copy of your Confidentiality Agreement is attached as Exhibit A.

5.    This Agreement sets forth the entire agreement between you and the Company and supersedes any and all prior oral or written agreements or understandings between you and the Company concerning the subject matter of this Agreement.  This Agreement may not be altered, amended or modified, except by a further written document signed by you and the Company.

6.    Any controversy or claim arising out of or relating to this Agreement, or its breach, or to the employment relationship between the Employee and the Company, shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota.  Such arbitration shall proceed in accordance with the then governing rules of the National Arbitration Forum (NAF).  Judgment upon the award rendered may be entered and enforced in any court of competent jurisdiction.  It is agreed that the parties shall choose a single, neutral arbitrator from among a panel of not less than seven (7) proposed arbitrators, and that the parties may have no more than two (2) panels of arbitrators presented to them by the NAF.  The parties agree that they shall each bear their own costs associated with the arbitration, including any filing fee to be paid by them and their own legal counsel expenses.  The parties further agree that they shall share equally in the reasonable costs and the fees of the neutral arbitrator.

7.    You represent that you fully understand your right to review all aspects of this Agreement with an attorney of your choice, that you have had the opportunity to consult with an

Separation Agreement and General Release
Page 4

attorney of your choice, that you have carefully read and fully understand all the provisions of this Agreement and that you are freely, knowingly and voluntarily entering into this Separation Agreement and General Release.

8.  You acknowledge that you have been informed of your right to rescind the release of claims in regard to claims arising under the Minnesota Human Rights Act, Minnesota Statutes Chapter 363 within fifteen (15) days of the signing of this Agreement. In order to be effective, the rescission must be in writing and delivered to The Bergquist Company, 18930 West 78th Street, Chanhassen, MN 55317, by hand or mail. If delivered by mail, the rescission must be postmarked within the required time period, properly addressed to Diane Erdman, Human Resource Manager, as set forth above and sent by certified mail, return receipt requested.

You acknowledge that you have been informed of your rights under the Federal Older Workers Benefit Protection Act of 1990, that: (1) you have the right to consult with an attorney before signing this Agreement; (2) you do not waive rights or claims under the federal Age Discrimination in Employment Act that may arise after the date this waiver is executed; (3) you have forty-five (45) days from the date of this letter to consider this Agreement.

If you are willing to enter into this Agreement, please signify your acceptance in the space indicated below, and return to me not later than forty-five (45) days from the date this Agreement is first presented to you or December 5, 2007, whichever is later. As I noted earlier, this Agreement will not become effective, and none of the severance benefits in Paragraph 2 will be paid, until you sign this Agreement.

Sincerely,

*Diane Erdman* (signature)

Diane Erdman
Human Resource Manager
The Bergquist Company

Accepted and agreed to on this

26 day of November, 2007.

*Michel Kelman* (signature)
Employee signature

April 12, 2004

Michel Gelinas
2380 Dryden Ave.
Gilroy, CA 95020

Dear Michel:

We are pleased to confirm our offer of employment and your acceptance as Regional Sales
Manager with The Bergquist Company to start on a date to be determined at an annual base salary
of $115,000, paid bi-weekly at the pre-tax rate of $4423.08 per paycheck.

As a full-time employee with The Bergquist Company, you will be eligible for our benefits
package, which includes but is not limited to medical, dental and 401(k). (See the separate
Benefits Summary enclosed.) Included in your benefits package is:

- Eligibility for our Sales Incentive Compensation Program FY04 (detail attached).
- Immediate eligibility for a car allowance of $500 per month
- Immediate eligibility for two (2) weeks of vacation and six (6) personal days.

Human Resources will conduct a new employee orientation on your first day to explain your
benefits and assist you in completing your employment processing. This offer is contingent upon
successful completion of the pre-employment physical, drug screen and background check and
that there are no non-compete agreements in place that would interfere with your employment at
The Bergquist Company.

Please contact me at 952-486-6305 to arrange a date and place for your pre-employment physical
and drug screen.

Sincerely,


Diane Erdman
Corporate Human Resource Manager

Accepted by: _Michel Gelinas_                    Date: 04-12-04
                Michel Gelinas


        PS: (TOTAL COMPENSATION: $ 140K PER ANNUM, THAT IS
INCLUDING BONUSES)

**EXHIBIT**

C

# III FORUM

NATIONAL ARBITRATION

| | |
|---|---|
| Name, address and phone number for<br>**Claimant(s):**<br>The Bergquist Company<br>18930 West 78th Street<br>Chanhassen, MN 55317 | **COUNTER CLAIM<br>PROOF OF SERVICE** |
| Telephone: (See Representative Information)<br>Fax: (See Representative Information)<br>E-Mail Address:  (See Representative Information) | |
| Name, address and phone number for<br>**Respondent(s):**<br>Michel Gelinas<br>2380 Dryden Avenue<br>Gilroy, CA 95020 | File Number: MX0802002048690<br>*(As it appears on Initial Claim)* |
| Telephone: (See Representative Information)<br>Fax:  (See Representative Information)<br>E-Mail Address: (See Representative Information) | |

1.  I, the Respondent(s), have Delivered the following Documents to the Initial Claimant(s):

   ☒ Respondent's Counter Claim          ☒ Documents Supporting the Counter
   ☐ Other:_____          Claim

2.  All of the above Documents were Delivered to the Initial Claimant(s) by one of the methods
   described below:
   *(You may attach any documents that evidence the delivery method used)*

   ☒ United States Postal Service Regular Mail
   ☐ United States Postal Service Certified Mail Signed Return Receipt
   ☐ Delivery by Private Service
   ☒ Other Service **(describe service)**    Facsimile (952) 835-3800

   ---

   I,   Leilani M. Harbeck  , assert, under penalty of perjury, that the above listed Documents were served
   *(Print Respondent's Name)*

   on the Initial Claimant(s)  The Bergquist Company, through its Representative,  on  May 5, 2008
                    *(Print Initial Claimant's Name)*                    *(Month/Day/Year)*

   and that this service conforms to the requirements of Rule 6 of the NAF Code of Procedure and the
   applicable law.

