1  Lisa M. Chapman (SBN #118113)
   NIXON PEABODY LLP
2  200 Page Mill Road, Second Floor
   Palo Alto, CA  94306-2022
3  Telephone: (650) 320-7700
   Fax:  (650) 320-7701
4
   Attorney for Plaintiff
5  MICHEL GELINAS

6

7                    UNITED STATES DISTRICT COURT

8                  NORTHERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| MICHEL GELINAS, an individual,<br><br>                   Plaintiff,<br><br>      vs.<br><br>THE BERGQUIST COMPANY, a Minnesota corporation, and DOES 1 – 20, inclusive,<br><br>                   Defendants. | Case No.: C-08-02137 PVT<br><br>**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER OR STAY PROCEEDINGS** |

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

1

## TABLE OF AUTHORITIES

2
Page

3
**Cases**

4
*Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881 (1998)...................................... 12

5
*Church of Scientology of California v. U.S. Dep't of the Army*, 611 F.2d 738 (9th Cir.

6
1979). ................................................................................................................................ 13

7
*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ........................................... 14

8
*Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853 (1994). ....... 12

9
*Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736 (Minn. 1982) ..................................... 9

10
*Nedlloyd Lines B.V. v. Superior Court of San Mateo Cty.*, 834 P.2d 1148 (Cal. 1992). ..... 12

11
*Nordin v. Nutri/System, Inc.*, 897 F.2d 339 (8th Cir. 1990)........................................... 10, 11

12
*Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93 (9th Cir. 1982)................................. 13

13
*Rosenblum v. Travelbus.com, Ltd.*, 299 F.3d 657 (7th Cir. 2002). .................................. 9, 10

14
*Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161 (Minn. Ct. App. 1993)................................. 9

15
*Satellite Indus., Inc. v. Keeling*, 396 N.W.2d 635 (Minn. Ct. App. 1987)........................... 12

16
*Suburban Leisure Ctr., Inc. v. AMF Bowling Prod., Inc.*, 468 F.3d 523 (8th Cir. 2006) .... 15

17
*Ward v. Follett Corp.*, 158 F.R.D. 645 (N.D. Cal. 1994). .................................................... 13

18
**Statutes**

19
9 U.S.C. § 4 ............................................................................................................................ 16

20
Cal. Bus. & Prof. § 16600 ...................................................................................................... 12

21
22
23
24
25
26
27
28

Plaintiff, Michel Gelinas ("Gelinas"), hereby submits this Brief in Opposition to the Motion to Dismiss or in the Alternative Transfer or Stay Proceedings ("Motion") filed by Defendant, The Bergquist Company, in this action.

I.    **INTRODUCTION**

Defendant's Motion should be denied.  The "first to file" rule should not be mechanically applied in this matter to result in the dismissal, transfer, or stay of these proceedings.  Gelinas' filing of the Complaint was not a "blatant attempt" at forum shopping, as described by Defendant; instead, this was a request by Gelinas for judicial determination of the enforceability of the agreements between the parties and arbitrability of Defendant's dispute under the Non-Compete, Non-Solicitation and Confidentiality Agreement.  No forum selection clause prohibited Gelinas from filing suit in California and he had not agreed to submit decisions concerning arbitrability to an arbitrator.  Moreover, Defendant's premature filing of its Complaint in Minnesota appears to be part of its own design to win the race to the courthouse and engage in forum shopping and should not be rewarded by a dismissal of the instant matter.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**

Defendant provides an extensive procedural history and factual background in its Brief in Support of Motion to Dismiss or in the Alternative Transfer or Stay Proceedings ("Brief in Support"). *See* Docket No. 15.  Believing that a non-segregated timeline of the various events is the most effective method of presenting the detailed chronology, and to correct inaccuracies and misstatements in the Brief in Support, Gelinas offers the following:

1.    On April 12, 2004, Defendant extended an offer of employment to Gelinas to work as its Regional Sales Manager.  *See* Docket No. 16, Ex. L.  This offer of employment was not conditioned on Gelinas signing any restrictive covenant prohibiting his ability to work in his chosen profession following the separation of his employment with Defendant.  *See* Docket No. 16, Ex. L. Gelinas accepted this offer on the same day.  *See* Docket No. 16, Ex. L.