   Respondent's Signature: *Leilani M. Harbeck*          Date: 5|5|08

# **<u>EXHIBIT I</u>**



NATIONAL ARBITRATION

**FORUM**

| | |
|---|---|
| Name, address and phone number for<br>**Claimant(s):**<br>The Bergquist Company<br>18930 West 78ᵗʰ Street<br>Chanhassen, MN 55317 | **REQUEST BY A PARTY** |

Telephone: (See Representative Information)
Fax: (See Representative Information)
E-Mail Address: (See Representative Information)

Name, address and phone number for
**Respondent(s):**
Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

File Number: MX0802002048690
*(As it appears on Initial Claim)*

Telephone: (See Representative Information)
Fax:  (See Representative Information)
E-Mail Address: (See Representative Information)

For a Request for an Order or other relief, Respondent, Michel Gelinas, states:

Respondent, Michel Gelinas, hereby requests a stay of the above-captioned pending arbitration proceeding pursuant to Rule 9(F)(2).  In support of his request, Respondent states that a Complaint for Declaratory Relief is currently pending between the parties in California that is related to Claimant's Claim and addresses a number of the same defenses and objections raised in Respondent's Response. A copy of the Complaint for Declaratory Relief is attached hereto as Exhibit "A."  (This Complaint for Declaratory Relief was initially filed by Respondent on March 27, 2008, in the Superior Court of California in and for the County of Santa Clara, Case No. 108CV109164, and was subsequently removed by Claimant on April 24, 2008, to the United States District Court for the Northern District of California, Case No. 08-CV-02137).

As many issues before the California court and this forum are parallel, simultaneous consideration and resolution would be duplicative and wasteful of judicial and arbitral resources.  California is the most appropriate forum to determine the issues raised in the Complaint for Declaratory Relief (and the

Claimant's Claim and Respondent's Response) based on its interest in the dispute between the parties, as demonstrated by the following facts:

    1.    Respondent currently, at all times during his employment with Claimant, and prior to his employment with Claimant has been a California resident.

    2.    All employment-related activities performed by Respondent for Claimant were predominantly based in California; Respondent was hired by Claimant as a Regional Sales Manager responsible for Claimant's Northern California, Oregon, Washington and Canada sales territory.

    3.    The conduct which purportedly forms the basis for Claimant's Claim has all occurred within California.

    4.    Any injunctive relief granted to Claimant would be directed towards conduct in California and could, potentially, impact the ability of a California resident to earn a living in his chosen profession.

    5.    Any damages potentially assessed against Respondent would have an economic impact in California.

    As California has the greatest interest in resolving the issues in the Complaint for Declaratory Relief (and as a results the Claimant's Claim and Respondent's Response), Respondent requests that this arbitration proceeding be stayed until a California court has ruled on the Complaint for Declaratory Relief.

1. Attach accurate and correct copies of all Documents that support the Request, Order or relief **(see Rule 18)**.

2. Attach Proof of Delivery of the Request Documents on all Parties.

1   Lisa M. Chapman (SBN #118113)
    NIXON PEABODY LLP
2   200 Page Mill Road, Second Floor
    Palo Alto, CA 94306-2022
3   Telephone: (650) 320-7700
    Fax: (650) 320-7701
4
    Attorney for Plaintiff
5   MICHEL GELINAS

6

7                    SUPERIOR COURT OF CALIFORNIA

8                IN AND FOR THE COUNTY OF SANTA CLARA

9

10  MICHEL GELINAS, an individual,            Case No.: 1 0 8 C V 1 0 9 1 6 4

11                        Plaintiff,          COMPLAINT FOR DECLARATORY
                                              RELIEF
12      vs.

13  THE BERGQUIST COMPANY, a Minnesota        BY FAX
    corporation, and DOES 1 – 20, inclusive,
14
                          Defendants.
15

16

17

18       Plaintiff, Michel Gelinas (hereinafter "GELINAS" or "Plaintiff"), for his complaint against

19  Defendant the Bergquist Company (hereinafter, "BERGQUIST" or Defendant), alleges and states as

20  follows:

21                              NATURE OF ACTION

22       1.      This is an action by GELINAS, a former employee of BERGQUIST, whereby

23  GELINAS seeks a determination and declaration of his rights, duties and obligations, if any, in

24  connection with the Non-compete, Non-Solicitation and Confidentiality Agreement (hereinafter the

25  "NON-COMPETE AGREEMENT") signed by GELINAS on or about April 27, 2004 and the

26  Separation Agreement and General Release (hereinafter the "SEPARATION AGREEMENT")

27  entered into between GELINAS and BERGQUIST on or about October 23, 2007.

28

---

COMPLAINT FOR DECLARATORY RELIEF                                            10942549.2



EXHIBIT

A

**PARTIES, JURISDICTION AND VENUE**

2.    GELINAS is an individual residing in the State of California, County of Santa Clara.

3.    Plaintiff is informed and believes and thereon alleges that BERGQUIST is a Minnesota corporation with its principal place of business in Chanhassen, Minnesota. BERGQUIST is a developer, manufacturer and distributor of thermal products, membrane switches, electronic components and touch screens.