2.    On April 27, 2004, Gelinas commenced his employment with Defendant by attending a mandatory new employee orientation at Defendant's corporate headquarters in Minnesota.  *See*

Docket No. 1, Ex. A, ¶ 9 and Docket No. 16, Ex. H.  Only then did Defendant inform Gelinas that he would be required to execute the Non-Compete, Non-Solicitation and Confidentiality Agreement ("Non-Compete Agreement").  *See* Docket No. 1, Ex. A, ¶ 9, and Docket No. 16, Ex. H and Ex. M. Defendant did not offer Gelinas any consideration for his execution of the Non-Compete Agreement other than his previously agreed upon employment, salary and benefits.  *See* Docket No. 1, Ex. A, ¶ 9, and Docket No. 16, Ex. H and Ex. M.  Fearing that he would be terminated if he did not sign the Non-Compete Agreement and would be without a job (he had resigned from his previous employment to accept the position with Defendant), Gelinas signed the Non-Compete Agreement. *See* Docket No. 1, Ex. A, ¶ 9.  The Non-Compete Agreement does not contain an arbitration provision.  *See* Docket No. 16, Ex. M.  Defendant's claims that the execution of the Non-Compete Agreement occurred contemporaneously with the acceptance of the offer of employment and start of employment and that Gelinas started his employment with Defendant on May 4, 2004 are incorrect given the date of the Non-Compete Agreement.  *See* Brief in Support, page 7.  The acceptance of the offer of employment is dated April 12, 2004, and the Non-Compete Agreement is dated April 27, 2004, indicating an intervening time of two weeks between those dates and another week between the signing of the Non-Compete Agreement and the date that Defendant claims Gelinas started work. *See* Docket No. 16, Ex. L and Ex. M.

3.      Throughout his employment with Defendant, Gelinas lived in California and was employed as a Regional Sales Manager.  *See* Docket No. 1, Ex. A, ¶ 8.  Gelinas' duties included coordinating and managing the sales activities of Defendant in its Northern California, Oregon, Washington and Canada sales territory.  *See* Docket No. 1, Ex. A, ¶ 8.  All of these duties were performed by Gelinas in California and other parts of his assigned sales territory.  *See* Docket No. 1, Ex. A, ¶ 8 and Docket No. 16, Ex. I.

4.      On October 23, 2007, Defendant terminated Gelinas' employment without cause and presented Gelinas with the Separation Agreement and General Release ("Separation Agreement"). *See* Docket No. 1, Ex. A, ¶ 14 and Docket No. 16, Ex. N.  The consideration for the Separation Agreement was payment of the RSM NA Sales Incentive, which was already due and owed to

-2-

Gelinas. *See* Docket No. 1, Ex. A, ¶¶ 13 and 14, and Docket No. 16, Ex. H and Ex. N. Gelinas signed the Separation Agreement on November 26, 2007. *See* Docket No. 16, Ex. N. The Separation Agreement contains an arbitration provision, but does not contain a choice of law provision in opposition to Defendant's claim. *See* Docket No. 16, Ex. N and Brief in Support, page 8.

5.     On December 5, 2007, Gelinas commenced his employment with Laird Technologies, Inc. ("Laird"), as its Director of Sales – Western Division. *See* Docket No. 1, Ex. A, ¶ 15. Since his employment began with Laird, Gelinas has spent approximately ninety percent (90%) of his time in areas that are located outside of the sales territory assigned to him during his employment with Defendant. *See* Docket No. 1, Ex. A, ¶ 15. Furthermore, only fifteen to twenty percent (15-20%) of Laird's business is comparable to Defendant's. *See* Docket No. 1, Ex. A, ¶ 15.

6.     On February 8, 2008, Gelinas received a letter from Defendant's legal counsel claiming that he was in violation of the Non-Compete Agreement and that it would file a claim in arbitration if Gelinas did not comply with the restrictive covenants in the Non-Compete Agreement. *See* Docket No., Ex. A, ¶ 13.

7.     On February 15, 2008, respective counsel for Defendant and Gelinas had a telephone conference discussing the letter Gelinas received on February 8, 2008. *See* Declaration of Margaret C. Hershiser ("Hershiser Declaration"), ¶¶ 2 and 3. During their discussion, Gelinas' counsel raised a number of issues concerning the Non-Compete Agreement and Separation Agreement, including the lack of applicability of the arbitration provision in the Separation Agreement to the Non-Compete Agreement, and indicated that Gelinas' position was that neither of the agreements were enforceable. *See* Hershiser Declaration, ¶ 4. Defendant's counsel indicated he would speak to his client and inform Gelinas' counsel of its intended next steps. *See* Hershiser Declaration, ¶ 5. Thereafter, on February 28, 2008, Defendant's counsel informed Gelinas' counsel that it intended to file an arbitration claim. *See* Hershiser Declaration, ¶ 6. At no time during either of their discussions did Defendant's counsel indicate that Defendant would be filing a lawsuit regarding the issues between the parties. *See* Hershiser Declaration, ¶ 8. Defendant's characterization of Gelinas as being unresponsive following receipt of its letter is inaccurate. Brief in Support, page 8.