4.    Plaintiff does not know the true names and capacities whether individual, corporate, partnership or otherwise, of DOES 1 – 20, inclusive, and therefore sues these Defendants by fictitious names. Plaintiff is informed and believes, and thereon alleges that such Defendants are, in some manner, persons or entities related to BERGQUIST and are responsible for the matters alleged herein and/or are interested in the matters which are the subject of this complaint, and therefore should be made parties to this action. When the true names and capacities of DOES 1 – 20 are ascertained, this complaint will be amended accordingly.

5.    Plaintiff is informed and believes, and on that basis alleges, that all relevant times each of the Defendants (including the fictitiously named DOE Defendants), were the alter ego, agent, servant, employee or principal of each of the other Defendants, and in doing the acts alleged were acting within the course and scope of their agency or employment with the knowledge and consent of each Defendant.

6.    Jurisdiction is proper in California because Defendant sold goods that were purchased by consumers in California and employed sales personnel that resided in California and performed employment related duties in California and Defendant's relationship to the state is such that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

7.    Venue is proper in Santa Clara County Superior Court because (a) GELINAS resides in Santa Clara County, and (b) the employment related services provided by GELINAS pursuant to the terms of the employment agreement entered into between the parties were predominately provided by GELINAS in Santa Clara County.

///

-2-

COMPLAINT FOR DECLARATORY RELIEF

10942549.2

**THE AGREEMENTS**

8.    On or about April 12, 2004, BERGQUIST, by and through its agent, verbally offered GELINAS a Regional Sales Manager position whereby he would be responsible for BERGQUIST'S Northern California, Oregon, Washington and Canada sales territory. BERGQUIST subsequently confirmed that verbal offer by a written employment agreement (hereinafter the "EMPLOYMENT AGREEMENT") dated April 12, 2004 and delivered to GELINAS in Gilroy, California. (A true and correct copy of the EMPLOYMENT AGREEMENT is attached hereto as Exhibit A, and incorporated herein by this reference.) The EMPLOYMENT AGREEMENT obligated GELINAS to provide employment related services to BERGQUIST, in exchange for which BERGQUIST would compensate GELINAS by paying him a salary of One Hundred and Fifteen Thousand Dollars ($115,000.00) per year, bonuses pursuant to the terms of BERGQUIST'S  sales incentive plans (including its "RSM NA Sales Incentive Compensation" plan) and benefits. GELINAS' duties as a Regional Sales Manager included coordinating and managing the sales activities of BERGQUIST in its Northern California, Oregon, Washington and Canada sales territory.  None of the employment related services required to be provided by GELINAS were to be performed in Minnesota, and all were to be performed and were actually performed in California and the other areas of the subject sales territory.

9.    On or about April 27, 2004, GELINAS commenced his employment with BERGQUIST by attending a mandatory new employee orientation at BERGQUIST'S corporate office in Minneapolis, Minnesota.  At that orientation BERGQUIST demanded, without any prior notification to GELINAS, that GELINAS execute the NON-COMPETE AGREEMENT.  Prior thereto BERGQUIST had not informed GELINAS that his employment with BERGQUIST was conditioned on his execution of the NON-COMPETE AGREEMENT.  BERGQUIST did not provide GELINAS with anything in exchange for his execution of the NON-COMPETE AGREEMENT.  Under duress and fearing that his employment would be terminated if he refused BERGQUIST'S demand, GELINAS executed the NON-COMPETE AGREEMENT. (A true and correct copy of the NON-COMPETE AGREEMENT is attached hereto as Exhibit B, and incorporated herein by this reference.)

-3-

1             10.     Under the NON-COMPETE AGREEMENT GELINAS is prohibited, for a period of

2   twelve (12) months after termination of his employment, from competing with BERGQUIST in any

3   manner or soliciting BERGQUIST'S employees.  The NON-COMPETE AGREEMENT states in

4   pertinent part as follows:

5             "3.  Non-competition.  During employment and for twelve (12) months

6         after terminating employment with the Company regardless of the reason, the

7         Employee shall not, directly or indirectly, on behalf of Employee or any other

8         person or entity, provide services for products that compete with any product or

9         service provided by the Company or which was in development during the

10        Employee's employment"…"

11             And

12             "5.  Non-solicitation of customers.  The Employee agrees not to compete

13         with the Company by doing business with or seeking orders from any customer of

14         the Company for 12 months after termination of the employment relationship.

15         The Employee agrees that soliciting customers will cause the Company

16        irreparable harm."

17             11.     The NON-COMPETE AGREEMENT further provides that it is to be interpreted and

18   enforced in accordance with the laws of the State of Minnesota.  The NON-COMPETE

19   AGREEMENT does not include an arbitration provision.

20             12.     GELINAS performed all of the duties required to be performed by him pursuant to the

21   terms of the EMPLOYMENT AGREEMENT.  GELINAS performed all such duties either at his

22   Santa Clara office or in BERGQUIST'S Northern California, Oregon, Washington and Canada sales

23   territory.