OPPOSITION TO MOTION TO DISMISS
11077393.1

C-08-02137 PVT

8.    On March 27, 2008, Gelinas filed his Complaint for Declaratory Relief in the Superior Court of California in and for the County of Santa Clara, Case No. 108CV109164. *See* Docket No. 1, Ex. A. In his Complaint, Gelinas is seeking to have the Non-Compete Agreement and the Separation Agreement deemed invalid and the arbitration provision in the Separation Agreement deemed inapplicable to any dispute arising under the Non-Compete Agreement. *See* Docket No. 1, Ex. A. Defendant was served with this lawsuit on April 3, 2008. *See* Declaration of Lisa M. Chapman ("Chapman Declaration"), Ex. D.

9.    On March 31, 2008, Gelinas was served with the Claim that Defendant had filed with the National Arbitration Forum ("NAF"), File Number MX0802002048690. *See* Docket No. 16, Ex. F. (Defendant submitted its Claim to the NAF on February 28, 2008, and the NAF accepted the Claim on March 18, 2008. *See* Docket No. 16, Ex. F and Ex. G).

10.    On April 1, 2008, Gelinas received a Waiver request from Defendant in connection with the lawsuit that Defendant had filed with the United States District Court for the District of Minnesota, Case No. 0:08-CV-00569. *See* Docket No. 16, Ex. B. In the Complaint, Defendant is seeking an order compelling Gelinas to submit to arbitration and an order staying all judicial proceedings pending arbitration, both pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). (Defendant filed this lawsuit on February 28, 2008, the same day it submitted its Claim to the NAF and before Gelinas could have indicated in any manner that he would fail, neglect or refuse to arbitrate as is required for Defendant to be an aggrieved party entitled to an order compelling arbitration under the FAA. *See* Docket No. 16, Ex. A). After discussion with counsel located in California, Minnesota, and Nebraska, Gelinas elected not to waive formal service of process. Gelinas was formally served on May 13, 2008. *See* Docket No. 16, Ex. C.

11.    On April 24, 2008, Defendant removed the Complaint for Declaratory Relief to this Court from the Superior Court of California in and for the County of Santa Clara. *See* Docket No. 1.

12.    On May 5, 2008, Gelinas filed his Response and Counter Claim in the arbitration proceeding with the NAF. *See* Docket No. 16, Ex. H (both signed by Gelinas). In his Response, Gelinas contests the application of the arbitration clause in the Separation Agreement to Defendant's

Claim arising under the Non-Compete Agreement and asserts various other defenses and objections to Defendant's Claim. *See* Docket No. 16, Ex. H. In his Counter Claim, Gelinas is seeking payment of his RSM NA Sales Incentive, which purportedly formed the consideration for the Separation Agreement. *See* Docket No. 16, Ex. H. As the arbitration clause in the Separation Agreement would govern this dispute over nonpayment of the RSM NA Sales Incentive, assuming that the Separation Agreement is enforceable, Gelinas elected to pursue this matter before the NAF, while also filing a claim with the State of California, Department of Industrial Relations, Division of Labor Standards Enforcement. *See* Chapman Declaration, Ex. A.

13.     On May 15, 2008, Gelinas filed a Request for Stay with the NAF, asking that the arbitration be stayed until a ruling was issued by a California Court on Gelinas' Complaint for Declaratory Relief. *See* Docket No. 16, Ex. I. Defendant did not file an objection to Gelinas' Request for Stay.

14.     On May 20, 2008, the NAF granted Gelinas' Request for Stay. *See* Docket No. 16, Ex. J.

15.     On May 27, 2008, Gelinas filed a Motion for Remand to have his Complaint for Declaratory Relief transferred back to the Superior Court of California in and for the County of Santa Clara from this Court. *See* Docket No. 11. This motion is scheduled for hearing on July 29, 2008. *See* Docket No. 13.

16.     On June 4, 2008, Defendant filed a Motion to Compel Arbitration, Stay Action, and Enjoin Parallel Proceedings with the Minnesota district court. *See* Docket No. 16, Ex. D. A hearing on this motion is presently scheduled for July 18, 2008. *See* Docket No. 16, Ex. E.

17.     On June 6, 2008, Defendant filed a Motion to Dismiss or in the Alternative Transfer or Stay Proceedings with this Court. *See* Docket No. 15. This motion is scheduled for hearing on July 29, 2008. *See* Docket No. 15.