24             13.     As of October 23, 2007, GELINAS was entitled to a bonus pursuant to

25   BERGQUIST'S "RSM NA Sales Incentive Compensation" plan.

26             14.     On or about October 23, 2007, BERGQUIST terminated GELINAS' employment

27   without cause.  On that same day BERGQUIST provided him with a copy of a Separation Agreement

28   and General Release (hereinafter "SEPARATION AGREEMENT") and demanded that he execute it

<div align="center">-4-</div>

1 within forty-five (45) days. (A true and correct copy of the SEPARATION AGREEMENT is

2 attached hereto, designated Exhibit "C" and incorporated herein by this reference.)    The

3 SEPARATION AGREEMENT does not contain a choice of law provision.    The SEPARATION

4 AGREEMENT includes in paragraph 6 an arbitration provision that obligates BERGQUIST and

5 GELINAS to resolve any dispute through binding arbitration in Minneapolis, Minnesota, and, among

6 other things, obligates each to pay for one half of the arbitrator's fees.    The only consideration set

7 forth in the Separation Agreement was payment of the RSM NA Sales Incentive which was already

8 owed.    Fearful that if he did not execute the agreement BERGQUIST would refuse to pay him the

9 outstanding bonus payment that he was owed by BERGQUIST, GELINAS executed the

10 SEPARATION AGREEMENT.

11      15.    On or about December 5, 2007, GELINAS accepted a Director of Sales – Western

12 Region position with Laird Technologies, Inc. (hereinafter "LAIRD"). LAIRD is a Delaware

13 corporation with its principal place of business in Chesterfield, Missouri.    This position obligates

14 GELINAS to manage and coordinate the sales activities of LAIRD in its western sales territory.

15 LAIRD'S western territory is comprised of the United States (west of the Mississippi River only) and

16 Mexico.    Since joining LAIRD in December of 2007, GELINAS has spent approximately ninety

17 percent (90%) of his time devoted to the sales activities of LAIRD in areas that are located outside of

18 BERGQUIST'S Northern California, Oregon, Washington and Canada sales territory and only fifteen

19 to twenty percent (15-20%) of LAIRD'S business is comparable to BERGQUIST'S.

20      16.    On or about February 5, 2008, BERGQUIST sent GELINAS a letter informing him of

21 its intent to enforce the terms of the NON-COMPETE AGREEMENT in an arbitration proceeding in

22 Minneapolis, Minnesota, and asserting that his actions on behalf of Laird were prohibited by the

23 terms of the NON-COMPETE AGREEMENT.

24 <div align="center">**FIRST CAUSE OF ACTION**</div>

25 <div align="center">**(Declaratory Relief Regarding the NON-COMPETE AGREEMENT**</div>

26 <div align="center">**Against All Defendants)**</div>

27      17.    GELINAS incorporates herein by reference each and every allegation contained in

28 paragraphs 1 – 16 above.

<div align="center">-5-</div>

18.   An actual controversy has arisen and now exists between GELINAS and Defendants concerning their respective rights and obligations under the NON-COMPETE AGREEMENT.

19.   GELINAS contends that the NON-COMPETE AGREEMENT is void and unenforceable because it restricts GELINAS' right to work for a competing business, and in doing so violates California Business & Professions Code § 16600, et seq. This statute provides that covenants not to compete which restrict the rights of employees to work wherever they choose are unenforceable. Under this statute and California law, covenants which contain improper restrictions relating to an employee's right to work violate the public policy of the State of California and are unenforceable.

20.   GELINAS further contends that because he did not receive anything from BERGQUIST in exchange for his execution of the NON-COMPETE AGREEMENT, it is not supported by adequate consideration and is therefore unenforceable.

21.   GELINAS further contends that the choice of law provision in paragraph 14 of the NON-COMPETE AGREEMENT which provides that its terms should be interpreted in accordance with the laws of Minnesota is unenforceable. The NON-COMPETE AGREEMENT contains an illegal covenant not to compete and thereby violates the public policy of the State of California. The choice of law provision therein is also unenforceable and California law must be applied in any dispute arising out of the NON-COMPETE AGREEMENT.

### SECOND CAUSE OF ACTION

**(Declaratory Relief Regarding the SEPARATION AGREEMENT**

**Against All Defendants)**

22.   GELINAS incorporates herein by reference each an every allegation contained in paragraphs 1 - 21 above.

23.   An actual controversy has arisen and now exists between GELINAS and Defendants concerning their respective rights and obligations under the SEPARATION AGREEMENT.

-6-

24.    GELINAS contends that because he did not receive anything from BERGQUIST in exchange for his execution of the SEPARATION AGREEMENT, it is not supported by adequate consideration and is therefore unenforceable.

25.    GELINAS further contends that California law should be applied in any dispute arising out of the SEPARATION AGREEMENT. California has a public policy of regulating the relationships between employers and California based employees. Because the SEPARATION AGREEMENT relates to the employer–employee relationship between BERGQUIST and GELINAS, and because the SEPARATION AGREEMENT does not contain a choice of law provision, California law should be applied.

26.    GELINAS further contends that adjudication of the enforceability of the NON-COMPETE AGREEMENT or issuance of any judgment relating to the NON-COMPETE AGREEMENT may not be determined in arbitration. The NON-COMPETE AGREEMENT does not include an arbitration provision. The SEPARATION AGREEMENT does not integrate the NON-COMPETE AGREEMENT, and therefore the arbitration provision of the SEPARATION AGREEMENT is not binding on any dispute arising out of the NON-COMPETE AGREEMENT.