18.     On June 24, 2008, Gelinas filed a Motion to Dismiss the Minnesota litigation under Federal Rule of Civil Procedure 12(b) due to a lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. *See* Chapman Declaration, Ex. C. As the basis for dismissal,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Gelinas cites to the Court's lack of subject-matter jurisdiction due to Defendant's admission before the NAF that its Claim against Gelinas is for less than the amount in controversy required for diversity jurisdiction and the FAA does not provide an independent basis for federal jurisdiction. *See* Chapman Declaration, Ex. C. Additionally, Gelinas contends that Defendant has failed to state a claim upon which relief can be granted because there is no mandatory arbitration provision in the Non-Compete Agreement and the Separation Agreement cannot be used to compel arbitration of a dispute arising under an entirely separate and distinct agreement. *See* Chapman Declaration, Ex. C. A hearing on this motion is scheduled for August 8, 2008.[1] *See* Chapman Declaration, Ex. B.

## III.    RELEVANT AGREEMENTS

Central to Defendant's Motion are two separate and independent agreements – the Non-Compete Agreement and the Separation Agreement – involving the parties. In its Brief in Support, Defendant seeks to use provisions from each of these agreements to establish that its dispute with Gelinas, concerning purported violations of the Non-Compete Agreement, is subject to mandatory arbitration in Minneapolis, Minnesota, and should be decided under Minnesota law. *See* Brief in Support, page 5. Such efforts by Defendant must be unsuccessful, as it cannot apply provisions contained in one agreement to a situation arising under the other agreement; had Defendant wished to have specific provisions in each agreement, including its choice of law and mandatory arbitration of disputes, it should have drafted the agreements accordingly. Defendant's attempts to now formulate an agreement to its liking from the Non-Compete Agreement and the Separation Agreement are self-serving and legally impermissible. Additionally, application of Minnesota law to the Non-Compete Agreement would violate a fundamental public policy of California and California has a materially greater interest in the outcome of this matter.

### A.    Non-Compete, Non-Solicitation, and Confidentiality Agreement

As stated above, Gelinas executed the Non-Compete Agreement at a mandatory new

---

[1] Gelinas respectfully requests that this Court reserve ruling on Defendant's Motion to Dismiss or in the Alternative Transfer or Stay Proceedings until the Minnesota district court issues a decision on Gelina's Motion to Dismiss. The granting of Gelina's Motion to Dismiss may make the instant motion moot.

employee orientation after having commenced his employment with Defendant. *See* Docket No. 1, Ex. A, ¶ 9. This agreement was not executed by Gelinas prior to commencing his employment, as Defendant claims, and was never executed by Defendant. *See* Brief in Support, page 7, and Docket No. 16, Ex. H and Ex. M. (Gelinas, again, highlights that the written offer of employment was accepted on April 12, 2004, and the Non-Compete Agreement was not signed until April 27, 2004. *See* Docket No. 16, Ex. L and Ex. M). The Non-Compete Agreement contains the following provisions which are relevant to the Court's consideration of the Motion:

> **3. Non-competition.** During employment and for twelve (12) months after terminating employment with [Defendant], regardless of the reason, [Gelinas] shall not, directly or indirectly, on behalf of [Gelinas] or any other person or entity, provide services or products that compete with any product or service provided by [Defendant] or which was in development during [Gelinas'] employment. Competition is defined to include acting as an employee, principal, partner, agent, or consultant with any organization engaging in a similar or same business as [Defendant], including, but not limited to, businesses that create, manufacture or distribute thermal materials, thermal substrates, electronic components, membrane switches, or touch screens.

*   *   *

> **5. Non-solicitation of customers.** [Gelinas] agrees not to compete with [Defendant] by doing business with or seeking orders from any customer of [Defendant] for 12 months after termination of the employment relationship. ...

*   *   *

> **14. Applicable law.** This Agreement should be interpreted and enforced in accordance with the laws of the State of Minnesota, without regard to its choice of law principles or rules.

*See* Docket No. 16, Ex. M. Significantly, the Non-Compete Agreement does not contain any arbitration provision. *See* Docket No. 16, Ex. M.

B.    **Separation Agreement and General Release**

The parties entered into the Separation Agreement after Defendant terminated Gelinas' employment without cause. *See* Docket No. 1, Ex. A, ¶ 14. The Separation Agreement contains the following provisions which are relevant to the Court's consideration of the Motion:

> 4. You will continue to comply with the terms of the Non-Compete, Non-Solicitation and Confidentiality Agreement between you and

-7-

[Defendant], executed on May 3, 2004, and know and understand that the obligations contained in that Agreement survive execution of this Agreement and your termination of employment. In particular, you shall not disclose any confidential or proprietary information (specifically including pricing, margins, key customer contract and their profiles not generally known to the public) which you acquired as an employee of [Defendant] to any other person or entity, or use such information in any manner that is detrimental to the interest of [Defendant]. A copy of your Confidentiality Agreement is attached as Exhibit A.