27.    GELINAS further contends that even if the arbitration provision in paragraph 6 of the SEPARATION AGREEMENT, which provides that any dispute arising out of the SEPARATION AGREEMENT is subject to binding arbitration, applied to the NON-COMPETE AGREEMENT, it is also unenforceable. Under California law, arbitration provisions that are procedurally or substantively unconscionable are unenforceable. The arbitration provision in the SEPARATION AGREEMENT is both procedurally and substantively unconscionable, because, among other reasons, it obligates GELINAS to pay for one half of the arbitrator's fees and for the arbitration to be held in Minneapolis, Minnesota. As such it is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Michel Gelinas, prays this Court for declaratory judgment against Defendant, the Bergquist Company, and all identified DOE Defendants as follows:

1.    For a judicial declaration regarding the rights and other legal relationships between the Plaintiff and Defendants as to the NON-COMPETE AGREEMENT;

-7-

2.    For a judicial declaration that the NON-COMPETE AGREEMENT is unenforceable by Defendants due to lack of adequate consideration;

3.    For a judicial declaration that the NON-COMPETE AGREEMENT is void under Cal. Bus. & Prof. Code § 16600, et seq. and Defendants are, therefore, barred from enforcing it against Plaintiff;

4.    For a judicial declaration that the NON-COMPETE AGREEMENT is unenforceable by Defendants due to lack of consideration;

5.    For a judicial declaration that the choice of law provision in the NON-COMPETE AGREEMENT is void and that California law should govern any dispute arising out of the NON-COMPETE AGREEMENT;

6.    For an Order prohibiting Defendants from enforcing the NON-COMPETE AGREEMENT;

7.    For a judicial declaration regarding the rights and other legal relationships between the Plaintiff and Defendants as to the SEPARATION AGREEMENT;

8.    For a judicial declaration that the SEPARATION AGREEMENT is unenforceable by Defendants due to lack of adequate consideration;

9.    For a judicial declaration that the arbitration provision in the SEPARATION AGREEMENT is void because it violates California law and is unenforceable;

10.    For a judicial declaration that California law should be applied in any dispute arising out of the SEPARATION AGREEMENT;

11.    For a judicial declaration that if an arbitration is conducted pursuant to the terms of the SEPARATION AGREEMENT, such arbitration may not involve consideration of the enforceability of the NON-COMPETE AGREEMENT or issuance of any judgment or ruling regarding the NON-COMPETE AGREEMENT;

12.    For an Order prohibiting Defendants from enforcing the SEPARATION AGREEMENT;

13.    For the costs of this action; and,

-8-

14.    For such other and further relief as this Court seems just and equitable.

DATED:  March 18, 2008                    Respectfully submitted,

                                          NIXON PEABODY LLP


                                          By: _____
                                              Lisa M. Chapman
                                              Attorneys for Plaintiff
                                              MICHEL GELINAS

-9-

# <u>EXHIBIT J</u>



May 20, 2008


Larkin Hoffman Daly & Lindgren Ltd
Bruce J. Douglas
7900 Xerxes Ave S
Suite 1500
Minneapolis, MN 55431-1194


Koley Jessen PC LLO
Margaret Hershiser
One Pacific Place, Suite 1800
1125 South 103rd St
Omaha, NE 68124


**RE:  The Bergquist Company v Michel Gelinas**
**File Number:  MX0802002048690**

Dear Parties:

The Forum is in receipt of a Request from the Respondent to Stay the above referenced matter
pursuant to Rule 9F(2) of the Code of Procedure.

Pursuant to Rule 9F(2) of the Code of Procedure, the above case is now Stayed with the Forum
pending the resolution of the court action.  The Parties are directed to keep the Forum apprised of
the outcome of the court action.

Sincerely,

Brock Peterson
Case Coordinator
1-800-474-2371 x6614
Fax:  1-866-695-1907

# **<u>EXHIBIT K</u>**

KOLEY JESSEN P.C., L.L.O.
ATTORNEYS AT LAW

ONE PACIFIC PLACE, SUITE 800
1125 SOUTH 103RD STREET
OMAHA, NE 68124

PHONE. 402.390.9500
FAX. 402.390.9005

**KOLEY ■ JESSEN**

May 23, 2008

**VIA FACSIMILE (952) 345-1160 AND MAIL**

Brock Peterson
Case Coordinator
National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 66405-0191

Re:    Hearing Selection – Claim No. MX0802002048690
       Our File No. 1231-0030

Dear Mr. Peterson:

Pursuant to your letter dated May 6, 2008, Mr. Gelinas selects a Participatory Hearing to resolve the issues raised by the parties.  We estimate that the Participatory Hearing will last two to three days.

Should you have any questions, please feel free to contact me at the above address and telephone number.

Sincerely yours,

*Leilani M. Harbeck*

Leilani M. Harbeck

cc:    Bruce Douglas
       Margaret C. Hershiser

435073.1

**LEILANI M. HARBECK**
DIRECT. 402.343.3767
LEILANI.HARBECK@KOLEYJESSEN.COM

# **<u>EXHIBIT L</u>**

April 12, 2004

Michel Gelinas
2380 Dryden Ave.
Gilroy, CA 95020

Dear Michel:

We are pleased to confirm our offer of employment and your acceptance as Regional Sales Manager with The Bergquist Company to start on a date to be determined at an annual base salary of $115,000, paid bi-weekly at the pre-tax rate of $4423.08 per paycheck.

As a full-time employee with The Bergquist Company, you will be eligible for our benefits package, which includes but is not limited to medical, dental and 401(k). (See the separate Benefits Summary enclosed.) Included in your benefits package is:

- Eligibility for our Sales Incentive Compensation Program FY04 (detail attached).
- Immediate eligibility for a car allowance of $500 per month
- Immediate eligibility for two (2) weeks of vacation and six (6) personal days.

Human Resources will conduct a new employee orientation on your first day to explain your benefits and assist you in completing your employment processing. This offer is contingent upon successful completion of the pre-employment physical, drug screen and background check and that there are no non-compete agreements in place that would interfere with your employment at The Bergquist Company.

Please contact me at 952-486-6305 to arrange a date and place for your pre-employment physical and drug screen.