*        *        *

6. Any controversy or claim arising out of or relating to this Agreement, or its breach, or to the employment relationship between [Gelinas] and [Defendant], shall be settled by final and binding arbitration, upon the request of either party, in Minneapolis, Minnesota. Such arbitration shall proceed in accordance with the then governing rules of the National Arbitration Forum (NAF). Judgment upon the award rendered may be entered and enforced in any court of competent jurisdiction. It is agreed that the parties shall chose a single, neutral arbitrator from among a panel of not less than seven (7) proposed arbitrators, and that the parties may have no more than two (2) panels of arbitrators presented to them by the NAF. The parties agree that they shall each bear their own costs associated with the arbitration, including any filing fee to be paid by them and their own legal counsel expenses. The parties further agree that they shall share equally in the reasonable costs and the fees of the neutral arbitrator.

*See* Docket No. 16, Ex. N. Importantly, the Separation Agreement does not state that it integrates, incorporates or otherwise merges the Non-Compete Agreement into it and does not contain a choice of law provision. *See* Docket No. 16, Ex. N.

### C.    There is no valid agreement to arbitrate between the parties.

Defendant's statement that "this dispute involves the application, interpretation or construction of two written agreements between the parties" is accurate; however, its conclusion that those agreements "taken together, require that all disputes relating to Gelinas' former employment relationship with Bergquist and his post-employment activities be arbitrated in accordance with the Rules of the National Arbitration Forum in Minneapolis, Minnesota" is incorrect and unsupported by the facts and law. *See* Brief in Support, page 20. The entire proceeding filed by Defendant pursuant to the FAA in the District Court for Minnesota is premised on a flawed reading of the agreements and

improper application of the agreements to each other[2].

Should the Non-Compete Agreement and the Separation Agreement be found enforceable[3], there is still not a valid agreement to arbitrate the Claim that Defendant submitted to the NAF. The Non-Compete Agreement and Separation Agreement cannot be read in conjunction to mandate arbitration of disputes arising under the Non-Compete Agreement, when the Separation Agreement, an entirely separate and independent agreement, contains the only arbitration provision in either agreement.

As stated above, only the Separation Agreement contains a provision mandating arbitration of certain disputes. The Non-Compete Agreement was not incorporated into the Separation Agreement. While the Separation Agreement references the Non-Compete Agreement, noting its existence and providing that the obligations contained therein survive the termination of Gelinas' employment with Defendant, the Separation Agreement **does not** purport to specifically incorporate or integrate the Non-Compete Agreement. *See Rosenblum v. Travelbus.com, Ltd.*, 299 F.3d 657, 666 (7th Cir. 2002) ("Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate, and there is no such expression here"). In fact, the Separation Agreement clearly contemplates that these two agreements would remain separate, stating, "[y]ou…know and understand that the obligations contained in **that** [Non-Compete]

---

[2] As a result of this, Gelinas has filed a Motion to Dismiss Defendant's Complaint with the Minnesota district court for failure to state a claim upon which relief can be granted. *See* Chapman Declaration, Ex. C.

[3] Gelinas contests the enforceability of the Non-Compete Agreement and the Separation Agreement due to a lack of consideration, among other reasons. With respect to the Non-Compete Agreement, Gelinas' job offer from Defendant was never conditioned on execution of any restrictive covenant and he was only told that he was required to sign the agreement as a condition of his employment with Defendant after he had commenced his employment with Defendant. *See* Docket No. 1, Ex. A, ¶ 9 and Docket No. 16, Ex. H and L; *Sanborn Mfg. Co. v. Currie*, 500 N.W.2d 161, 164 (Minn. Ct. App. 1993) ("[Employee] and [employer] had an oral employment agreement before they executed the noncompetition agreement, and thus independent consideration for the noncompetition agreement was required."); and *Nat'l Recruiters, Inc. v. Cashman*, 323 N.W.2d 736 (Minn. 1982). In connection with the Separation Agreement, it states that the consideration is the RSM NA Sales Incentive, which Gelinas was already entitled to at the time of his termination by Defendant, since Defendant terminated him without cause. *See* Docket No. 1, Ex. A, ¶¶ 13 and 14 and Docket No. 16, Ex. N and O.

-9-

Agreement survive execution of **this** [Separation] Agreement and your termination of employment." *See* Docket No. 16, Ex. N (emphasis added). The separate and discrete nature of these agreements is further evidenced by their underlying purposes: the Non-Compete Agreement is intended to protect Defendant's confidential and proprietary information while the Separation Agreement obtains a release of any potential claims by Gelinas against Defendant in exchange for payment of severance compensation.