Sincerely,


Diane Erdman
Corporate Human Resource Manager

Accepted by: _Michel Gelinas_____    Date: _04-12-04_
             Michel Gelinas

            PS: (TOTAL COMPENSATION: $ 140K PER ANNUM, THAT IS
INCLUDING BONUSES)

# EXHIBIT M

# THE BERGQUIST COMPANY

# NON-COMPETE, NON-SOLICITATION AND CONFIDENTIALITY AGREEMENT

1. **Introduction.** The Bergquist Company ("the Company") has developed a successful business in an extremely competitive business environment. In order to continue our success, our employees are given considerable training and have access to confidential information and specialized knowledge regarding our products, services, customers, and vendors. This Agreement and Acknowledgement of non-compete, non-solicitation and confidentiality obligations is dated _05-03-04_ and executed by the undersigned employee _Michel Gelinas_ ("the Employee").

2. **Consideration for Agreement.** In consideration of the Employee's employment by the Company and his/her salary and benefits, the Employee agrees to the following terms and that the provisions of this Agreement are a condition of employment.

3. **Non-competition.** During employment and for twelve (12) months after terminating employment with the Company, regardless of the reason, the Employee shall not, directly or indirectly, on behalf of the Employee or any other person or entity, provide services or products that compete with any product or service provided by the Company or which was in development during the Employee's employment. Competition is defined to include acting as an employee, principal, partner, agent, or consultant with any organization engaging in a similar or same business as the Company, including, but not limited to, businesses that create, manufacture or distribute thermal materials, thermal substrates, electronic components, membrane switches, or touch screens.

4. **Confidentiality.** Through this Agreement, the Company seeks to protect confidential information that is important to the success of our business. The Employee acknowledges that the following information and items used in the Company's business are unique, valuable, confidential, and were developed at considerable cost by the Company. Disclosure of the information, other than that authorized by the Company, is prohibited because it will cause irreparable harm to the Company.

The following items are "confidential information" and protected by this Agreement: (a) any information not generally known or readily ascertainable in the thermal materials industry, thermal substrates industry, electronic components industry, membrane switches industry, touch screen industry, or any other industry in which the corporation is engaged or is about to be engaged, regarding the Company's products, development, research, marketing, servicing, contracts, business systems and techniques; (b) financial information concerning the Company and its customers, including, but not limited to, customer lists, information concerning the accounts receivable of the customers of the Company, and the Company's pricing strategies; (c) quantity and type of services purchased by customers of the Company; and (d) the Company's technologies, processes and product design, including, but not limited to, the Company's research and development information. Confidential Information includes trade secrets and confidential information developed by the Employee during employment with the Company

The Employee agrees not to disclose any confidential items noted above or any other confidential information or trade secrets, developed before or after the Employee's termination of employment, without the prior written consent of the Company, unless such information has already been disclosed by the Company or is in the public domain.

5. **Non-solicitation of customers.** The Employee agrees not to compete with the Company by doing business with or seeking orders from any customer of the Company for 12 months after termination of the employment relationship. The Employee agrees that soliciting customers will cause the Company irreparable harm.

6. **Non-solicitation of employees.** During employment and for 12 months after termination, the Employee agrees not to recruit, encourage, or induce other Company employees to terminate employment with the Company or to hire or offer to hire any Company employees. The Employee agrees that soliciting employees will cause the Company irreparable harm.

7. **Applies to written materials, other forms of communication, and memory.** The Employee understands and agrees that the provisions of this Agreement apply not only to written documents and other forms of communications but also to information that the Employee has in Employee's memory.

8. **Return of Company property.** Upon termination of employment for any reason, the Employee agrees to return all Company property and materials in the Employee's possession or under the Employee's control, including all secret and confidential information in whatever form or medium it exists.

9. **Proprietary property.** The Employee agrees to disclose and assign to the Company the Employee's interests in all inventions, designs, trade secrets, processes, or developments developed during the course of the Employee's employment, regardless of whether the idea for such development occurred on or off the job. The Employee agrees that such developments are the Company's proprietary property in which the Company has exclusive right.

10. **Agreement binding after employment ends.** This Agreement survives and continues after termination of the Employee's employment, and shall be binding regardless of the reason for the termination.

11. **Other agreements.** This Agreement's provisions are supplementary and are not limited by other similar agreements that an employee might have with the Company.

12. **Agreement benefits Company's subsidiaries, affiliates, successors, and assigns.** This Agreement benefits and is enforceable by the Company and its subsidiaries, affiliated companies, successors, or assigns.

13. **Severability agreement.** An invalid portion of this Agreement does not affect the other provisions. If any part of the Agreement is found to be invalid or unenforceable by a court, the Company and the Employee agree to renegotiate to provide protections and provisions

similar to those earlier agreed upon. If a provision involving time or geographic scope of this Agreement is determined to be unenforceable, then the time or geographic requirement will be adjusted to address the invalid provision.

14. **Applicable law.** This Agreement should be interpreted and enforced in accordance with the laws of the State of Minnesota, without regard to its choice of law principles or rules.

15. **Attorneys' fees and expenses.** The Employee agrees to reimburse the Company for its reasonable attorneys' fees, costs, and expenses incurred in enforcing the Employee's obligations hereunder.

16. **Employment at will.** This Agreement does not alter the at will nature of the employment relations between the Company and the Employee. Both parties understand that either party may end the employment relationship at any time, for any reason, without notice.

I HAVE READ AND UNDERSTAND THE FOREGOING NON-COMPETE, NON-SOLICITATION, AND CONFIDENTIALITY AGREEMENT AND I AGREE TO COMPLY WITH ITS TERMS.

_____        04-27-04
**Employee Name**                       **Date**

_____        _____
**Witness on Behalf of Employer**       **Date**

833518.1

3.