Since the only arbitration provision in any agreement between the parties is included in the Separation Agreement, and the Non-Compete Agreement is not incorporated therein, any disputes between the parties arising under the Non-Compete Agreement are not subject to mandatory arbitration based on Section 6 of the Separation Agreement. Defendant cannot rely on the reference in the Separation Agreement to the Non-Compete Agreement to establish applicability of the arbitration provision, as this is insufficient when the underlying dispute involves the Non-Compete Agreement. *See Rosenblum, supra* (denying arbitration based on arbitration provision in an employment agreement, where the employment agreement was referenced in an acquisition agreement and the dispute concerned the acquisition agreement rather than the employment agreement). Furthermore, the Non-Compete Agreement contemplates legal action in connection with its enforcement, as Section 13 states, "[i]f any part of the [Non-Compete] Agreement is found to be invalid or unenforceable by a **court**..." *See* Docket No. 16, Ex. M (emphasis added). Gelinas cannot be forced to arbitrate any dispute with Defendant under the Non-Compete Agreement because he has not specifically and expressly agreed to do so.

This conclusion is further supported by the decision reached by the Eighth Circuit Court of Appeals in *Nordin v. Nutri/System, Inc.*, 897 F.2d 339 (8th Cir. 1990), involving an appeal from the U.S. District Court for the District of Minnesota, the jurisdiction whose law Defendant contends should apply in this matter. In *Nordin*, an employee signed an employment application which included a covenant not to compete and, during employment, signed a non-disclosure agreement that modified the restrictive covenant in the employment application. Neither the employment application nor the non-disclosure agreement contained an arbitration provision. After the employee separated

from employment with the employer, the employee signed a settlement agreement with the employer that did contain an arbitration provision. When the employee brought suit in state court seeking a declaratory judgment that the restrictive covenants were unenforceable, the employer removed the action to federal court and filed a motion to compel arbitration. The employer appealed after the district court granted an injunction prohibiting the employer from proceeding to arbitrate the dispute and denied the employer's motion to compel arbitration.

> The district court denied [employer's] motion to compel arbitration on the basis that the non-disclosure agreement containing the restrictive covenant contains no arbitration clause....This conclusion was based upon two specific findings: (1) the non-compete provision at issue in this case was not specifically incorporated by reference into the settlement agreement....

*Nordin*, 897 F.2d at 344-45. The appellate court upheld this finding, stating that "because the non-disclosure and settlement agreements are separate and independent and the non-disclosure agreement containing the disputed restrictive covenant contains no arbitration clause, the district court did not err in denying [employer's] motion to compel arbitration." *Id.* at 345. Based on the similarities between the factual circumstances, this same argument should govern in the present circumstances and arbitration denied for any claims arising under the Non-Compete Agreement.

As there is no mandatory arbitration provision in the Non-Compete Agreement and Defendant's dispute with Gelinas concerns violations of the restrictive covenants in the Non-Compete Agreement, there is not a valid agreement to arbitrate between the parties.

**D.    The Non-Compete Agreement should be governed by California law, because application of Minnesota law would violate a fundamental public policy of California and California and California has a materially greater interest.**

Defendant contends that Minnesota law should govern based on the choice of law provision in the Non-Compete Agreement. *See* Brief in Support, page 6. However, the application of Minnesota law to the present circumstances would violate California's fundamental public policy and California has a materially greater interest in this matter. Therefore, California law should be applied.

California courts will enforce a choice of law clause in a contract in favor of another jurisdiction's law unless:

-11-

1    (a) the chosen state has no substantial relationship to the parties or the
     transaction and there is no other reasonable basis for the parties choice
2    or [¶] (b) application of the law of the chosen state would be contrary to
     a fundamental policy of a state which has a materially greater interest
3    than the chosen state in the determination of the particular issue and
     which, under the rule of § 188, would be the state of the applicable law
4    in the absence of an effective choice of law by the parties.

5    *Nedlloyd Lines B.V. v. Superior Court of San Mateo Cty.*, 834 P.2d 1148, 1151 (Cal. 1992), *quoting*

6    Restatement (Second) of Conflicts of Laws § 187(2).  In the present case, the second factor precludes

7    applying Minnesota law.

8         Application of Minnesota law with respect to the Non-Compete Agreement would violate a

9    fundamental public policy of California.  Minnesota will enforce restrictive covenants if reasonable.

10   *See Satellite Indus., Inc. v. Keeling*, 396 N.W.2d 635 (Minn. Ct. App. 1987).  Conversely, under

11   California law, restrictive covenants are expressly prohibited by statute.  *See* Cal. Bus. & Prof. §

12   16600*, et seq.*, and *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 900 (1998)

13   (observing that § 16600 reflects a "strong public policy" of California).  Consequently, Minnesota

14   law conflicts with a fundamental public policy of California insofar as Minnesota will enforce

15   reasonable restrictive covenants while California will not enforce such restraints, except in narrow

16   circumstances inapplicable to this matter.