# EXHIBIT N



**CONFIDENTIAL**

October 23, 2007

Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

Re: Separation Agreement and General Release

Dear Michel:

This letter proposes the following Separation Agreement and General Release ("Agreement") between you and The Bergquist Company regarding the terms of your separation from employment.

1. **Background.**
   a. You were employed by the Company as Regional Sales Manager. You and the Company have agreed to end your employment relationship on an amicable basis.

   b. On October 23, 2007 your employment with the Company will end.

2. **Terms of Agreement.**
   In order to effect the end of your employment and to provide you with certain benefits that you would not otherwise be entitled to, you and the Company agree as follows:

   a. This Agreement shall not be in any way construed as an admission by the Company that it has acted wrongfully with respect to you or any other person, or that you have any rights whatsoever against the Company.

   b. Even if you do not sign this Agreement, the Company will pay you the compensation that you have earned through the date of your termination, any accrued vacation benefits, in accordance with the terms and conditions of such policy or plan. Similarly, even if you do not sign this Agreement, you will be offered benefits to which you are entitled under the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").


   c. In exchange for the promises contained in this Agreement and release of claims as set forth below, and provided that you sign this Agreement and return it to me by forty-five (45) days from the date this Agreement is delivered to you or by December 5, 2007, whichever is later, and do not revoke this Agreement:

      (1) The Company will pay the year-end payout for RSM NA Sales Incentive Compensation (which includes the Revenue, Design-Win and IPO components) to be paid in a single payment after financial audit on or about the 3rd week of December, after this Agreement is signed, and upon the expiration of all applicable revocation periods stated in this Agreement.

   d. In consideration of the promises contained in this Agreement, you agree:

Separation Agreement and General Release
Page 2

(1) On behalf of yourself and anyone claiming through you, irrevocably and unconditionally to release, acquit and forever discharge and covenant not to sue the Company, its subsidiaries, divisions, affiliated companies, predecessors, successors and assigns, as well as each's past and present officers, directors, employees, shareholders, trustees, joint venturers, partners, and anyone claiming through them (hereinafter "Released Parties" collectively), in each's individual and/or corporate capacities, from any and all claims, liabilities, promises, actions, damages and the like, known or unknown, which you ever had against any of the Released Parties arising out of or relating to your employment with the Company and/or the termination of your employment with the Company. Said claims include, but are not limited to: (1) employment discrimination (including claims of sex discrimination and/or sexual harassment) and retaliation under Title VII (42 U.S.C. section 2000e etc.) and under 42 U.S.C. section 1981 and section 1983; age discrimination under the Age Discrimination in Employment Act (29 U.S.C. sections 621-634) as amended, under the Minnesota Human Rights Act, and/or any other relevant state statutes, laws or municipal ordinances; (2) disputed wages; (3) wrongful discharge and/or breach of any alleged employment contract; or (4) claims based on any tort, such as invasion of privacy, defamation, fraud and infliction of emotional distress; (5) claims based on a contract of employment or written offer of employment, employee handbook or personnel policies, or any similar memorandum or writing or understanding of any kind pertaining to your terms and conditions of employment.

(2) That you shall not bring any legal action against any of the Released Parties for any claim waived and released under this Agreement and that you represent and warrant that no such claim has been filed to date. You further agree that should you bring any type of administrative or legal action arising out of claims waived under this Agreement, you will bear all legal fees and costs, including those of the Released Parties.

e. You agree to refer any and all reference checks to Diane Erdman, Human Resource Manager, and you know that any such references will be limited to confirmation of your dates of employment and last position held. The obligation under this Paragraph is separable and any failure by the Company to perform the obligation in this Paragraph will only give rise to an action to enforce this Paragraph.

f. You agree that you will not, directly or indirectly, disclose the fact of and terms of this Agreement, including the severance benefits, to anyone other than your spouse or attorney, except to the extent such disclosure may be required for accounting or tax reporting purposes or as otherwise required by law.

g. This Agreement shall be binding on the parties and upon their heirs, administrators, representatives, executors, successors and assigns and shall inure to their benefit and to that of their heirs, administrators, representatives, executors, successors and assigns.

h. On or before October 25, 2007 you will return to me all of the Company's property and documents and information in your possession including, but not limited to, notes, memoranda and diaries you may have kept, computer log-on information and passwords, customer lists, mailing lists, account information, samples, prototypes, price lists and pricing information any phone cards, cellular phone, automobile, credit cards, fax machine or any other office equipment or supplies, and all of the tangible and intangible property

Separation Agreement and General Release
Page 3

belonging to the Company and relating to your employment with the Company. You further represent and warrant that you have not retained any copies, electronic or otherwise, of such property.

i.    You will cooperate fully with the Company in its defense of or other participation in any administrative, judicial or other proceeding arising from any charge, complaint or other action which has been or may be filed.

j.    You agree that you will not make any comments relating to the Company or its employees which are critical, derogatory or which may tend to injure the business of the Company.

k.    In the event that you breach any of your obligations under this Agreement, any outstanding obligations of the Company hereunder shall immediately terminate, and any payments previously made to you under this Agreement shall be returned to the Company.

3.    The provisions of this Agreement are severable. If any provision is held to be invalid or unenforceable, it shall not affect the validity or enforceability of any other provision.

4.    You will continue to comply with the terms of the Non-Compete, Non-Solicitation and Confidentiality Agreement between you and the Company, executed on May 3, 2004, and know and understand that the obligations contained in that Agreement survive execution of this Agreement and your termination of employment. In particular, you shall not disclose any confidential or proprietary information (specifically including pricing, margins, key customer contacts and their profiles not generally known to the public) which you acquired as an employee of the Company to any other person or entity, or use such information in any manner that is detrimental to the interest of the Company. A copy of your Confidentiality Agreement is attached as Exhibit A.