17        California has the materially greater interest in having its law applied.  At all times during his

18   employment with Defendant, Gelinas was a California resident.  *See* Docket No. 16, Ex. I.

19   Additionally, Gelinas did not perform any employment-related activities in Minnesota during the

20   course of his employment; all were to be performed and were actually performed by Gelinas in

21   California (out of his office located in Santa Clara) and other areas of his assigned sales territory, *i.e.*,

22   Oregon, Washington, and Canada.  *See* Docket No. 1, Ex. A, ¶ 12 and Docket No. 16, Ex. H.  That

23   Defendant is headquartered in Minnesota does not outweigh these compelling facts.  *See Metro*

24   *Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal.App.4th 853, 860 (1994) ("California courts

25   have held that 'the interests of the employee in his own mobility and betterment are deemed

26   paramount to the competitive business interests of the employers, where neither the employee nor his

27   new employer has committed any illegal act accompanying the employment change'").

28        Based on this, Minnesota law should not be applied, in spite of the forum selection clause, and

-12-

1   California law should govern the Non-Compete Agreement.

2   IV.    **LEGAL ARGUMENT**

3          The "'first to file' rule is not a rigid or inflexible rule to be mechanically applied, but rather is

4   to be applied with a view to the dictates of sound judicial administration." *Pacesetter Sys., Inc. v.*

5   *Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982).   As the Ninth Circuit Court of Appeals has stated,

6   "[c]ircumstances and modern judicial reality...may demand that we follow a different approach [than

7   the first to file rule] from time to time." *Church of Scientology of California v. U.S. Dep't of the*

8   *Army*, 611 F.2d 738, 750 (9th Cir. 1979).   "District courts can, in the exercise of their discretion,

9   dispense with the first-filed principle for reasons of equity.   The circumstances under which an

10  exception to the 'first to file' rule typically will be made include bad faith, anticipatory suits, and

11  forum shopping....A court may also relax the 'first to file' rule if the balance of convenience weighs

12  in favor of the later filed action." *Ward*, 158 F.R.D. at 648.   The "first to file" rule allows a district

13  court to transfer, stay or dismiss an action when a similar complaint has been filed in another federal

14  court.   *Ward v. Follett Corp.*, 158 F.R.D. 645, 648 (N.D. Cal. 1994), *citing Alltrade, Inc. v. Uniweld*

15  *Prod., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991).

16         This action should not be dismissed.   While Gelinas does not dispute that the Minnesota

17  lawsuit was filed prior to this lawsuit and involves the same parties, there are significant inherent

18  differences between the Minnesota and California litigation, which Defendant acknowledges.

19  Despite the same parties being involved in all current proceedings – the Minnesota and California

20  litigation and the NAF arbitration – the relief sought is dissimilar.   The Minnesota suit seeks to

21  compel arbitration; it does not seek either "declaratory relief nor substantive relief on the merits."

22  *See* Brief in Support, page 14.   In contrast, the Complaint for Declaratory Relief seeks a complete

23  determination of the enforceability of the Non-Compete Agreement and the Separation Agreement

24  and the inapplicability of the arbitration provision in the Separation Agreement to the Non-Compete

25  Agreement.   The discovery available in an action under the FAA is severely restricted in comparison

26  to that available in the instant declaratory judgment action.   The NAF has even acquiesced to a

27  California court deciding these issues by granting Gelinas' Request for a Stay until a California court

28

-13-

has ruled on the Complaint for Declaratory Relief. *See* Docket No. 16, Ex. I and J. Defendant never opposed the Request for a Stay with the NAF and it is inequitable for Defendant to now assert that this action should be dismissed when the NAF has determined that arbitration should proceed only after this matter is concluded.

Additionally, the unique circumstances involving the timing of the filing of the various matters warrants an exception to a mechanical application of the "first to file" rule. When Defendant's counsel informed Gelinas' counsel that it intended to pursue arbitration concerning Gelinas' purported violations of the Non-Compete Agreement, Gelinas' counsel also advised Defendant's counsel that Gelinas strongly disputed the enforceability of both the Non-Compete Agreement and the Separation Agreement and considered the arbitration provision in the Separation Agreement inapplicable to a dispute arising under the Non-Compete Agreement, as it is an entirely separate and independent agreement. *See* Hershiser Declaration, ¶ 4. Thereafter, Gelinas filed his Complaint for Declaratory Relief in the Superior Court of California in and for the County of Santa Clara to resolve the issues his counsel had addressed with Defendant's counsel. *See* Docket No. 1, Ex. A. It was only after this Complaint for Declaratory Relief was filed that Gelinas became aware that Defendant had filed its Complaint under the FAA with the U.S. District Court for the District of Minnesota and was served with the Claim filed with the NAF. *See* Docket No. 16, Ex. 3 and F.