5.    This Agreement sets forth the entire agreement between you and the Company and supersedes any and all prior oral or written agreements or understandings between you and the Company concerning the subject matter of this Agreement. This Agreement may not be altered, amended or modified, except by a further written document signed by you and the Company.

6.    Any controversy or claim arising out of or relating to this Agreement, or its breach, or to the employment relationship between the Employee and the Company, shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota. Such arbitration shall proceed in accordance with the then governing rules of the National Arbitration Forum (NAF). Judgment upon the award rendered may be entered and enforced in any court of competent jurisdiction. It is agreed that the parties shall choose a single, neutral arbitrator from among a panel of not less than seven (7) proposed arbitrators, and that the parties may have no more than two (2) panels of arbitrators presented to them by the NAF. The parties agree that they shall each bear their own costs associated with the arbitration, including any filing fee to be paid by them and their own legal counsel expenses. The parties further agree that they shall share equally in the reasonable costs and the fees of the neutral arbitrator.

7.    You represent that you fully understand your right to review all aspects of this Agreement with an attorney of your choice, that you have had the opportunity to consult with an

No. 0.

Separation Agreement and General Release
Page 4

attorney of your choice, that you have carefully read and fully understand all the provisions of this Agreement and that you are freely, knowingly and voluntarily entering into this Separation Agreement and General Release.

8.  You acknowledge that you have been informed of your right to rescind the release of claims in regard to claims arising under the Minnesota Human Rights Act, Minnesota Statutes Chapter 363 within fifteen (15) days of the signing of this Agreement.  In order to be effective, the rescission must be in writing and delivered to The Bergquist Company, 18930 West 78th Street, Chanhassen, MN  55317, by hand or mail.  If delivered by mail, the rescission must be postmarked within the required time period, properly addressed to Diane Erdman, Human Resource Manager, as set forth above and sent by certified mail, return receipt requested.

You acknowledge that you have been informed of your rights under the Federal Older Workers Benefit Protection Act of 1990, that: (1) you have the right to consult with an attorney before signing this Agreement; (2) you do not waive rights or claims under the federal Age Discrimination in Employment Act that may arise after the date this waiver is executed; (3) you have forty-five (45) days from the date of this letter to consider this Agreement.

If you are willing to enter into this Agreement, please signify your acceptance in the space indicated below, and return to me not later than forty-five (45) days from the date this Agreement is first presented to you or December 5, 2007, whichever is later.  As I noted earlier, this Agreement will not become effective, and none of the severance benefits in Paragraph 2 will be paid, until you sign this Agreement.

Sincerely,

Diane Erdman
Human Resource Manager
The Bergquist Company

Accepted and agreed to on this

26 day of November , 2007.

_____
Employee signature

# **<u>EXHIBIT O</u>**



| To: | Regional Sales Managers (RSM) North America (NA) Thermal Division |
|---|---|
| From: | Gene Montgomery – Director of Sales North America – Thermal Division |
| CC: | George Lucia – SVP / Division Manager Thermal Products |
| Date: | February 5th, 2007 |
| | |
| Subject: | **RSM NA Sales Incentive Compensation Plan FY07 Thermal Division** |

## Purpose

The *RSM NA Sales Incentive Compensation Plan – Thermal Division* (the "RSM NA TD Plan") is designed to compensate field sales personnel for accomplishment directly contributing to revenue generation.

## Plan Year FY07

October 30, 2006 through October 26, 2007.

## Eligibility

All Regional Sales Managers (RSM) North America – Thermal Division who earn a base salary during the Plan Year and are on the active payroll as of the last day of the Plan Year.

Employees who become eligible due to promotion or employment, or who retire, are laid off due to lack of work, or the estate of an eligible employee who dies, prior to the last day of the Plan Year will be eligible to participate on a prorated basis for the portion of the plan year during which the employee was actively employed by Bergquist. Such a proration begins on day one of the first complete fiscal quarter served by the employee.

If an employee voluntarily resigns, or is terminated for performance related issues or for cause prior to the last day of the Plan Year, the award is forfeited.

## Bonus Award

There are three main components of the RSM NA TD Plan as follows:
1) Top Line Revenue Performance.
2) New Business Design Win (DW).
3) Individual Performance Objectives (IPO).

The revenue component varies by Product Family as follows:

**REDACTED**

**Individual Performance Objectives (IPO)**

1) Establish a maximum of four paid Individual Performance Objectives (IPO's) at the beginning of the fiscal year.
2) Each IPO will have a monetary valuation based on successful completion of the objective.
3) IPO incentive compensation is capped at a maximum of $4,000 annually.
4) Payout is at Plan Year end.

*For additional details, please consult the Sales IC Plan calculation worksheets.*

**Bergquist Company Incentive Program**

Individuals participating in a qualified Sales Incentive Compensation Program are not eligible for the Bergquist Company Incentive Program based on Return on Assets (ROA.)  Please contact the Human Resources department with any questions or concerns.

## Payments

Bonus payments are at the sole discretion of the Company.  Bonus checks, less applicable withholdings, are normally distributed within thirty days after the incentive period ends (quarterly or annually as applicable.)

## Interpretation, Modification or Termination of Plan

The Company retains the exclusive right to interpret, modify, continue or discontinue this program at anytime.  Questions concerning the intent, interpretation, or application of this program should be directed to the Director of Sales North America – Thermal Division or Human Resources department as appropriate.