Defendant cannot deny that Gelinas is entitled to a determination by a court as to whether he is required to submit to arbitration before the NAF; having the arbitrator determine whether the dispute is arbitrable is counterintuitive and not provided for in either the Non-Compete Agreement or the Separation Agreement. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) (the arbitrability of a matter is a question for the courts, not the arbitrator, unless the parties have agreed to submit the question of arbitrability to the arbitrator). Thus, Gelinas' decision to file the Complaint for Declaratory Judgment in California state court is entirely permissible as nothing in any of his agreements with Defendant indicates that the parties have agreed to submit the question of arbitrability to the arbitrator. Gelinas' actions are undeserving of Defendant's characterization that he is seeking to "wrest jurisdiction of the dispute from the arbitrator and to transplant it into a federal

-14-

court in California," as Gelinas filed suit in state court to merely pursue his legal rights. *See* Brief in Support, page 14. Defendant's implicit assertion that Gelinas should not be able to raise his legitimate, legally-based disputes to the Claim in arbitration are apparent in its statement that, "Gelinas' Complaint in this action seeks not to promote or protect the integrity of the arbitral process, rather it seeks to avoid it entirely." *See* Brief in Support, page 14. However, what is more damaging to the arbitral process is forcing individuals to arbitrate disputes that they have not agreed to submit to mandatory arbitration without any opportunity for the individual to raise his or her objections or have a court decide the issue. *See Suburban Leisure Ctr., Inc. v. AMF Bowling Prod., Inc.*, 468 F.3d 523, 526 (8th Cir. 2006) ("A party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). The Complaint for Declaratory Judgment was filed by Gelinas so that the disputes subject to the arbitral process between the parties could be better defined and decided by the Court.

Moreover, Defendant's assertions that Gelinas' filing of the Complaint for Declaratory Relief was a "blatant effort to engage in forum shopping," are unpersuasive *See* Brief in Support, page 13. Neither the Non-Compete Agreement nor the Separation Agreement contain any provision that establishes a certain forum within which the parties must file judicial action concerning their disputes. Absent any such stipulation, Gelinas was free to choose California – his state of residence, the predominate location where his employment-related activities for Defendant occurred, and where the conduct which purportedly forms the basis for Defendant's claim with the NAF occurred. Defendant's apparent dislike of this choice cannot transform Gelinas' actions into forum shopping.

Equally unconvincing is Defendant's characterization of the Minnesota action as "intended to preserve and protect the integrity of the arbitral process" and not representing an effort by Defendant "to preempt Gelinas' choice of forum or to engage in forum shopping." *See* Brief in Support, page 14. Instead, Defendant filed the Minnesota action preemptively and before the conditions precedent under the FAA had been met. The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in the manner provided for

-15-

in such agreement." 9 U.S.C. § 4. However, at the time Defendant filed its Complaint in Minnesota, Gelinas, although having voiced his interpretation of the agreements and mandatory arbitration requirements, had never failed, neglected, or refused to arbitrate. In fact, when the Minnesota action was filed (February 28, 2008), Defendant's arbitration claim had not yet been filed with the NAF (it was subsequently filed on March 18, 2008) and Gelinas had not been served with the arbitration claim (he was served on March 31, 2008). *See* Docket No. 16, Ex. F and G. This premature filing by Defendant appears part of its own design to beat Gelinas to the courthouse, likely anticipating that Gelinas would file a complaint for declaratory judgment on the enforceability of the agreements and arbitrability of the parties' disputes (as is his right to do so), and establish its claim as the first filed. This is further bolstered by the fact that during conversations their telephone conferences preceding the filing of the Complaint for Declaratory Relief in California and the Complaint under the FAA in Minnesota, Defendant's counsel never informed Gelinas' counsel that Defendant intended to file a lawsuit concerning the disputes between the parties, despite one of the conversations occurring on the same day that the Complaint was filed in Minnesota. *See* Hershiser Declaration, ¶ 8. Moreover, given the lack of a forum selection clause (despite Defendant's repeated claims to the contrary), Defendant likely wanted to make a preemptive strike to establish Minnesota as the judicial and arbitral forum, knowing that any suit instituted by Gelinas would be filed in California based on Gelina's connections with the state.

Based on all of the above, Defendant has demonstrated that the "first to file" rule should not be applied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff, Michel Gelinas, respectfully requests that the Motion to Dismiss, or in the Alternative, Transfer or Stay Proceedings filed by Defendant, The Bergquist Company, be denied.

1   DATED: July 8, 2008                    Respectfully submitted,

2                                          NIXON PEABODY LLP

3

4

5   By: _____
                                           Lisa M. Chapman
6                                          Attorneys for Plaintiff
                                           MICHEL GELINAS
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-17-