1  Richard Osen (SBN 042566)
   Ann Taylor Schwing (SBN 91914)
2  Julie A. Raney (SBN 176060)
   McDONOUGH HOLLAND & ALLEN PC
3  Attorneys at Law
   555 Capitol Mall, 9th Floor
4  Sacramento, CA 95814
   Phone: 916.444.3900
5  Fax:   916.444.8334

6  Bruce J. Douglas (Pro Hac Vice, SBN 23966MN)
   Willow J. Najjar (Pro Hac Vice, SBN 320948MN)
7  LARKIN HOFFMAN DALY & LINDGREN Ltd.
   1500 Wells Fargo Plaza
8  7900 Xerxes Avenue South
   Minneapolis, MN 55431-1194
9  Phone: 952.896.1569
   Fax:   952.842.1717

10

11 Attorneys for Defendant THE BERGQUIST COMPANY

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14 MICHEL GELINAS,                    )  NO. 08-CV-02137 (PVT)
                                      )
15              Plaintiff,            )
                                      )
16       v.                           )  **DEFENDANT'S BRIEF IN OPPOSITION
                                      )  TO PLAINTIFF'S MOTION TO REMAND**
17 THE BERGQUIST COMPANY,             )
                                      )  **DATE:      JULY 29, 2008**
18              Defendant.            )  **TIME:      10:00 A.M.**
                                      )  **DEPT:      COURTROOM 4TH FL.**
19 ┘

20

21

22

23

24

25

26

27

28

**MHA**
cDonough Holland & Allen PC
Attorneys at Law

# TABLE OF CONTENTS

I.  THE FEDERAL DECLARATORY JUDGMENT ACT DOES NOT BAR
    REMOVAL.....................................................................................................1

    A.  Summary of Gelinas' Arguments in Favor of Remand. ...............................1

    B.  The Brillhart Analysis is Inapplicable.  This Court does not have Discretion to
        Determine Whether the Agreements at Issue are Void and Unenforceable. ...............2

    C.  The Court Does not Have Broad Discretion to Decline Jurisdiction under
        Brillhart Because Plaintiff Seeks More than Mere Declaratory Relief. .....................5

    D.  Brillhart is Inapplicable Because There is no Parallel State Proceeding....................6

    E.  Assuming, Arguendo, that this Court determines that the Brillhart Factors
        Apply, the Brillhart Factors Militate in Favor of this Court Retaining
        Jurisdiction. ...............................................................................................8

II. REMOVAL TO U.S. DISTRICT COURT IS APPROPRIATE HERE BASED ON
    DIVERSITY JURISDICTION. ....................................................................... 10

    A.  Bergquist Established that the Amount In Controversy Exceeds $75,000. ............... 10

    B.  Gelinas Concedes that the Amount in Controversy Exceeds $75,000. ...................... 11

MHA

cDonough Holland & Allen PC
Attorneys at Law

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND        1111449v1 29501/0004

1

## TABLE OF AUTHORITIES

2

3

## CASES

4

*American States Ins. Co. v. Kearns,*
5     15 F.3d 142 (9th Cir. 1994)..................................................................................2

*Brillhart v. Excess Ins. Co. of America,*
6     316 U.S. 491 (1942).........................................................................2, 5, 6, 7, 8

7 *Buckeye Check Cashing, Inc. v. Cardenga,*
    546 U.S. 440 (2006)..................................................................................3
8

*Chamberlain v. Allstate Ins. Co.,*
9     931 F.2d 1361 (9th Cir. 1991)..................................................................5

10 *Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
    207 F.3d 1126 (9th Cir. 2000)..................................................................3
11

*Colorado River Water Conservation Dist. v. United States,*
12     424 U.S. 800 (1976)..................................................................................5

13 *First State Ins. Co. v. Callan Assoc., Inc.,*
    113 F.3d 161 (9th Cir. 1997)..................................................................5
14

*Gaus v. Miles Inc.,*
15     980 F.2d 564 (9th Cir. 1992)..................................................................10

16 *Government Employees Ins. Co. v. Dizol,*
    133 F.3d 1220.................................................................1, 2, 5, 7, 8, 9
17

*Hall Street Assoc., L.L.C. v. Mattel, Inc.,*
18     128 S. Ct. 1396 (2008)..................................................................3

19 *Legion Ins. Co. v. Wisconsin-California Forest Products,*
    2001 WL 35809242 at *3 (E.D. Cal. 2001 ....................................7
20

*Lenscrafters, Inc. v. Liberty Mutual Fire Ins. Co.,*
21     2007 WL 2729411 at *5 (N.D. Cal. 2007)....................................7

22 *Matheson v. Progressive Specialty Ins. Co.,*
    319 F.3d 1089 (9th Cir. 2003)..................................................................10
23

*Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,*
24     460 U.S. 1 (1983) ..................................................................................2

25 *Nagrampa v. MailCoups, Inc.,*
    469 F.3d 1257 (9th Cir. 2006)..................................................................3, 4
26

*Omstead et al. v. Dell, Inc.,*
27     473 F. Supp. 2d 1018 (N.D. Cal. 2007) ....................................3

28

*Preston v. Ferrer,*
   128 S. Ct. 978 (2008) ......................................................................................................3

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
   388 U.S. 395 (1967) ........................................................................................................3

*Public Affairs Associates v. Rickover,*
   369 U.S. 111 (1962) ........................................................................................................2

*Skelly Oil Co. v. Phillips Petroleum Co.,*
   339 U.S. 667 (1950) ........................................................................................................1

*Snodgrass v. Provident,*
   147 F.3d 1163 (9th Cir. 1998) ........................................................................................5

*Supermicro Computer Inc. v. Digitechnic, S.A.*
   45 F. Supp. 2d 1147 (N.D. Cal. 2001) ...........................................................................2

*Wilton v. Seven Falls Co.,*
   515 U.S. 277 (1995) ................................................................................................2, 6, 7

**FEDERAL CASES**

28 U.S.C. § 2201 ....................................................................................................................1

28 U.S.C. § 2201(a) ............................................................................................................1, 5

9 U.S.C. § 2 ............................................................................................................................2

**CONSTITUTIONAL PROVISIONS**

Cal. Bus. & Prof. Code § 16600 ............................................................................................6

MHA
cDonough Holland & Allen pc
Attorneys at Law

**INTRODUCTION**

Defendant The Bergquist Company ("Bergquist") submits this Brief in Opposition to Plaintiff Michel Gelinas' ("Gelinas") Motion to Remand.  Ninth Circuit precedent supports the removal of this action.  First, contrary to Gelinas' assertions, the Federal Declaratory Judgment Act does not bar removal.  Second, removal was appropriate because diversity requirements for federal jurisdiction are satisfied.  More specifically, the parties, including Gelinas, seek damages in excess of $75,000.  In fact, Gelinas seeks more than $92,000 in a sworn claim in the underlying arbitration proceeding.  For the reasons set forth below, Bergquist asks this Court to retain jurisdiction and to determine whether this action should be dismissed, stayed, or transferred to the U.S. District Court of Minnesota where an action is currently pending.  Gelinas' Motion to Remand should be denied in its entirety.

**FACTUAL BACKGROUND**

The essential facts are set out in Bergquist's Motion to Dismiss, which is pending before the Court (Docket No. 15) and scheduled for hearing at the same time as this Motion.

Additional, pertinent facts are as follows.  On June 2, 2008, Gelinas appeared in the first filed action in the District of Minnesota and, after seeking an extension of time to respond to Bergquist's Complaint, filed a Motion to Dismiss.  On June 4, 2008, Bergquist filed in the Minnesota U.S. District Court a Motion to Compel Arbitration.  Douglas Decl. (Docket No. 16) ¶ 5, Exh. D.

**ARGUMENT**

I.      **THE FEDERAL DECLARATORY JUDGMENT ACT DOES NOT BAR REMOVAL.**

A.      **Summary of Gelinas' Arguments in Favor of Remand.**

Gelinas erroneously states in his Motion to Remand that "[r]emoval is barred by the Declaratory Judgment Act."  Gelinas Motion, p. 4.  To the contrary, the Declaratory Judgment Act, 28 U.S.C. § 2201, actually confers upon any federal court the power to decide declaratory actions in which federal subject matter jurisdiction requirements are satisfied.   28 U.S.C.  § 2201(a); *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1222-1223 (9th Cir. 1998)) (*citing Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).

/ / /

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND          1111449v1 29501/0004

1    Gelinas heavily relies on *Supermicro Computer Inc. v. Digitechnic, S.A.*, 45 F. Supp. 2d

2    1147, 1150 (N.D. Cal. 2001) for the proposition that even when a court has subject matter

3    jurisdiction, it still must determine whether entertaining the action is appropriate.   While this

4    statement is generally accurate, district courts also cannot "decline to entertain such an action as a

5    matter of whim or personal disinclination."   *Dizol*, 133 F.3d at 1223 (*quoting Public Affairs*

6    *Associates v. Rickover*, 369 U.S. 111, 112 (1962)).

7    The Ninth Circuit has developed a three-factor test for district courts to consider in

8    determining whether to exercise jurisdiction, in certain circumstances, based on the Supreme Court's

9    decisions in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls*

10   *Co.*, 515 U.S. 277 (1995) (the "*Brillhart*" factors).   These factors include:  (1) avoiding needless

11   determination of state law issues; (2) discouraging litigants from filing declaratory actions as a

12   means of forum shopping; and, (3) avoiding duplicative litigation.   District courts should consider

13   other factors as well, such as whether the declaratory action will settle all aspects of the controversy

14   or whether the use of a declaratory action will result in entanglement between the federal and state

15   court systems.   *Dizol*, 133 F.3d at 1225 n.5 (*citing American States Ins. Co. v. Kearns*, 15 F.3d 142,

16   145 (9th Cir. 1994) (J. Garth, concurring)).    Finally, a district court may also consider the

17   convenience of the parties and the availability and relative convenience of other remedies.  *Id.*

18   Gelinas' reliance upon the *Brillhart* factors, however, is misplaced.  This case is not one of

19   the types of cases in which the *Brillhart* factors apply.  Brillhart's broad discretionary standard is

20   inapplicable in this case.  Moreover, even if this Court determines that *Brillhart* applies, the *Brillhart*

21   factors actually militate in favor of Bergquist's position.

22   **B.    The *Brillhart* Analysis is Inapplicable.  This Court does not have Discretion to**
        **Determine Whether the Agreements at Issue are Void and Unenforceable.**

23

24   First, under the Federal Arbitration Act ("FAA"), written agreements to arbitrate disputes

25   arising out of transactions involving interstate commerce "shall be valid, irrevocable, and

26   enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

27   9 U.S.C. § 2.  The FAA "creates a body of federal substantive law of arbitrability, enforceable in

28   both state and federal courts and pre-empting any state laws to the contrary."  *Moses H. Cone Mem.*

M·H·A
cDonough Holland & Allen pc
Attorneys at Law

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND                    1111449v1 29501/0004

*Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Further, federal courts are limited to determining whether an arbitration provision itself is valid and enforceable under § 2 of the FAA. *Omstead et al. v. Dell, Inc.*, 473 F. Supp. 2d 1018, 1022 (N.D. Cal. 2007) (*citing Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). That is, when a challenge is to the validity or enforceability of a contract as a whole, the challenge is to be considered by the arbitrator, not the court. *See Buckeye Check Cashing, Inc. v. Cardenga,* 546 U.S. 440, 441 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967). When the "crux of the complaint" is not the invalidity or enforceability of the contract as a whole, but rather the arbitration provision itself, then the challenge is a question for the federal courts. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006). This Term, the Supreme Court again emphasized that an attack on the validity of an entire contract, as opposed to an attack on an arbitration provision, is a matter to be heard by an arbitrator. *Preston v. Ferrer*, 128 S. Ct. 978 (2008); *Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 128 S. Ct. 1396 (2008). While a district court, in the course of analyzing the validity of an arbitration provision, may examine the circumstances surrounding the entire contract, it may not examine the validity of the contract as a whole. *Nagrampa*, 469 F.3d at 1257.

In *Nagrampa*, franchisee Nagrampa brought suit against franchisor MailCoups, Inc. in California state court alleging common law misrepresentation and fraud and state law violations. *Id.* at 1266. Following removal to federal court, MailCoups moved to compel arbitration and to stay or dismiss court proceedings. *Id.* at 1267. Nagrampa, opposing arbitration, argued that the arbitration clause was unenforceable because it was unconscionable. *Id.* After the district court found that the agreement was enforceable and valid, Nagrampa appealed. *Id.* A three-judge panel of the Court of Appeals, in a now-withdrawn opinion, found that the unconscionability of the arbitration provision contained in the agreement was a question for the arbitrator. *Id.* On rehearing *en banc*, the Ninth Circuit, however, determined that since Nagrampa did not seek invalidation of the franchise agreement as a whole, but rather, attacked the unconscionability of solely the arbitration provision, the court was the proper forum to hear the challenge. *Id.* at 1277.

The Ninth Circuit based its decision on a careful examination of Nagrampa's complaint. *Id.* at 1266. More specifically, Nagrampa's first three causes of action alleged common law torts, while

MHA
cDonough Holland & Allen PC
Attorneys at Law

1    her fifth and sixth causes of action attacked the enforceability of the arbitration provision as

2    unconscionable under California law. *Id.* Most notably, Nagrampa did not make any claims in her

3    complaint that the entire agreement was invalid or unenforceable. *Id.* The Ninth Circuit treated the

4    claim as one directed specifically to the enforceability of the arbitration clause and proceeded to

5    examine whether the arbitration provision was unconscionable. *Id.* at 1266-67.

6        Consequently, *Nagrampa* is easily distinguishable from the facts at bar because Gelinas

7    seeks invalidation of the Non-compete and Separation Agreements as a whole. Unlike Nagrampa

8    who made no claims whatsoever that the agreement as a whole was invalid or unenforceable, the

9    crux of Gelinas' complaint is that the Agreements are void and unenforceable. More specifically,

10   Gelinas' asserts two causes of action in his Complaint for Declaratory Relief, the first in relation to

11   the Non-compete Agreement and the second in relation to the Separation Agreement. In both causes

12   of action, he explicitly contends that the Agreements are void and unenforceable. Complaint

13   (Docket No. 1) ¶¶ 19-20, 24, Exh. A. Gelinas argues, for example, that the Non-compete Agreement

14   "is void and unenforceable" because it prohibits him from working for a competing business in

15   violation of California law. Complaint (Docket No. 1) ¶ 19, Exh. A. Likewise, Gelinas contends

16   that the Separation Agreement "is not supported by adequate consideration and is therefore

17   unenforceable." Complaint (Docket No. 1) ¶ 24, Exh. A. Gelinas does not ask this Court to merely

18   consider the circumstances surrounding the Agreements to determine whether the arbitration

19   provision itself is unconscionable.[1] Rather, Gelinas asks this Court to determine whether the entire

20   Agreements are void and unenforceable.

21       Stripped to its essence, Gelinas' complaint must be viewed as nothing less than an attack on

22   the Agreements in their entirety. Under Supreme Court and Ninth Circuit precedent, this matter is

23

___

24   [1]    Assuming, *arguendo*, that Gelinas' complaint could be construed as attacking solely the
     unconscionability of the arbitration provision, a matter for the court to decide, such a claim is
25   without merit. Under California law, a contractual clause is unenforceable if it is both procedurally
     and substantively unconscionable. *Davis v. O'Melveny Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007)
26   (*citing Amendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (2000)). Procedural
     unconscionability is concerned with oppression and surprise. *Id.* Substantive unconscionability, on
27   the other hand, focuses on a "lack of mutuality" – whether the terms are so one-sided as to shock the
     conscience. *Id.* at 1075 (*quoting Sultani v. W & S Life Ins. Co.*, 258 F.3d 1038, 1042 (9th Cir. 2001).
28   The arbitration provision in this case is neither procedurally nor substantively unconscionable, and
     Gelinas has presented no evidence to suggest otherwise.

1  precisely the type that must be referred to an arbitrator.  Accordingly, this Court, not a California

2  state court, should retain jurisdiction over this matter and should decide to dismiss, stay, or transfer it

3  to the U.S. District Court of Minnesota where a Motion to Compel Arbitration is pending.

4       **C.      The Court Does not Have Broad Discretion to Decline Jurisdiction under
          *Brillhart* Because Plaintiff Seeks More than Mere Declaratory Relief.**

5

6          In determining whether to exercise its discretion not to hear a case under the Declaratory

7  Judgment Act, a federal district court must first determine whether there are any independent claims

8  in the case that exist apart from purely declaratory relief.  28 U.S.C. § 2201(a); *Snodgrass v.*

9  *Provident*, 147 F.3d 1163, 1167-68 (9th Cir. 1998).  When other claims, such as rescission, are

10  joined with an action for declaratory relief, a district court should not, as a general rule, remand or

11  decline to entertain a claim for declaratory relief.  *Dizol*, 133 F.3d at 1225 (*citing Chamberlain v.*

12  *Allstate Ins. Co.*, 931 F.2d 1361 (9th Cir. 1991)).  Instead, the district court has a "'virtually

13  unflagging'" obligation to exercise the jurisdiction conferred upon it.  *First State Ins. Co. v. Callan*

14  *Assoc., Inc.*, 113 F.3d 161 (9th Cir. 1997) (*quoting Colorado River Water Conservation Dist. v.*

15  *United States*, 424 U.S. 800, 817 (1976)).

16          In *Callan*, a liability insurer sued an insured for a declaratory judgment that there was no

17  coverage because insured allegedly failed to disclose information regarding underlying litigation in

18  policy application and failed to provide timely notice of litigation.  113 F.3d at 162.  Callan moved

19  the court to decline jurisdiction over the declaratory action, or in the alternative, to stay the action

20  pending the underlying litigation against the insured.  *Id.*  After the magistrate judge declined to

21  exercise jurisdiction, First State appealed.  The Ninth Circuit, found that "[t]he action, as it

22  developed, was an action for rescission rather than merely for declaratory judgment.  Rescission was

23  *implicit* as a remedy in the complaint." *Id.* at 163 (emphasis added).[2]  The Ninth Circuit, indicating

24  that an action to rescind an insurance contract is distinct from an action simply to interpret an

25  / / /

26

27  [2]      The Ninth Circuit also found that rescission became explicit as First State's objective in the
    Joint Management Conference.  The court appears to rely on statements made by First State in its
28  Joint Case Management Conference Statement and in its brief to the magistrate judge in which First
    State used words such as void and rescission.



insurance contract, found that the federal district court had a "virtually unflagging" obligation to exercise jurisdiction. *Id.*

The Ninth Circuit made clear in *Callan* that an action to interpret a contract is distinct from an action to rescind that contract. What Gelinas requests is nothing short of rescission of the contracts at issue. Although Gelinas labels his Complaint as one for Declaratory Relief, it is clear that he seeks more than mere declaratory relief: he seeks affirmative relief. More specifically, in his Prayer for Relief, Gelinas asks the Court for a judicial declaration that the Non-Compete Agreement is "void under Cal. Bus. & Prof. Code § 16600, et. seq." and to bar Bergquist from enforcing it against him. Complaint - Prayer for Relief (Docket No. 1) ¶ 3, Exh. A. Similarly, Gelinas seeks the Court to find that the Separation Agreement "is unenforceable by Defendants due to lack of adequate consideration." Complaint - Prayer for Relief (Docket No. 1) ¶ 8, Exh. A. Further, the majority of Gelinas' Prayer for Relief centers on voiding the Agreements in their entirety and declaring them unenforceable.

While Gelinas' does not explicitly use the word rescission, rescission is clearly implicit as his remedy.[3] His complaint does not merely seek to *define* the legal responsibilities and rights in controversy, it seeks to treat the Agreements as though they never existed. Rescission is a request for affirmative relief— a remedy that takes this case outside the scope of a pure declaratory judgment action. As a result, this Court has a "virtually unflagging" obligation to exercise its jurisdiction and is not afforded the broad discretion provided in *Brillhart*.

### D.    *Brillhart* is Inapplicable Because There is no Parallel State Proceeding.

In *Wilton*, the Supreme Court was once again asked to interpret the parameters of the discretion given to federal courts in declaratory judgments actions under *Brillhart*. 515 U.S. at 281. The Court held that *Brillhart's* discretionary standard governs district court's discretion to stay a declaratory action during a parallel state court action. *Id.* at 290. Moreover, the Court explicitly declined to extend its holding to cases in which there are no parallel state proceedings, stating:

---

[3]    Black's Law Dictionary defines rescission as "to abrogate, annul, avoid, or cancel a contract. . . [t]o declare a contract void in its inception and to put an end to it as though it never were." Black's Law Dictionary 1306 (6th ed. 1990).


MHA
cDonough Holland & Allen PC
Attorneys at Law

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND                    1111449v1 29501/0004

1

2

> "We do not attempt at this time to delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings."

3

4

*Id.* That is, the Supreme Court has limited the scope of the district courts' discretion to decline

5

jurisdiction in declaratory judgment actions under *Brillhart* to cases in which there are parallel state

6

proceedings. The Supreme Court has not held that such broad discretion exists in a case where no

7

parallel state proceedings exist.

8

Thus, federal district courts in California have determined that *Brillhart* is inapplicable where

9

there are no parallel state proceedings because the court does not risk "the gratuitous interference

10

with the orderly and comprehensive disposition of state court litigation." *Legion Ins. Co. v.

11

Wisconsin-California Forest Products*, 2001 WL 35809242 at *3 (E.D. Cal. 2001) (attached as

12

Exhibit A to Declaration of Willow J. Najjar (Anderson) ("Najjar (Anderson) Decl.")); *see also

13

Lenscrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, 2007 WL 2729411 at *5 (N.D. Cal. 2007) (Najjar

14

(Anderson) Decl., Exh. B). The court in *Legion* noted that it would likely be an abuse of discretion

15

for a district court to refuse jurisdiction over a declaratory action where there is no pending parallel

16

state proceeding. *Id.* (*citing Wilton*, 515 U.S. at 290).[4]

17

By arguing that this Court must consider the *Brillhart* factors in making its determination

18

whether to exercise jurisdiction, Gelinas asks this Court to expand the *Brillhart* doctrine outside its

19

intended scope. More specifically, Gelinas fails to recognize that the *Brillhart* factors are

20

unnecessary and inapplicable in this case because there is no parallel state proceeding – there is only

21

a parallel and earlier filed federal proceeding in Minnesota. The *Brillhart* factors were provided to

22

guide the district courts in their exercise of discretion because parallel state proceedings present

23

24

25

26

27

28

---

[4]    Ninth Circuit precedent regarding whether *Brillhart* applies to declaratory judgment actions in the absence of parallel state proceedings is unclear. In *Maryland Cas. Co. v. Knight*, 96 F.3d 1284, 1289 (9th Cir. 1996), the Court held that the district court was under no obligation to exercise its discretion to decline jurisdiction over a declaratory suit where, at the time of initiation of the action, there was no pending state court proceeding. In fact, the Ninth Circuit noted that "[c]ases, such as this one, 'in which there are no parallel state proceedings,' lie at the 'outer boundaries' of the district court's discretion under the Declaratory Judgment Act." *Id.* (*citing Wilton*, 515 U.S. at 290). On the contrary, in *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002), the Court rejected the insurer's argument that the district court must retain jurisdiction when there is no pending state proceeding. The Ninth Circuit, however, appears to have based its rejection of the insurer's argument on the insurer's overly broad arguments based on *Dizol* and on the insurer's

**MHA**
cDonough Holland & Allen PC
Attorneys at Law

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND                1111449v1 29501/0004

1    inherent problems, such as entanglement between the federal and state systems. Where no state suit

2    is pending, as with the case at bar, the inherent issues that spur application of the *Brillhart* factors are

3    nonexistent. Accordingly, this Court need not consider the *Brillhart* factors and should not exercise

4    its discretion to decline jurisdiction.

5              **E.    Assuming, Arguendo, that this Court determines that the *Brillhart* Factors
                       Apply, the *Brillhart* Factors Militate in Favor of this Court Retaining
6                      Jurisdiction.**

7              Even if this Court were to determine that the *Brillhart* factors still apply, the factors militate

8    in favor of retaining jurisdiction and not remanding to state court for the following reasons. First,

9    the district court should avoid "needless determination of state law issues." *Dizol*, 133 F.3d at 1225.

10   Here, there is no parallel state proceeding involving the precise legal issue in controversy. As such,

11   retaining jurisdiction would not result in a needless determination of state law.

12             Second, the court should "discourage litigants from filing declaratory actions as a means of

13   forum shopping." *Id.* Here, that is precisely what Gelinas is attempting to do by filing this later-

14   filed declaratory judgment action after Bergquist filed its Complaint in the United States District

15   Court for the District of Minnesota and lodged the case with the National Arbitration Forum (NAF).

16   In his brief, Gelinas alleges that Bergquist is "forum shopping." Gelinas' Motion to Remand p. 6.

17   In fact, it is Gelinas who has engaged in impermissible forum shopping. Gelinas filed this action

18   originally in a California state court for the purpose of wresting jurisdiction over this dispute from

19   the arbitrator. Douglas Decl. (Docket No. 16) ¶ 7, Exh. F. On February 5, 2008, Bergquist gave

20   Gelinas notice that it considered Gelinas to be in breach of his contracts and demanded that he cease

21   and desist from further breach. Najjar (Anderson) Decl. ¶ 5, Exh. C. Rather than responding with

22   any indication that he contested Bergquist's claims and intended to file suit, Gelinas simply ignored

23   Bergquist's demand. Bergquist filed the Minnesota action and commenced arbitration proceedings

24   in order to proceed with its claims in accordance with the parties' agreement to arbitrate and to

25   protect the integrity of the arbitral process. It cannot be said that Bergquist filed the Minnesota

26   action merely to win the "race to the courthouse." Bergquist filed its action in the federal forum

27   _____

28   failure to acknowledge the general rule of discretion in declaratory actions. *Id.* at 802-803.

MHA

cDonough Holland & Allen PC
Attorneys at Law

where the parties' Agreements require that the arbitration take place.[5]  The object of the Minnesota action is to support the arbitral process.  In contrast, Gelinas' California action was filed as a reactionary measure to avoid the arbitral forum and venue previously agreed to by Bergquist and Gelinas in their Agreements.

Third, the court should "avoid duplicative litigation."  *Dizol*, 133 F.3d at 1225.  Both parties have filed motions in the Minnesota federal action and both parties have filed claims for relief before the NAF.  It is clear that litigation and arbitration involving the same parties, the same conduct, and the same disputed transactions are already being pursued in a different venue.  If this Court were to remand the case to state court, the proceedings in Minnesota would still remain.  Accordingly, this factor weighs heavily in favor of this Court retaining jurisdiction and dismissing or transferring the action to the first-filed forum, the U.S. District Court for the District of Minnesota.

Fourth, the declaratory judgment requested by Gelinas would not "settle all aspects of the controversy."  *Id.*  There is currently an action pending in federal court in Minnesota and a proceeding with the NAF.  More specifically, Gelinas has served a counterclaim for more than $92,000 in the NAF proceeding.  Douglas Decl. (Docket No. 16) ¶ 9, Exh. H.  This claim would certainly not be settled by the declaratory action in California.  Further, a judgment from a California state court would lead to conflicts between Minnesota and California law if the parties attempt to enforce inconsistent judgments.

Fifth, remanding the action to the Superior Court of California will result in entanglement between the federal and state court systems.[6]  *Dizol*, 133 F.3d at 1225.  Moreover, given the pending

---

[5]   Gelinas focuses on the fact that the Non-compete Agreement does not contain an arbitration provision to support his argument that he cannot be forced to arbitrate the dispute.  The Separation Agreement, however, clearly states:
> any controversy or claim arising out of or relating to this Agreement, or its breach, <u>or to the employee relationship between the Employee and the Company</u>, shall be settled by final and binding arbitration, upon the request of either party in Minneapolis, Minnesota.

Douglas Decl. (Docket No. 16) ¶ 15, Exh. N (emphasis added).

[6]   In fact, this factor militates in favor of this court *dismissing* this action.  More specifically, a motion to compel arbitration is already pending in Minnesota District Court which will inevitably address the precise issue at stake in this action: whether and to what extent the Agreements are enforceable.  Gelinas already has a forum in which to bring all his claims.  Allowing this action to remain in California district court would thus result in duplicative litigation.

1    federal suit in Minnesota, this court should dismiss, stay, or transfer the action to Minnesota to avoid

2    entanglement between federal district courts.

3    **II.    REMOVAL TO U.S. DISTRICT COURT IS APPROPRIATE HERE BASED ON**
     **DIVERSITY JURISDICTION.**

4

5        Gelinas asserts in his Motion to Remand to State Court that Bergquist fails to allege damages

6    that satisfy the jurisdictional minimum.  Gelinas Motion (Docket No. 11) p. 8.  Bergquist, however,

7    established in its removal documents that the amount in controversy exceeds $75,000 and Gelinas

8    concedes that the amount he seeks also exceeds $75,000.

9        The Ninth Circuit has endorsed the Fifth Circuit's view regarding how defendant's may

10   establish the amount in controversy and which types of evidence defendants may utilize.  *See*

11   *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (*citing Gaus v.*

12   *Miles Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)); *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d

13   373, 377 (9th Cir. 1997).  More specifically, where the amount in controversy is not evident from the

14   face of the plaintiff's complaint, the court may consider facts presented in the removal petition, as

15   well as any "'summary-judgement-type [sic] evidence relevant to the amount in controversy at the

16   time of removal.'"  *Matheson*, 319 F.3d at 1091 (*citing Singer*, 116 F.3d at 377).

17       It is well settled that in actions for declaratory or injunctive relief, the amount in controversy

18   is measured by the "value of the object of the litigation."  *Hunt v. Washington Apple Advertising*

19   *Comm'n*, 432 U.S. 333 (1977).  When a suit involves enforcement of a covenant not to compete,

20   courts will typically look to the profits earned by the employer on business generated by the

21   employee during the period preceding termination.  *Mahoney v. DePuy Orthopedics, Inc.*, 2007 WL

22   3341389 at *4 (E.D. Cal. 2007).  Najjar (Anderson) Decl. ¶ 6, Exh. D.  Courts have also considered

23   the revenues generated by an employee and the revenues lost by an employer.  *Id.*

24       **A.    Bergquist Established that the Amount In Controversy Exceeds $75,000.**

25       In Bergquist's removal notice to this Court, it stated that Gelinas, in direct violation of his

26   Non-compete Agreement, persisted to engage in a failed contract in which the amount in controversy

27   certainly exceeds $75,000 exclusive of costs and interest. Bergquist's Notice of Removal (Docket

28   No. 1) ¶ 7.  It went on to state that Bergquist already suffered damages in excess of $75,000 and will

---

1  continue to suffer more losses if Gelinas does not desist his dealings. Moreover, this Court can
2  consider summary-judgment-type evidence in determining whether the amount in controversy is
3  met. As the Declaration of George Lucia indicates, while Gelinas was employed with The Bergquist
4  Company, he participated in the generation of substantial revenue from the Microsoft Corporation
5  account, in excess of one million annually. In fact, the net revenue or gross profits on those sales
6  was in excess of $100,000 annually. Lucia Decl. ¶ 11. These profits, a substantial portion of which
7  were earned by Gelinas prior to his termination, constitute additional evidence that the amount in
8  controversy exceeds $75,000.

9      **B.    Gelinas Concedes that the Amount in Controversy Exceeds $75,000.**

10     In Gelinas' counterclaim submitted to the NAF on May 2, 2008, he stated, "I believe that
11  Claimant owes me a total of $92,618.40. Of this amount, $76,440 represents unpaid
12  bonus/commissions and $16,178.40, which represents wages that were not timely paid in accordance
13  with California law." Douglas Decl. (Docket No. 16) ¶ 9, Exh. H. Gelinas should not be rewarded
14  or allowed to benefit in the form of forum shopping merely because he cherry picked which claims
15  to bring and which relief to seek in different jurisdictions and forums particularly when all of his
16  claims arise out of the same facts between the same parties.

17     Gelinas, in opposing the Motion to Compel Arbitration and in Response to the Complaint in
18  the Minnesota action, makes much of the fact that Bergquist apprised the NAF that the amount it
19  claimed in arbitration is $75,000. However, the statement of the claim in the NAF is not a subject
20  matter jurisdiction requirement — it is merely a statement that determines the amount of the filing
21  fee in the arbitral forum. Indeed, the filing fee paid by Bergquist covers claims of "$75,000 or
22  larger." Douglas Decl. (Docket No. 16) ¶ 8, Exh. G. Bergquist has filed with the NAF a clarifying
23  letter. Najjar (Anderson) Decl. ¶ 7, Exh. E. The specific, summary-judgment-type evidence that
24  Bergquist has presented to the Court meets the standard in this circuit to establish the requisite
25  amount in controversy under 28 U.S.C. § 1331.

26                                    **CONCLUSION**

27     Based upon precedent and sound policy reasons, removal by Bergquist was appropriate, and
28  Gelinas' Motion to Remand should be denied in its entirety. If this Court allows this action to be

remanded to the California state court, the result will be piecemeal litigation and judgments, none of which will entirely address or dispose of the issues in dispute. Therefore, Bergquist respectfully requests this Court to deny Gelinas' Motion to Remand and to consider the pending motion seeking a dismissal, stay, or transfer of this action to the District of Minnesota.

DATED: July 8, 2008

Respectfully submitted,


_____/s/Bruce J. Douglas/wja_____
Richard Osen (SBN 042566)
Julie A. Raney (SBN 176060)
Ann Taylor Schwing (SBN 91914)
McDONOUGH HOLLAND & ALLEN PC
Attorneys at Law
555 Capitol Mall, 9th Floor
Sacramento, CA  95814
Phone:  916.444.3900
Fax:  916.444.8334

and

Bruce J. Douglas (*Pro Hac Vice,* SBN 23966MN)
Willow J. Najjar (*Pro Hac Vice,* SBN 320948MN)
LARKIN HOFFMAN DALY & LINDGREN Ltd.
1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota  55431-1194
(952) 835-3800

ATTORNEYS FOR DEFENDANT
THE BERGQUIST COMPANY

DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND        1111449v1 29501/0004

1  Richard Osen (SBN 042566)
   Ann Taylor Schwing (SBN 91914)
2  Julie Raney (SBN 176060)
   McDONOUGH HOLLAND & ALLEN PC
3  Attorneys at Law
   555 Capitol Mall, 9th Floor
4  Sacramento, CA  95814
   Phone: 916.444.3900
5  Fax:    916.444.3249

6  Bruce J. Douglas (Pro Hac Vice, SBN 23966MN)
   Willow J. Najjar (Pro Hac Vice, SBN 320948MN)
7  LARKIN HOFFMAN DALY & LINDGREN LTD.
   1500 Wells Fargo Plaza
8  7900 Xerxes Avenue South
   Minneapolis, MN  55431-1194
9  Phone: 952.896.1569
   Fax:    952.842.1717

10
   Attorneys for Defendant THE BERGQUIST COMPANY
11

12                 UNITED STATES DISTRICT COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14  MICHEL GELINAS,                    )   NO. 08-CV-02137 (PVT)
                                       )
15             Plaintiff,              )
                                       )   **DECLARATION OF WILLOW J.**
16      v.                             )   **NAJJAR (ANDERSON)**
                                       )
17  THE BERGQUIST COMPANY,             )   **DATE:      JULY 29, 2008**
                                       )   **TIME:      10:00 A.M.**
18             Defendant.              )   **DEPT:      COURTROOM 4TH FL.**
                                       )
19  ────────────────────────────────

20      I, Willow J. Najjar (Anderson), declare that:

21      1.     I am an attorney with the law firm of Larkin Hoffman Daly & Lindgren Ltd.  I am

22  one of the attorneys for Defendant, The Bergquist Company ("Bergquist"), in the above-entitled

23  action.

24      2.     As of May 10, 2008, I have changed my name to Willow J. Anderson following my

25  wedding.  For ease of reference, my name is listed as Willow J. Najjar (Anderson) throughout these

26  motion papers.

27      3.     Attached hereto as Exhibit A is a true and correct copy of the unpublished decision in

28  *Legion Ins. Co. v. Wisconsin-California Forest Products*, 2001 WL 35809242 (E.D. Cal. 2001).

1      4.      Attached hereto as Exhibit B is a true and correct copy of the unpublished decision in

2 *Lenscrafters, Inc. v. Liberty Mutual Fire Ins. Co.*, 2007 WL 2729411 (N.D. Cal. 2007).

3      5.      Attached hereto as Exhibit C is a true and correct copy of the Demand for Cessation

4 letter sent to Mr. Gelinas, dated February 5, 2008.  Also attached are true and correct copies of the

5 delivery confirmations.

6      6.      Attached hereto as Exhibit D is a true and correct copy of the unpublished decision in

7 *Mahoney v. DePuy Orthopedics, Inc.*, 2007 WL 3341389 (E.D. Cal. 2007).

8      7.      Attached hereto as Exhibit E is a true and correct copy of the letter sent to the

9 National Arbitration Forum (NAF) clarifying the claimed amount and filing fee, dated July 7, 2008.

10      I declare under penalty of perjury that the foregoing is true and correct.

11      Executed on July 8, 2008 at Minneapolis, Minnesota.

12

13                               _____/s/ Willow J. Najjar_____
                              Willow J. Najjar (Anderson)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



# EXHIBIT A

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2001 WL 35809242 (E.D.Cal.)
**(Cite as: 2001 WL 35809242 (E.D.Cal.))**

**H**Legion Ins. Co. v. Wisconsin-California Forest
Products
E.D.Cal.,2001.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
LEGION INSURANCE CO., Plaintiff,
v.
WISCONSIN-CALIFORNIA FOREST
PRODUCTS; California Sportfishing Protection
Alliance, Defendants.
No. CIVS 00-2289 WBS/PAN.

Feb. 6, 2001.

Todd A. Roberts, Ropers, Majeski, Kohn & Bentley,
San Jose, CA, for Plaintiff.
David F. Mangini, James D. Boughey, Boughey
Garvie and Buchner, San Francisco, CA, for
Defendants.

*MEMORANDUM AND ORDER RE MOTION OF
WISCONSIN-CALIFORNIA FOREST PRODUCTS
TO DISMISS OR STAY ACTION*

SHUBB, J.
**\*1** Plaintiff Legion Insurance Co. ("Legion") seeks a
declaration of its rights and obligations under its
policies numbered CP1-0513027, CP2-0531027, and
CP3-0531027, naming as defendants: Wisconsin-
California Forest Products ("Wisconsin-Cal"), and
California Sportfishing Protection Alliance
("CSPA"). Defendant Wisconsin-Cal moves to
dismiss this matter, or in the alternative to stay the
matter pending resolution of the underlying lawsuit
pursuant to the court's discretion under the Uniform
Declaratory Judgment Act, 28 U.S.C. § 2201 ("the
Act").

*I. Factual and Procedural Background*

On or about July 12, 2000 defendant CSPA filed a
citizen suit against defendant Wisconsin-Cal pursuant
to the Clean Water Act, 33 U.S.C. § 1365, in this
court ("the underlying suit").*California Sportfishing
Protection Alliance v. Wisconsin-California Forest
Products*, E.D. Cal. Civ S-00-1490 WBS/JFM. CSPA
alleges that on or about April 6, 2000 Wisconsin-Cal

received a Notice of Violation from the California
Regional Water Quality Control Board. CSPA further
alleges that as of July 12, 2000, Wisconsin-Cal was
engaging in ongoing violations of National Pollutant
Discharge Elimination System ("NPDES") Permit
No. 97-221, thereby directly affecting the
recreational and environmental interests of its
members.

Specifically, CSPA alleges that on October 24, 1997
Wisconsin-Cal obtained a permit to discharge
identified pollutants into the Sacramento River.
CSPA further alleges that Wisconsin-Cal was
discharging "stormwater and non-stormwater runoff,
with zinc, tannins, lignins, water with excessive
turbidity, suspended solids, and low pH through
surface runoff leading to the Sacramento River" in
violation of its permit. (Def.'s Ex.1 at 2, Attached to
Decl. of David F. Mangini). CSPA seeks declaratory
and injunctive relief, an order requiring Wisconsin-
Cal to make a payment toward an environmental fund
approved by the court, civil penalties of $27,500 per
day of violation for each violation, and reasonable
attorney's fees and costs pursuant to the Clean Water
Act. (Def.'s Ex.1 at 3, Attached to Decl. of David F.
Mangini).

Wisconsin-Cal was insured by plaintiff Legion under
a commercial general liability policy at the time of its
alleged NPDES violation and at the time of the
issuance of the Notice of Violation by the Water
Board. Wisconsin-Cal tendered defense of the
underlying suit to Legion. Legion, in a letter dated
October 4, 2000, agreed to defend Wisconsin-Cal
pursuant to the terms of the policy, but reserved its
right to file a declaratory relief action to determine its
rights and duties, to withdraw from its defense, and to
seek reimbursement and/or allocation of any and all
defense fees attributable to the defense of uncovered
claims.

On or about October 18, 2000 Legion filed its
complaint for declaratory relief in this court. On or
about November 14, 2000, Wisconsin-Cal filed its
motion to dismiss or, in the alternative, to stay this
action pending resolution of the underlying suit.
Wisconsin-Cal requests that the court dismiss
Legion's action for declaratory relief pursuant to the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2001 WL 35809242 (E.D.Cal.)
(Cite as: 2001 WL 35809242 (E.D.Cal.))

court's discretion.

## II. *Discussion*

**\*2** Before a federal court may hear an action for declaratory relief pursuant to the Declaratory Judgment Act, "a lawsuit must present an actual case or controversy within the meaning of Article III, section 2 of the United States Constitution."*Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1222 (9th Cir.1998). The lawsuit "must also fulfill statutory jurisdictional prerequisites."*Id.* at 1223.Once the constitutional and statutory requirements have been met, the court must "be satisfied that entertaining the action is appropriate."*Id.*

### A. *Article III and Statutory Requirements*

The Ninth Circuit has "consistently held that a dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement." *Dizol,* 133 F.3d at 1223 n. 2 (citing *American Nat'l Fire Ins. v. Hungerford,* 53 F.3d 1012, 101-16 (9th Cir.1995)). This is exactly the dispute before the court, and thus, Legion has Article III standing.

An action for declaratory relief satisfies the standing requirements of the Declaratory Judgment Act, 28 U.S.C. § 2201, if "the facts alleged, under all circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."*Maryland Casualty Co. v. Pacific Coal & Oil Co. et al.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). Legion's complaint presents just such a controversy. CSPA is seeking a judgment against Wisconsin-Cal in the underlying suit, which Wisconsin-Cal claims is covered by its policy with Legion. *See*Maryland, 312 U.S. at 273 (finding an actual controversy exists when a potential third party claimant seeks judgment against insured and insurer seeks declaratory relief regarding coverage). Thus, Legion also has statutory standing.

### B. *The Court's Discretion*

The federal district courts have discretion to

determine whether it is appropriate to maintain jurisdiction over an action for declaratory relief. *See*Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)("Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."). The Act itself provides that a court *"may* declare the rights and other legal relations of any interested party seeking such declaration."28 U.S.C. § 2201(a) (emphasis added).

Thus, the Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so."*Public Affairs Associates v. Rickover,* 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). And, the federal courts may, "in the exercise of [their] sound discretion, ... stay or ... dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."*Wilton,* 515 U.S. at 288. The courts' discretion, however, is not unfettered. *Dizol,* 133 F.3d at 1223. District courts cannot refuse to hear declaratory actions "as a matter of whim or personal disinclination."*Id.,* at 1223.

**\*3** Wisconsin-Cal argues that the "*Brillhart*" factors" described by the Ninth Circuit in *Dizol,* compel the court to dismiss or stay this action.^FN1*See*Dizol, 133 F.3d at 1225. However, this court is unaware of any case in which a court has ever dismissed or stayed a federal action based on these factors in the absence of a parallel state proceeding.

> FN1."The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation."*Dizol,* 133 F.3d at 1225.

The Ninth Circuit held that "when a party seeks declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court."*See*Chamberlain, 931 F.2d at 1367 (finding that before a court may retain jurisdiction over a declaratory action when there is parallel state litigation pending, the court must balance these important interests). On the other hand, when there is no parallel state proceeding pending, it

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2001 WL 35809242 (E.D.Cal.)
**(Cite as: 2001 WL 35809242 (E.D.Cal.))**

Page 3

would likely be an abuse of discretion for a district court to refuse jurisdiction over a declaratory action. *See Wilton,* 515 U.S. at 290 ("We do not at this time attempt to delineate the outer boundaries of [the district courts'] discretion in other cases, for example, cases raising issues of federal law or cases in which there are no parallel state proceedings.").

The underlying suit in this matter is a citizen suit filed by CSPA against Wisconsin-Cal under the Clean Water Act. *See* 33 U.S .C. § 1365. There is no parallel state proceeding pending. Thus, the court does not risk the "gratuitous interference with the orderly and comprehensive disposition of state court litigation" by maintaining jurisdiction over the action. *Brillhart,* 316 U.S. at 495. Therefore, the *Brillhart* factors are inapplicable. *See Chamberlain,* 931 F.2d 1367; *see also* Dizol*,* 133 F.3d at 1225.

Wisconsin-Cal also argues there are novel issues of state law in this action, compelling the court to abstain. Specifically Wisconsin-Cal suggests that resolution of this matter would require the court to determine: (1) "whether rainwater comes within [the] policy definitions of pollutant"; and (2) how a state court would deal with "personal injury coverage for nuisance liability, when a pollution exclusion has been added to [the] coverage."(Def.'s Mot. at 3:9-14).

The court expresses no opinion at this time as to whether these issues, as framed by Wisconsin-Cal, would necessarily need to be decided to resolve this action. However, even if the court did need to decide these issues, it is not persuaded that these issues would be more appropriately decided by a state court.

III. *Conclusion*

"The purpose of the Declaratory Judgment Act is to afford an added remedy to one who is uncertain of his rights and who desires an early adjudication thereof without having to wait until his adversary should decide to bring suit, and to act at his peril in the interim."*See Shell Oil Co.,* 290 F.2d at 692 (citing *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321 (4th Cir.1937). A dismissal or stay of this action would subject plaintiff to just such peril. Accordingly, the court chooses not to exercise its discretion to stay or dismiss this action.

*4 IT IS THEREFORE ORDERED that defendant

Wisconsin-California Forest Products' motion to dismiss, or in the alternative to stay this action be, and the same hereby is, DENIED.

E.D.Cal.,2001.
Legion Ins. Co. v. Wisconsin-California Forest Products
Slip Copy, 2001 WL 35809242 (E.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# **<u>EXHIBIT B</u>**

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2729411 (N.D.Cal.)
(Cite as: 2007 WL 2729411 (N.D.Cal.))

**H**LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.
N.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
LENSCRAFTERS, INC., et al., Plaintiffs,
v.
LIBERTY MUTUAL FIRE INSURANCE
COMPANY, et al., Defendants.
**No. C 07-2853 SBA.**
**Docket Nos. 25, 27.**

Sept. 18, 2007.

Richard Denatale, Celia M. Jackson, Heller Ehrman
LLP, San Francisco, CA, for Plaintiffs.
Alexander Friedland Stuart, Willoughby, Stuart &
Bening, Inc., San Jose, CA, Monique M. Fuentes,
Ross Dixon & Bell, LLP, Terrence Reilly McInnis,
Irvine, CA, Mark Craig Goodman, Squire, Sanders &
Dempsey L.L.P., Amy Rose, Squire, Snaders &
Dempsey LLP, Chip B. Cox, Attorney at Law, San
Francisco, CA, Robert David Dennison, Harris,
Green & Dennison, Los Angeles, CA, for
Defendants.

**ORDER**

SAUNDRA BROWN ARMSTRONG, United States
District Judge.
*1 This matter comes before the Court on Defendant
U.S. Fire Insurance Company's ("U.S.Fire") motion
to dismiss or stay this action in favor of a pending
New York state court action [Docket No. 25] and
related request for judicial notice [Docket No. 27].
Having read and considered the arguments presented
by the parties in the papers submitted to the Court,
the Court finds this matter appropriate for resolution
without a hearing. The Court hereby GRANTS U.S.
Fire's request for judicial notice [Docket No. 27] and
DENIES the motion to dismiss or stay [Docket No.
25].

**BACKGROUND**

**I. The Snow Action**

In March 2002, Melvin Gene Snow filed a class
action complaint in San Francisco Superior Court
against LensCrafters, Inc., EYEXAM of California,
Inc. ("EYEXAM") and several other entities
(LensCrafters, Inc. and EYEXAM are referred to
together as "LensCrafters.").*Melvin Gene Snow, et al.
v. LensCrafters, Inc., et al.,* San Francisco Superior
Court, Case No. CGC-02-40554 ("Snow Action").
The Snow Action arose from the business model used
by LensCrafters, Inc. at its 90 stores in California and
its business relationship with EYEXAM, a
California-licensed health care plan. The complaint
alleges that LensCrafters' business practices and its
procedures for handling patient information violate
several California laws, including Business &
Professions Code 655 (prohibiting certain business
relationships between opticians and optometrists) and
the California Confidentiality of Medical Information
Act ("COMIA") (Cal. Civ.Code § 56, regulating
disclosure of confidential medical information). The
Snow plaintiffs seek to certify a California-only class
of more than a million consumers who had their eyes
examined by a California-licensed optometrist
employed by EYEXAM and who purchased eyewear
from LensCrafters on the same day. Schechter Decl.,
¶¶ 1, 8; Rose Decl., Ex. 1. Presently, only
LensCrafters and EYEXAM remain subject to any
liability in Snow. Schechter Decl., ¶¶ 4-7.

**II. The 2004 Coverage Action In This Court**

In March 2004, LensCrafters filed an insurance
coverage action in this Court, *LensCrafters, Inc., et
al. v. Liberty Mutual Fire Ins. Co., et al.,* Case No. C-
04-01001 SBA ("the 2004 California Action"). The
2004 California Action presented claims for
declaratory relief and breach of contract with respect
to insurance coverage for the Snow Action.
LensCrafters' two primary insurers, Liberty Mutual
("Liberty") and ERSIC, were defendants in the
lawsuit. The 2004 California Action raised issues
concerning both the duty to defend and the duty to
indemnify for any damages that might be paid to the
Snow plaintiffs. Jackson Decl., 4, 5 & Ex. 2.

In the 2004 California Action, this Court decided
three sets of cross-motions for summary judgment
regarding the duty to defend that were filed by
LensCrafters, Liberty and ERSIC. The Court issued

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2729411 (N.D.Cal.)
(Cite as: 2007 WL 2729411 (N.D.Cal))

Page 2

two main rulings: (1) that Liberty and ERSIC both have a duty to defend LensCrafters for the claims asserted in Snow, and (2) that Liberty's policy is primary to ERSIC's for the purposes of the Snow claims. Jackson Decl., ¶¶ 7, 8. Judgments were entered in November 2005 and are on appeal to the Ninth Circuit. *Id.*, ¶ 9.

*2 LensCrafters' indemnity claims did not become ripe for resolution in the 2004 California Action. Thus, pursuant to the parties' stipulation, the Court ordered that the indemnity claims be dismissed without prejudice, with the following conditions: (1) any party could re-file indemnity claims when they ripened, (2) such action had to be filed in the Federal District Court for the Northern District of California, and (3) the parties consented to exclusive jurisdiction and venue in this Court. *Id.*, ¶ 10 & Ex. 4.

### III. The Filing Of The 2007 Coverage Action

The Snow Action was litigated from 2002 to early 2007. Defendant U.S. Fire and the other insurers attended meetings in San Francisco in January 2006, January 2007, and April 2007 to discuss the progress of the litigation and the prospects for settlement, as well as a mediation session in San Francisco in November 2005. Jackson Decl., ¶¶ 11, 14. On April 27, 2007, the parties to Snow, along with Liberty, U.S. Fire and the other insurers, attended a mediation in California at which significant progress was made towards settlement, but no deal was reached. *Id.*, ¶ 12.According to LensCrafters, by the end of May 2007 it had become apparent that the insurers' positions on certain insurance issues, including whether the Snow claims are covered, whether the insurers have a duty to approve and fund a settlement, and how settlement funding should be allocated, were significant obstacles to settlement. *Id.*

On May 31, 2007, LensCrafters filed this action for declaratory relief. As required pursuant to this Court's earlier Order dismissing indemnity claims from the 2004 California Action, LensCrafters re-filed its indemnity claims in this Court. It sued both the two insurers that were defendants in the 2004 California Action and the other excess insurers: U.S. Fire, Markel, and Westchester. On June 15, 2007, the Court deemed this action to be related to the 2004 California Action. *See*Docket No. 10.

In June 2007, LensCrafters reached a settlement in the Snow Action, contingent on approval and funding by insurers. Jackson Decl., ¶ 13. On June 21, LensCrafters asked the insurers to accept and fund the settlement. *Id.* A further mediation session was scheduled for July 26, 2007 to finalize the settlement and obtain the insurers' consent and funding. The Superior Court handling Snow issued an order requiring the insurers to attend; U.S. Fire did not attend. *Id.* & Ex. 5. The insurers did not accept and fund the Snow settlement, and the Snow settlement has not been finalized.

Eleven days after the July 26, 2007 mediation session failed to finalize the settlement of Snow, LensCrafters moved to amend its Complaint in this action to add claims for breach of contract against all insurers and claims for tortious breach of the covenant of good faith and fair dealing against U.S. Fire, Markel and Westchester. Jackson Dec., ¶ 17. The hearing on that motion is set for October 2, 2007. *Id.*

### IV. U.S. Fire's New York Action

*3 On May 24, 2007, one week before LensCrafters filed the 2007 California Action, U.S. Fire filed a declaratory relief action in New York state court, seeking a declaration that its policies do not cover the Snow Action, and seeking apportionment of any liability it has for Snow among a number of LensCrafters' insurers. U.S. Fire's suit names as defendants LensCrafters and EYEXAM, the two insureds seeking coverage for Snow. Jackson Decl., ¶ 16. It also names some of the other entities insured by the policies that do not face liability in Snow.U.S. Fire named three of the other insurers from which LensCrafters seeks coverage, but did not name ERSIC, a fourth insurer from which LensCrafters seeks coverage for Snow. *Id* ., ¶ 18.

LensCrafters has filed a motion in the New York court seeking dismissal or a stay of U.S. Fire's lawsuit on forum nonconveniens grounds. Jackson Decl., ¶ 22. In addition, EYEXAM has requested dismissal from the New York action based on lack of personal jurisdiction. *Id.*, ¶¶ 21, 22.Luxottica U.S., U.S. Shoe and EyeMed also seek dismissal on the additional grounds that they are improperly joined and that there is no justiciable controversy as to them, because they do not seek coverage for Snow. *Id.* The New York Court has stayed discovery in that action

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                   Page 3
Slip Copy, 2007 WL 2729411 (N.D.Cal.)
(Cite as: 2007 WL 2729411 (N.D.Cal.))

and set a hearing on LensCrafters' motion for October 29, 2007.

**V. U.S. Fire's Motion to Dismiss or Stay**

U.S. Fire filed the instant motion to dismiss or stay this action on July 18, 2007, arguing that this Court should dismiss or stay this action in deference to the parallel proceedings U.S Fire initiated in New York, one week before LensCrafters filed this lawsuit in this Court. U.S. Fire argues that since each of the policies at issue were "negotiated between New York-based companies ... in New York State and the policies were each issued in New York," this is fundamentally a New York state action and will involve the interpretation of New York contract law. Mot. at 3.

From 1998 to 2000, Luxottica, a New York-based subsidiary of Luxottica Group S.p.A., an eyewear conglomerate that controls LensCrafters, worked with a New York-based insurance broker, Blumencranz-Klepper-Wilkins, Ltd., to negotiate and purchase the relevant insurance policies from U.S. Fire. *See* Mot. at 3; Rose Decl., Ex. A at ¶¶ 5-9, 30-33, Ex. B. U.S. Fire alleges that Luxottica also "negotiated and purchased" its primary commercial general liability coverage from 1998 until at least 2006 in New York from Liberty Mutual, "which policies were also issued in New York,"*see* Complaint at ¶ 16; Rose Decl., Exs. G-I at 1, and that Luxottica purchased primary Managed Care Organization Errors and Omissions Liability insurance for a number a years from Executive Risk Specialty Insurance Company ("ERSIC"), which was "negotiated and issued in New York."(*See* Rose Decl., Ex. J at 5, fn. 5.). U.S. Fire further alleges that Luxottica purchased an additional excess insurance from defendant Westchester Fire Insurance Company, a New York company. *Id.*

*\*4* Thus, U.S. Fire argues, since the insurance policies were "negotiated and issued" in New York between primarily New York-based entities, the instant action, which currently only involves claims for declaratory relief, will needless duplicate the New York state proceedings and will needlessly decide issues of New York state law.

**LEGAL STANDARDS**

As a general matter, the decision to retain jurisdiction over a declaratory judgment action lies within the sound discretion of the district court.*Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Wilton v. Seven Falls Co.,* 515 U.S. 277, 278, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (district court's decision to exercise jurisdiction "should be reviewed for abuse of discretion"); *Huth v. Hartford Ins. Co. of the Midwest,* 298 F.3d 800, 803 (9th Cir.2002). Where a federal declaratory relief action based on diversity jurisdiction is commenced in reaction to or in anticipation of a state court action involving the same parties and state law issues, it is settled law that the federal court should abstain from exercising jurisdiction and dismiss the action in favor of the state court proceeding. *Wilton,* 515 U.S. at 289;*Brillhart,* 316 U.S. at 494.

As the Supreme Court explained in *Brillhart,*"ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."*Brillhar* t, 316 U.S. at 495. Indeed, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed."*Wilton,* 515 U.S. at 283 (quoting *Brillhart,* 316 U.S. at 495).

However, the pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief. *Government Employees Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 (9th Cir.1998). The *Brillhart* factors are simply "the philosophic touchstone" for the district courts. *Id.* The doctrinal teaching of *Brillhart* is that the district court: 1) should avoid needless determination of state law issues, 2) should discourage litigants from filing declaratory actions as a means of forum shopping, and 3) should avoid duplicative litigation. *Id.*

In addition to the *Brillhart* factors, courts may inquire: 1) whether the declaratory action will settle all aspects of the controversy; 2) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; 3) whether the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2729411 (N.D.Cal.)
(Cite as: 2007 WL 2729411 (N.D.Cal.))

Page 4

declaratory action is being sought merely for the purposes of "procedural fencing" or to obtain a 'res judicata' advantage; and 4) whether the use of a declaratory action will result in entanglement between the federal and state court systems. *Id.* at 1225 n. 5,*quoting American States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir.1994)* (J. Garth, concurring). Additionally, the district court might consider the convenience of the parties, and the availability and relative convenience of other remedies. *Id.*

## ANALYSIS

### I. LensCrafters' Motion To Amend

*5 As an initial matter, LensCrafters argues that since it has filed a motion seeking leave to amend its complaint in this action to add breach of contract and bad faith claims based on events that took place after the initial complaint was filed, the Court should deny the motion to dismiss or stay on the grounds that claims other than declaratory relief are at issue. *See*Docket No. 36.LensCrafters argues that in determining whether to apply the *Brillhart* doctrine here, the Court should takes into account LensCrafters' request for leave to amend in light of the liberal policy permitting amendment. Under *Dizol,* federal courts have a "virtually unflagging" obligation to resolve non-declaratory relief claims, and when those claims are presented along with a declaratory relief claim, the court should retain jurisdiction over all of the claims. *Dizol, 133 F.3d at 1225-1226.*

Had LensCrafters amended its complaint prior to the filing of U.S. Fire's motion to dismiss, this argument might have had some force. However, the Court has not yet granted the motion to amend, which is noticed for hearing on October 2, 2007, and as such the amended complaint is currently only a theoretical entity. It would be inappropriate for the Court to analyze the *Brillhart* factors pretending that the amended complaint is the operative one, and, accordingly the Court will proceed with the analysis based on the operative, unamended complaint, which seeks solely declaratory relief.

### II. The *Brillhart* Factors

### A. The Same Issues For The Same Parties

As noted above, the *Brillhart* doctrine is applicable where there is a pending state court action that presents "the same issues" between the same parties." *Brillhart, 316 U.S. at 495.* In considering whether "the same parties" are involved, the district court should inquire "whether necessary parties have been joined [or] whether such parties are amendable to process in that [state] proceeding."*Wilton, 515 U.S. at 283.* LensCrafters argues that the instant action is broader than the New York action in several respects. First, LensCrafters argues that one of the two insureds seeking coverage, EYEXAM, is not subject to the New York court's jurisdiction, and has requested dismissal from the New York action. LensCrafters argues that EYEXAM conducts business exclusively in California, and has no New York operations. *See* Grossman Dec., ¶¶ 6, 7. However, this jurisdictional dispute is beyond the purview of this Court, and the fact is that EYEEXAM is the same party in either case.

Second, U.S. Fire did not sue ERSIC in the New York action, although ERSIC issued a policy that potentially covers the *Snow* claims, as this Court ruled in the 2004 California Action, and therefore is, according to LensCrafters, a necessary party to this dispute. U.S. Fire does not dispute that ERSIC is a necessary party, but argues that the absence of ERSIC from the New York Action does not prevent the Court from declining to exercise its jurisdiction because ERSIC is subject to jurisdiction in New York, "and can be easily added to the New York Action."(*See* Rose Decl., Ex. J at 5 fn. 5 (noting that the ERSIC policies at issue were negotiated and issued in New York)). U.S. Fire argues that under the *Brillhart* test, "the fact that ERSIC has not yet been added to the New York Action does not change the fact that 'the same parties' are litigating in both fora."Reply at 6.

*6 U.S. Fire's argument is not entirely persuasive. ERSIC is not a party to the New York action; therefore, the New York lawsuit and the instant one do not involve the same parties, period. While ERSIC may be amenable to process in New York, it is undisputed that a necessary party is not involved in the New York Action. However, as noted in *Wilton,* the Court may consider whether a party is amendable to process when analyzing the *Brillhart* factors. *515 U.S. at 283.* Given the considerations related to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2729411 (N.D.Cal.)
(Cite as: 2007 WL 2729411 (N.D.Cal.))

Page 5

EYEEXAM and ERSIC, the "same party" analysis favors neither party.

**B. Needless Determination Of State Law Issues**

The Supreme Court's first concern in *Brillhart* was to "avoid having federal courts needlessly determine issues of state law."" *Continental Cas. Co. v. Robsac Industries,* 947 F.2d 1367, 1371 (9th Cir.1991)*overruled on other grounds by*Dizol, 133 F.3d 1220 (citing *Brillhart,* 316 U.S. at 1175-76). Both sides agree that this case involves the interpretation of state law issues, however, the parties vigorously dispute whether California or New York state law will apply to the relevant insurance contracts. This raises a novel issue with respect to the "needless determination of state law" analysis. Since, contrary to the typical *Brillhart* abstention scenario, the state law action has been filed in a different state than where federal district court resides, the analysis of this factor is somewhat different than the traditional case: if California law applies, this Court is better suited than a New York state court to determine the issues; of course, if New York law predominates, a New York court is better suited to resolve the issues.

Somewhat ironically, both sides urge this court to avoid engaging in a choice of law analysis, yet simultaneously devote substantial briefing to the issue."LensCrafters and U.S. Fire agree on one thing-this Court need not determine which state's law will apply before determining that it should defer to the prior-filed state court action."Reply at 13. The parties are correct in their agreement: the Court cannot conduct a choice of law analysis here, as no specific conflict between New York and California law has been identified. *See Van Winkle v. Allstate Ins. Co.,* 290 F.Supp.2d 1158, 1162 (C.D.Cal.2003) ( "The fact that two states are involved does not itself indicate that there is a 'conflict of laws' or 'choice of law' problem.") (quoting *Hurtado v. Superior Court,* 11 Cal.3d 574, 580, 114 Cal.Rptr. 106, 522 P.2d 666 (1974)) (internal citation omitted); *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.,* 14 Cal.App.4th 637, 645, 17 Cal.Rptr.2d 713 (1993) (under California test, the first step is to identify an issue where there is a difference in the law of the states).

Since the Court is not in a position to determine

which state's law applies to the insurance contracts at issue, the "needless determination of state law issues" analysis also favors neither side.

**C. Forum Shopping**

*7 A key purpose of the *Brillhart* doctrine is to discourage the filing of declaratory relief actions as a means of forum shopping. *Dizol,* 133 F.3dat 1225. Here, each side accuses the other of forum shopping. In the prototypical *Brillhart* abstention case, the plaintiff files an action in state court, and the defendant then files a "reactive" declaratory relief action in federal court seeking a more favorable venue. In such a scenario, the presumption that federal courts should abstain in deference to the state court action is sound. "[I]f a declaratory judgment suit is defensive or reactive, that would justify a court's decision not to exercise jurisdiction."*Continental Cas.,* 947 F.2d at 1371.

LensCrafters argues that here, however, the typical *Brillhart* situation is turned on its head: U.S. Fire, knowing that LensCrafter was obligated, pursuant to Court order, to bring its declaratory relief action in this Court, filed a "preemptive" state law action in order to frustrate LensCrafter's attempts to gain relief. As for the timing of its 2007 action, LensCrafter alleges that this suit was filed one week later than U.S. Fire's action only because LensCrafters was "acting judiciously to try to resolve its dispute informally before reinstituting its indemnity action, while U.S. Fire raced to New York in an effort to avoid at all costs litigating before this Court."Opp. at 16-17.

U.S. Fire counters that LensCrafter's second-filed federal case is the archetypal "reactive" lawsuit and was filed to frustrate U.S. Fire's state court action. However, U.S. Fire can point to nothing other than the fact that it filed first that indicates LensCrafters was engaged in forum-shopping. Indeed, LensCrafter was *required* to file its declaratory relief action in this Court pursuant to stipulation. U.S. Fire absurdly suggests that the 2005 stipulation was somehow a "reactive" attempt to preclude its 2007 state law case, however this is belied by the facts: LensCrafters actually originally filed its declaratory relief claims in 2004, which were ultimately dismissed as unripe. U.S. Fire's argument that this was somehow "reactive" to a non-existent suit does not merit

Slip Copy
Slip Copy, 2007 WL 2729411 (N.D.Cal.)
**(Cite as: 2007 WL 2729411 (N.D.Cal.))**

Page 6

discussion.

This factor favors LensCrafters. U.S. Fire was aware of the 2004 action and should have been reasonably apprised that LensCrafters would re-file its declaratory relief claims in this forum. The Court also notes that U.S. Fire lamely opposed the motion to relate the 2007 case to the 2004 case, which would have resulted in a trifurcation of the proceedings. This smacks precisely of the "procedural fencing" that *Brillhart* abstention is meant to discourage. *Dizol,* 133 F.3d at 1225, n. 5. To the extent that there is any forum shopping here, U.S. Fire is the shopper.

**D. Duplicative Litigation**

The sole factor militating in favor of granting the motion to dismiss or stay is the avoidance of duplicative litigation. However, while, in the present posture, there appears to be two parallel actions, as LensCrafters notes, the New York action is in its nascent stages, and to date little substantive activity has taken place in it other than the filing of the complaint, answers, and cross-complaints, and the filing of LensCrafters' motion to dismiss or stay the case. *See* Jackson Decl., ¶ 19, 22. LensCrafter's motion to dismiss could potentially dispose of the New York action, and other essential parties have filed motions that would substantially alter the landscape of the New York case if granted. Indeed, the New York court may come to the same conclusion as this Court and dismiss the New York action in deference to the federal action. Thus, while the fact that there are two potentially parallel proceedings militates in favor of dismissing or staying the case, it is not enough to countervail the concerns related to forum shopping.

**III. Other Factors**

*8 The other salient factor in favor of denying the motion is "the convenience of the parties." *Dizol,* 133 F.3d at 1225 n. 5. As LensCrafters points out, the related case has been proceeding in this forum since 2004, and the underlying *Snow* action, from which the bulk of the facts and evidence will be drawn, relates exclusively to LensCrafter's business practices in connection with its 90 stores in California. The witnesses to those business practices are in California, and the alleged violations of patient privacy occurred here.

New York has no interest in the *Snow* Action, and no related litigation has yet taken place there. Simply put, this is a California case, and the Court should exercise its discretion to retain jurisdiction over LensCrafters' declaratory judgment action. *Brillhart,* 316 U.S. at 494.

**CONCLUSION**

Accordingly, the motion to dismiss or stay [Docket No. 25] is DENIED. U.S. Fire's request for judicial notice [Docket No. 27] is GRANTED.$^{FN1}$

> FN1. U.S. Fire requests judicial notice of the complaint in the New York action. LensCrafters does not object to the granting of the request, but objects to U.S. Fires's characterization of the complaint as "parallel." This pointless objection is overruled.

IT IS FURTHER ORDERED THAT the Case Management Conference currently scheduled for September 18, 2007 at 1:00 p.m. shall be CONTINUED to December 6, 2007 at 2:30 p.m. The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than 10 days prior to the Case Management Conference that complies with the Standing Order For All Judges Of The Northern District Of California and the Standing Order of this Court. Plaintiffs shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

N.D.Cal.,2007.
LensCrafters, Inc. v. Liberty Mut. Fire Ins. Co.
Slip Copy, 2007 WL 2729411 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C



**Larkin Hoffman** ATTORNEYS

Larkin Hoffman Daly & Lindgren Ltd.

1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

GENERAL: 952-835-3800
FAX:    952-896-3333
WEB:    www.larkinhoffman.com

February 5, 2008

**CONFIDENTIAL**

Mr. Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

**VIA FEDERAL EXPRESS & U.S. MAIL
w/ DELIVERY CONFIRMATION
0305 1720 0000 3332 6159**

Re:    The Bergquist Company – Confidentiality, Non-Competition and Non-Solicitation
       Agreement and Separation Agreement with Michel Gelinas – Demand for Cessation of
       Violations of Agreements and Demand for Arbitration

Dear Mr. Gelinas:

We represent The Bergquist Company ("Bergquist" or the "Company"), your former employer
located in Chanhassen, Minnesota. This letter is intended to call to your attention your ongoing
obligations under your Confidentiality, Non-Competition and Non-Solicitation Agreement and
Separation Agreement (the "Agreements") with the Company. Your present activities on behalf
of one or more competitors of the Company constitute violations of your Agreements. For ease
of reference, copies of your Agreements are attached to this letter as Exhibits A and B.

Based upon information that we consider to be reliable, the Company has learned that you are
acting on behalf of Laird Technologies. As you know, Laird Technologies is a competitor of
The Bergquist Company. At this time we do not know whether you are an employee or a
contracted agent of Laird Technologies, but your Agreements apply in either situation.

In particular, you recently participated in a conference call that included other representatives of
Laird Technologies as well as members of The Bergquist Company's sales team. Your
participation in this conference call first alerted the Company to your activities that violate the
terms of your Agreements. We have reason to believe that you are continuing to engage in these
activities.

This letter, therefore, constitutes notice to you of your breach of the Agreements and also the
demand of The Bergquist Company that you cease and desist from such violations immediately.
Your refusal to comply with this request will result in continuing and irreparable harm to the
Company and will necessitate additional actions to protect the legitimate business interests of the
Company, including interim and final injunctive relief, all of which will result in great expense.

In this regard, in accordance with the terms of your Separation Agreement, we intend to file with
the National Arbitration Forum ("NAF") an Initial Claim for arbitration. In light of the urgent
nature of this dispute, we will request expedited arbitration and the prompt appointment of a

Mr. Michel Gelinas
February 5, 2008
Page 2

neutral arbitrator to determine this dispute.  If necessary, we will seek appropriate judicial relief pending the arbitration.

In the interest of resolving this dispute promptly and to obviate the need for the Company, or you, to incur significant expenses, we invite you or your legal counsel to contact me no later than the close of business on Friday, February 8, 2008 to discuss this matter.  Your failure to respond to this notice will be deemed a refusal to cease your activities that are in violation of your Agreements and a declination of the opportunity to resolve this matter without extended legal proceedings.

Very truly yours,

Bruce J. Douglas, for
Larkin Hoffman Daly & Lindgren Ltd.

Enclosures

1176610.1



U.S. Postal Service™ Delivery Confirmation™ Receipt

Postage and Delivery Confirmation fees must be paid before mailing.

DELIVERY CONFIRMATION NUMBER:
0305 1720 0000 3332 6159

From: Mr. Michel Gelinas
2380 Dryden Avenue
Gilroy, CA 95020

Postmark
Here

Access internet web site at
www.usps.com®
or call 1-800-222-1811

CHECK ONE (POSTAL USE ONLY)
☐ Priority Mail™ Service
☐ First-Class Mail® parcel
☐ Package Service parcel
(See Reverse)

## Pesch, Peggy L.

**From:** TrackingUpdates@fedex.com
**Sent:** Wednesday, February 06, 2008 4:17 PM
**To:** Pesch, Peggy L.
**Subject:** FedEx Shipment 790441117740 Delivered

This tracking update has been requested by:

Company Name:        LARKIN HOFFMAN DALY & LINDGREN
Name:                Peggy Pesch
E-mail:              ppesch@larkinhoffman.com

Our records indicate that the following shipment has been delivered:

Reference:                  25414-23
Ship (P/U) date:            Feb 5, 2008
Delivery date:              Feb 6, 2008 2:08 PM
Sign for by:                Signature Release on file
Delivered to:               Residence
Service type:               FedEx Priority Overnight
Packaging type:             FedEx Envelope
Number of pieces:           1
Weight:                     0.50 lb.
Special handling/Services:  Residential Delivery
                            Deliver Weekday

Tracking number:            790441117740

Shipper Information                Recipient Information
Peggy Pesch                        Michel Gelinas
LARKIN HOFFMAN DALY & LINDGREN     2380 DRYDEN AVE
7900 XERXES AVENUE;1500 WELLS FARGO  GILROY
PLAZA                              CA
BLOOMINGTON                        US
MN                                 950209144
US
55431

Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 4:16 PM CST
on 02/06/2008.

To learn more about FedEx Express, please visit our website atfedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above,
or visit us at fedex.com.

2/6/2008

 **UNITED STATES POSTAL SERVICE®**

Home | Help

Track & Confirm

# Track & Confirm

## Search Results

Label/Receipt Number: 0305 1720 0000 3332 6159
Status: Delivered

Your item was delivered at 12:10 PM on February 8, 2008 in GILROY, CA 95020.

**Track & Confirm** 

Enter Label/Receipt Number.

(

## Notification Options

**Track & Confirm by email**

Get current event information or updates for your item sent to you or others by email. ( *Go >* )

---

Copyright© 1999-2007 USPS. All Rights Reserved.    No FEAR Act EEO Data    FOIA 

# EXHIBIT D

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
**(Cite as: 2007 WL 3341389 (E.D.Cal.))**

C Mahoney v. Depuy Orthopaedics, Inc.
E.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,E.D. California.
Kent MAHONEY, Plaintiff,
v.
DEPUY ORTHOPAEDICS, INC., an Indiana
corporation, Defendant.
**No. CIV F 07-1321 AWI SMS.**

Nov. 8, 2007.

Tory E. Griffin, Downey Brand LLP, Sacramento,
CA, for Plaintiff.
Mark A. Neubauer, Rebecca Edelson, Steptoe &
Johnson LLP, Los Angeles, CA, for Defendant.

**ORDER ON PLAINTIFF'S MOTION TO
REMAND AND DEFENDANT'S RULE 12(b) (3)
MOTION TO DISMISS**

ANTHONY W. ISHII, United States District Judge.
*1 This is a declaratory judgment action brought by
Plaintiff Kent Mahoney ("Mahoney") against DePuy
Orthopaedics ("DePuy"). Mahoney seeks an
injunction prohibiting DePuy from enforcing a non-
competition clause and a declaration that the non-
competition clause is void. The case was removed to
this Court from the Stanislaus County Superior Court
on the basis of diversity. Mahoney has filed a motion
to remand and DePuy has filed a Rule 12(b)(3)
motion to dismiss based on the violation of a forum
selection clause. For the reasons that follow,
Mahoney's motion to remand will be denied and
DePuy's motion to dismiss will be granted.

**_BACKGROUND_[FN1]**

> FN1. Both sides have submitted declarations
> and objections to parts of the declarations.
> Given the resolution of the pending motions,
> it is unnecessary to rule on most of these
> objections.

From the complaint, in October 2005, Mahoney and
DePuy entered into an independent contractor
agreement ("the Agreement") whereby Mahoney

would act as an independent sales representative for
DePuy's products in central California.[FN2] Complaint
at ¶ 5. Among its various clauses, the Agreement
contains a forum selection clause, a choice of law
clause, and a covenant not to compete. Complaint at
Exhibit A. The covenant not to compete post-
termination reads:

> FN2. Mahoney's precise sales territory is
> unknown to the Court. Since Mahoney
> resides in Modesto and Mahoney's regional
> manager was responsible for Northern and
> Central California, _see_ Coffaro Declaration
> at ¶ 3, the Court assumes Mahoney had a
> central California territory.

You agree that, if this Agreement is terminated for
any reason, that for a period of one(1) year after
termination of the Agreement, that you will not,
without DePuy's prior written consent, accept a
position with a competitor of DePuy, which
involves direct or indirect sales of competitive
products in the same Territory or sales to the same
accounts covered by the Agreement.
_Id._

The choice of law and forum selection clause reads:

We both agree that Indiana law shall govern and
interpret this appointment and the relationship
between the parties, that any and all jurisdiction
and/or venue for any claims or matters related to or
arising from this Agreement shall be [sic] reside in
the state and/or federal courts located in the state of
Indiana.

_Id._

In August 2007, Mahoney and DePuy agreed to
terminate the Agreement. Complaint at ¶ 9. On
August 9, 2007, DePuy sent Mahoney a letter
purporting to require Mahoney, in exchange for
DePuy's consent to terminate, to reaffirm all non-
compete provisions of the Agreement and to agree
not to sue DePuy for any claims arising out of or
related to the Agreement. _Id._ Mahoney refused to
sign or agree to these terms because he believed that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2007 WL 3341389 (E.D.Cal.)

(Cite as: 2007 WL 3341389 (E.D.Cal.))

Page 2

the terms were contrary to a prior agreement and to California law. *Id.*

Mahoney wishes to explore other opportunities within his profession, *see id.* at ¶ 11, and apparently is now employed or represents a competitor of DePuy. *See* Coffaro Declaration at ¶ 6. However, DePuy continues to insist that the Agreement's non-compete provisions are valid and remain in effect for one year after the Agreement's termination. *See* Complaint at ¶ 11.

Mahoney seeks a declaration that the non-competition clauses are void and invalid under California Business and Professions Code § 16600 and that Mahoney can terminate the Agreement at will. Mahoney also seeks an injunction under California Business and Professions Code § 17200 that prohibits DePuy from enforcing the non-competition clause and the provision of the Agreement that purports to restrict the ability to terminate the Agreement prior to a particular certain.

*2 Mahoney filed suit in state court and DePuy removed to this Court. DePuy filed a motion to dismiss based on the forum selection clause and alternatively requests transfer of this case to the Northern District of Indiana under 28 U.S.C. § 1406. Mahoney filed a motion to remand.

### 1. Motion To Remand

#### Plaintiff's Argument

Mahoney argues that the removal petition offers no specific facts, but merely asserts that DePuy will be damaged in excess of $75,000 and that DePuy stands to lose over $75,000. There is no factual support for these statements. DePuy must set forth facts and evidence to establish the jurisdictional amount and the conclusory allegations are insufficient. Further, the evidence submitted in opposition to the remand motion is largely inadmissible and irrelevant. DePuy relies heavily on gross sales, but that is an irrelevant consideration. Since DePuy has failed to present evidence that establishes by a preponderance of the evidence that the amount in controversy exceeds $75,000, the Court must remand this case.

#### Defendant's Opposition

DePuy argues that its allegations in its removal petition are specific and the evidence that it submitted shows that it is more likely than not, from both DePuy's viewpoint and Mahoney's viewpoint, that the amount in controversy exceeds $75,000. From January to November of 2006, Mahoney generated $3.86 million in sales and generated $2.34 million between December 2006 and August 2007. DePuy's profits exceed $75,000 during this time period. DePuy stands to lose these revenues and profits if Mahoney is allowed to be employed by competitors. From Mahoney's standpoint, his commissions for those respective time periods were $420,000 and $250,000. These figures show that the amount in controversy exceeds $75,000.

#### Notice of Removal

In pertinent part, the notice of removal reads:

> The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. To the extent that the sales representative agreement at issue in the State Court Action is declared unenforceable as prayed for in the Complaint, DePuy stands to lose in excess of $75,000. To the extent that Plaintiff ... is permitted to take to a competitor those accounts he serviced as a DePuy sales representative and wrongfully exploit those relationships he developed or enhanced using DePuy's resources in violation of his sales agreement with DePuy, DePuy will be damaged well in excess of $75,000 given the profits he generated for DePuy while he was a DePuy sales representative.

Court's Docket Doc. No. 1 at ¶ 15.

#### Declarations

DePuy has submitted several declarations in opposition to the remand motion. DePuy's regional manager for Central and Northern California, Peter Coffaro, declared in part:

> 3.... [M]y duties and responsibilities included oversight of DePuy's relationship with ... Mahoney and monitoring Mr. Mahoney's sales and performance for DePuy and the profits to DePuy

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
(Cite as: 2007 WL 3341389 (E.D.Cal.))

generated by DePuy's relationship with Mr. Mahoney.

*3 .......

5. The sales Mr. Mahoney generated for DePuy as a result of his sales representative relationship and the commissions he generated for himself as a result of that relationship both far exceeded $75,000 per year. Although DePuy's profit margin on those sales is confidential to DePuy (and thus, I cannot disclose that profit margin here in this public document), the profits generated to DePuy on those sales by Mr. Mahoney were well in excess of $75,000 per year.

Mahoney Declaration at ¶¶ 3, 5.[FN3]

> FN3. Mahoney objects to Paragraph 5 as lacking foundation, lacking personal knowledge, being hearsay, being irrelevant, and violating the best evidence rule. These objections are meritless and are overruled.

Michelle Rems, DePuy's Field Support Manager whose duties include administering payments of sales commissions, submitted copies of Mahoney's commission statements. Rems explained the commission statements in part as follow:

7. By way of example of the contents of the Statements, the Commission Statement for January 2006 details the following information:

(a) The first portion of the Commission Statement reflects Gross Sales for Orthopaedics and Gross Sales for Trauma ... with total gross sales ... totaling $315,113.02 of sales by Mr. Mahoney for the month of January 2006.

(b) The ... January 2006 Commission Statement reflects that Mr. Mahoney's Gross Commissions for January 2006 totaled $37,081.31. His Net Commissions, after adjustments were taken, totaled $36,281.31.

8. Cumulatively, Mr. Mahoney's Commission Statements for January 2006 through August 2007 ... reflect the following information:

(a) Mr. Mahoney generated in excess of $3.86 million in sales for DePuy between January 2006 and November 2006 and in excess of $2.37 million in sales for DePuy between December 2006 and August 2007.

(b) DePuy paid Mr. Mahoney in excess of $420,00 in commissions on his sales for DePuy between January 2006 and November 2006 and in excess of $250,000 in commissions on his sales for DePuy between December 2006 and August 2007.

October 12, 2007, Rems Declaration at ¶¶ 7-8.[FN4]

> FN4. Relying on a case from the Southern District of Texas, Mahoney objects to Paragraph 8(a) as being irrelevant. For the reasons explained *infra*, the Court disagrees and overrules the objection.

*Legal Standard: Remand and Jurisdiction In Equitable Relief Actions*

28 U.S.C. § 1441(a) reads in relevant part: "... any civil action brought in a State court of which the district courts of the United States have original jurisdiction may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending.""The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction."*Prize Frize Inc. v. Matrix Inc.*, 167 F.3d 1261, 1265 (9th Cir.1999); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988). In the removal petition, the defendant must set forth the underlying facts that support its assertion of jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir.2003)."Conclusory allegations as to the amount in controversy are insufficient."*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir.2003); *see also Gaus*, 980 F.2d at 567. If the defendant's "jurisdictional facts are challenged by his adversary in any appropriate manner, [the defendant] must support them by competent proof."*Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403 (9th Cir.1996); *Gaus*, 980 F.2d at 567. Where a complaint does not specify the amount of damages sought, the removing defendant must provide evidence that

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 4
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
(Cite as: 2007 WL 3341389 (E.D.Cal))

establishes by a preponderance of the evidence, i.e. it is "more likely than not," that the amount in controversy exceeds the jurisdictional minimum.*Abrego v. Dow Chem. Co., 443 F.3d 676, 683 (9th Cir.2006); Valdez, 372 F.3d at 1117;Gaus, 980 F.2d at 566-67.* There is a strong presumption against removal. *Gaus, 980 F.2d at 566;see also Abrego, 443 F.3d at 685.* If there is any doubt as to the right of removal in the first instance, "federal jurisdiction must be rejected." *Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir.1996); Gaus, 980 F.2d at 566.*

*4 The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations" of parties to a "case of actual controversy." *28 U.S.C. § 2201; Spokane Indian Tribe v. United States, 972 F.2d 1090, 1091 (9th Cir.1992).*"The purpose of [§ 2201] is to relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure-or never."*Spokane Indian Tribe, 972 F.2d at 1091-92.* "However, the Declaratory Judgment Act is not a jurisdictional statute" and "does not create subject matter jurisdiction where none otherwise exists," rather it "only creates a particular kind of remedy available in actions where the district court already has jurisdiction to entertain a suit."*Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir.1970); see also Clark v. Busey, 959 F.2d 808, 811 (9th Cir.1992).* Stated differently, in order to obtain declaratory relief in federal court, the basis for federal jurisdiction must be independent of the Declaratory Judgment Act itself. *See Stock West, Inc. v. Confederated Tribes of Colville Reservations, 873 F.2d 1221, 1225 (9th Cir.1989).*

Under *28 U.S.C. § 1332*, a district court has jurisdiction when the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs and is between citizens of different states. *28 U.S.C. § 1332(a).*"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."*Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); Cohn v. Petsmart, Inc., 282 F.3d 837, 840 (9th Cir.2002).* In non-class action cases, the amount in controversy may be met from the viewpoint of either the plaintiff or defendant, that is, "the value of the thing sought to be accomplished by

the action may relate to either or any party to the action."*In re Ford Motor Co., 264 F.3d 952, 958 (9th Cir.2001); Ridder Bros. v. Blethen, 142 F.2d 395, 399 (9th Cir.1944); see also Guglielmino v. McKee Foods Corp., 506 F.3d 696, 2007 U.S.App. LEXIS 23654, *13-*14, 2007 WL 2916193 (9th Cir.2007).* If a suit involves the enforcement of a covenant not to compete, courts "usually will look to the profits earned by the employer on business generated by the employee during the period immediately preceding his termination."*Mailwaukee Mailing, Shipment & Equip., Inc. v. Neopost, Inc., 259 F.Supp.2d 769, 773 (E.D.Wis.2003); Basicomputer Corp. v. Scott, 791 F.Supp. 1280, 1286 (N.D.Ohio 1991); Zimmer-Hatfield, Inc. v. Wolf, 843 F.Supp. 1089, 1091 (S.D.W.Va.1994);* C. Wright, A. Miller, & E. Cooper, 14B Federal Practice & Procedure § 3708 (Ed.1998) ("Wright & Miller"). Courts have also examined the revenues generated by an employee and the revenues lost by the employer in determining whether the jurisdictional minimum has been met. *See Basicomputer Corp. v. Scott, 973 F.2d 507, 510 (6th Cir.1992); Premier Industrial Corp. v. Texas Industrial Fastener Co., 450 F.2d 444, 446-47 (5th Cir.1971); Robert Half Int'l, Inc. v. Van Steenis, 784 F.Supp. 1263, 1265-66 (E.D.Mich.1991); Basicomputer, 791 F.Supp. at 1286;cf. USAchem, Inc. v. Goldstein, 512 F.2d 163, 170 (2d Cir.1975)* (relying on "volume of sales involved").

*Resolution*

*5 Initially, it is unnecessary to decide whether DePuy's removal petition was conclusory and insufficient. The factual basis for removal has been called into question by Mahoney and DePuy has provided evidence in support of its jurisdictional amount assertions. *See Gaus,* 980 F.2d at 966-67. Evidence submitted in opposition to a motion to remand may properly be treated as an amendment to the original removal petition. *See Cohn,* 281 F.3d at 840 n. 1. Assuming that the petition was deficient, the evidence submitted in the opposition to remand will be viewed as an amendment that cures any such defect.

As for the substance of the remand motion, the Court agrees with DePuy. The revenues generated by Mahoney and the commissions paid to Mahoney are substantial and well in excess of $75,000. It is true that the precise amount of lost profits has not been

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                          Page 5
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
(Cite as: 2007 WL 3341389 (E.D.Cal.))

established by DePuy. However, Peter Coffaro has declared that the profits generated by Mahoney were in excess of $75,000 per year. *See* Coffaro Declaration at ¶ 5. This declaration is significantly bolstered by the sales/revenues that were generated by Mahoney. There is no dispute that Mahoney generated over $6 million in revenues between January 2006 and August 2007 for DePuy. *See* October 12, 2007, Rems Declaration at ¶¶ 7-8. It is unlikely that DePuy's profit on these revenues would be equal to or less than $75,000 in light of the approximately $3.9 million and $2.4 million sales revenues generated by Mahoney.[FN5]

> FN5. The Court notes that there is a distinction between revenues and profits. "Revenue" is "gross income or receipts." Black's Law Dictionary 1344 (8th ed.2004). "Profit" is "the excess of revenues over expenditures in a business transaction: gain."*Id.* at 1246.

Mahoney's primary argument is that the precise amount of profits have not been established and that the evidence of gross sales is irrelevant under *Zep Mfg. Corp. v. Haber,* 202 F.Supp. 847, 848 (S.D.Tex.1962).*Zep* was a suit for equitable relief and enforcement of a covenant not to compete. *See Zep,* 202 F.Supp. at 847. The *Zep* court applied a plaintiff's viewpoint test for determining the amount in controversy, concluded that gross income generated by the defendant for the plaintiff ($115,000) was "a neutral fact insofar as it does not reflect true benefit to the plaintiff from defendant's services," and believed that the evidence of profits generated by the defendant reflected the true benefit to the plaintiff. *See id.* at 848-49.This Court does not believe that *Zep* aides Mahoney. First, *Zep* held that the gross sales figure was a neutral fact, and the only evidence concerning the plaintiff's profit showed that the profit ($3,300) was well short of the $10,000 then-existing jurisdictional minimum. *See id.*Here, Coffaro's declaration states that DePuy's profits on Mahoney's sales exceeded $75,000 per year, and there is no evidence that suggests that DePuy's profits were less than $75,000. Additionally, the exact amount of DePuy's profit is not revealed, but the over $6 million in gross sales/revenues generated by Mahoney clearly supports and gives further meaning to Coffaro's sworn assertion concerning DePuy's profits. Because of this "buttressing effect," the Court

believes that gross sales/revenues is not simply a "neutral fact" in this case. Finally, other courts have examined the sales/revenues generated by an employee in finding that a jurisdictional amount was met. *See Basicomputer,* 973 F.2d at 510;*Robert Half,* 784 F.Supp. at 1265-66;*cf. USAchem,* 512 F.2d at 170 (examining sales volume involved); *Premier,* 450 F.2d at 446-47 (noting that lost sales revenues may serves as the figure for the amount in controversy in an equitable action involving a non-compete clause). To the extent that *Zep* may hold that gross sales/revenues are irrelevant when examining the value of a non-competition clause, this Court disagrees and will not follow that holding.

*6 The Coffaro and Rems declarations show that Mahoney generated over $6 million in sales revenues from January 2006 to August 2007, and that Mahoney generated profits in excess of $75,000 per year for DePuy in 2006 and 2007. This evidence sufficiently shows that it is more likely than not that the amount in controversy exceeds $75,000. *See Valdez,* 372 F.3d at 1117;*Gaus,* 980 F.2d at 566-67;*Basicomputer,* 973 F.2d at 510;*USAchem,* 512 F.2d at 170;*Mailwaukee Mailing,* 259 F.Supp.2d at 773;*Zimmer-Hatfield,* 843 F.Supp. at 1091;*Basicomputer,* 791 F.Supp. at 1286;*Robert Half,* 784 F.Supp. at 1265-66;14B Wright & Miller § 3708. This Court has diversity jurisdiction over this case, and remand is inappropriate.

**2. Rule 12(b)(3) Motion to Dismiss**

*Defendant's Argument*

DePuy argues that the forum selection clause is valid and should be enforced. Courts routinely honor mandatory forum selection clauses, including federal California courts, and the language of this clause designates Indiana as the mandatory forum. Mahoney's focus on the alleged invalidity of other clauses does not invalidate the forum selection clause. Further, there is no indication that Indiana courts cannot address choice of law issues or the covenant not to compete. Since Mahoney filed suit in an improper venue, the complaint should be dismissed or alternatively transferred to the Northern District of Indiana.

*Plaintiff's Opposition*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
(Cite as: 2007 WL 3341389 (E.D.Cal.))

Page 6

Mahoney argues that the forum selection clause is contrary to the strong California public policy against contractual provisions that restrain competition. Indiana law also does not favor restrictive covenants, but such covenants may nevertheless be enforced under certain circumstances. California courts routinely apply California law when dealing with non-competition clauses, even in the face of a choice of law provision that adopts the law of a different state. Since California law applies to the interpretation of the Agreement and California has a strong public policy against competition restricting covenants, the forum selection clause should not be enforced.

Additionally, DePuy inserted the forum selection clause into the contract as a bad faith tactic to discourage litigation and was aware of California's contrary law regarding non-competition clauses. DePuy's bad faith makes enforcing the forum selection clause fundamentally unfair.

Further, the factors associated with *forum non conveniens* counsel against enforcing the forum selection clause. The Agreement was executed and performed in California, all acts relevant to this dispute occurred in California, all witnesses to the relevant acts are in California, Mahoney has never been to Indiana, and California law governs the agreement. All but one of the nine considerations for deciding a *forum non conveniens* motion that were identified by the Ninth Circuit weigh in favor of California as the more convenient venue. If the court transfers the case to the Northern District of Indiana, then Mahoney will move to transfer the case back to California under 28 U.S.C. § 1404, which will result in unnecessary expenditures of judicial resources.

*7 Finally, DePuy has a history of selectively enforcing its forum selection clauses. In one lawsuit, it filed suit in Indiana against two former employees, despite a forum selection clause that identified New Jersey as the appropriate forum. *See* Request for Judicial Notice Exhibit A.

*Forum Selection Clauses*

Federal courts sitting in diversity apply federal law to determine the effect and scope of a forum selection clause. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 497 (9th Cir.2000); *Manetti-Farrow, Inc. v.*

*Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir.1988)."The rule set forth by the Supreme Court in *M/S Bremen v. Zapata Off-Shore Co.* controls the consideration of a motion to dismiss for improper venue based upon a forum selection clause."*Jones,* 211 F.3d at 497;*Manetti-Farrow,* 858 F.2d at 513. Accordingly, forum selection clauses are presumptively valid and the party challenging the clause "bears a heavy burden of proof" and "must clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching."*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 12-15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Murphy v. Schneider National, Inc.,* 362 F.3d 1133, 1140 (9th Cir.2003); *Manetti-Farrow,* 858 F.2d at 514. To establish the unreasonableness of a forum selection clause, the party opposing enforcement of the clause "has the heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively would be denied a meaningful day in court."*Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 325 (9th Cir.1996); *Manetti-Farrow,* 858 F.2d at 515;*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.,* 741 F.2d 273, 280 (9th Cir.1984). Enforcement of a forum selection clause may be unreasonable if:

(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; or (3) if enforcement would contravene a strong public policy of the forum in which the suit is brought.

*Murphy,* 362 F.3d at 1140;*see also M/S Bremen,* 407 U.S. at 12-18;*Jones,* 211 F.3d at 497;*Argueta,* 87 F.3d at 325. "Overreaching" is a ground "short of fraud," and a mere showing of "non-negotiability and power difference" does not render a forum selection clause unenforceable. *Murphy,* 362 F.3d at 1141;*E.J. Gallo Winery v. Andina Licores S.A.,* 440 F.Supp.2d 1115, 1126 (E.D.Cal.2006). A party seeking to avoid enforcement of the forum selection clause under the first exception must show that the inclusion of the clause itself into the agreement was improper; it is insufficient to allege that the agreement as a whole was improperly procured. *See Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Batchelder v. Nobuhiko*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                              Page 7
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
(Cite as: 2007 WL 3341389 (E.D.Cal.))

*Kawamoto, 147 F.3d 915, 919 (9th Cir.1998).* In considering the second exception, courts may consider, *inter alia,* a party's financial ability to litigate in the forum selected by the contract. *Murphy, 362 F.3d at 1141-42* (citing *Spradlin v. Lear Siegler Mgmt. Services Co., 926 F.2d 865, 869 (9th Cir.1991)).* However, because of the greater burden of showing that enforcement of a forum selection clause would effectively deprive a party of his day in court, reliance on a traditional *forum non conveniens* balancing analysis will not be persuasive. *Pelleport Investors, 741 F.2d at 280.*

*8 A forum selection clause will be enforced where venue is specified through mandatory language. *Docksider, Ltd. v. Sea Technology, Ltd., 875 F.2d 762, 764 (9th Cir.1989).* If the language of the forum selection clause is non-mandatory, then the forum selection clause will not preclude suit elsewhere. *Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir.1987).*

*Discussion*

Initially, there is no dispute that the forum selection clause in this case is a mandatory clause. *See Docksider, 875 F.2d at 764.* Further, there is no dispute that this suit falls within the scope of the forum selection clause. *See Manetti-Farrow, 858 F.2d at 514.* Thus, the forum selection clause is presumptively valid and Indiana is the presumptively proper venue for this suit. Mahoney has the heavy burden of showing that enforcement of the clause is unreasonable. *See Murphy, 362 F.3d at 1140.*

With respect to Mahoney's argument that enforcing the forum selection clause would violate California's strong public policy against non-competition clauses, the Court disagrees. Mahoney never directly addresses the forum selection clause itself. Instead, Mahoney speculates as to how an Indiana court may or may not rule on the Agreement's choice of law clause and covenant not to compete. This type of indirect attack on a forum selection clause has been rejected by this and other courts. *See Swenson v. T-Mobile United States, Inc., 415 F.Supp.2d 1101, 1104-05 (S.D.Cal.2006); Multimin USA, Inc. v. Walco Int'l, Inc., 2006 U.S. Dist. LEXIS 33624, *17-*18, 2006 WL 1046964 (E.D.Cal.2006); Manchester v. Arista Records, Inc., 1981 U.S. Dist. LEXIS 18642, *15-*17 (C.D.Cal.1981); see also Ingenieria*

*Alimentaria Del Matatipac, S.A. v. Ocean Garden Prods., Inc., 2007 U.S. Dist. LEXIS 40015, *12, 2007 WL 918601 (S.D.Cal.2007).*"The forum selection clause determines where the case will be heard. It is separate and distinct from choice of law provisions that are not before the court."*Multimin USA, 2006 U.S. Dist. LEXIS 33624 at *17, 2006 WL 1046964.*The "question is not whether the application of the forum's law would violate the policy of the other party's state, but rather, whether enforcement of the forum selection agreement would violate the policy of the other party's state as to the forum for litigation of the dispute."*Swenson, 415 F.Supp.2d at 1105.* Importantly, there is no indication that Indiana courts will not or cannot entertain Mahoney's choice of law arguments or that they cannot apply California law if it is determined that California law governs. *Cf. Swenson, 415 F.Supp.2d at 1104* (noting that plaintiffs could and did make choice of law arguments to Washington state court); *Multimin USA, 2006 U.S. Dist. LEXIS 33624 at *17-*18, 2006 WL 1046964* (noting that plaintiff had not shown that it could not present claims and arguments to Texas courts). Any notion that Indiana courts will not safeguard Mahoney's rights is "speculative" and reflects a "provincial attitude" towards the Indiana courts. *Mannetti-Farrow, 858 F.2d at 515.* Mahoney has not met his heavy burden of showing that enforcement of the forum selection clause would violate a strong California public policy or deprive him of his day in court. *See Swenson, 415 F.Supp.2d at 1104-05;Multimin USA, 2006 U.S. Dist. LEXIS 33624 at *17-*18, 2006 WL 1046964.*

*9 As for Mahoney's argument that the forum selection clause was inserted as a bad faith tactic to discourage legitimate claims, Mahoney provides no evidence in support of this argument. DePuy is incorporated and has its principal place of business in Indiana, *see* Court's Docket Doc. No. 1 at 2:22-25, and the largest concentration of its employees (over 1000 out of 2,028 total) is in Indiana. *See* October 19, 2007, Rems Declaration at ¶ 3. It is neither surprising nor unreasonable that DePuy prefers and contracts to be sued in Indiana. Given that forum selection clauses are presumptively valid, *see Murphy, 362 F.3d at 1140,* the mere presence of a forum selection clause in a contract without more is not bad faith. Mahoney's bare assertion of bad faith is far from sufficient to meet his heavy burden.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 3341389 (E.D.Cal.)
(Cite as: 2007 WL 3341389 (E.D.Cal.))

Page 8

With respect to Mahoney's *forum non conveniens* argument under 28 U.S.C. § 1404 and his pledge to file such a motion in an Indiana court, these considerations are not persuasive. First, the Ninth Circuit has rejected reliance on the traditional *forum non conveniens* balancing test when deciding whether to enforce a forum selection clause. *Pelleport Investors, 741 F.2d at 280*. Second, although the Ninth Circuit has examined the hardship caused to a litigant from enforcing a forum selection clause, *see Murphy, 362 F.3d at 1141-42*, Mahoney has presented no evidence regarding any hardships or inconveniences from litigating in Indiana, let alone hardships that would deprive him of his day in court. *Cf.* Mahoney Declaration *with Murphy, 362 F.3d at 1141-42;Pelleport Investors, 741 F.2d at 280*. Finally, assuming that Mahoney does file a motion to transfer in the Northern District of Indiana under 28 U.S.C. § 1404, it is speculative what the Indiana court may do. Considering the nature of this lawsuit and DePuy's reply brief, it is not certain whether the Indiana court would grant a § 1404 motion. For example, it is not clear at this point that California law applies, it is not clear that Indiana has no ties to this dispute, there is a forum selection clause, and since this declaratory judgment action is about the legal question of the validity or invalidity of contractual clauses, it is unclear what witnesses are really necessary. How another court may or may not decide a subsequent 28 U.S.C. § 1404 motion does not justify the Court refusing to enforce the forum selection clause.[FN6]Mahoney has not shown that he will be deprived of his day in court if forced to litigate in Indiana.

> FN6. Mahoney cites *United Rentals, Inc. v. Pruett,* 296 F.Supp.2d 220 (D.Conn.2003), as an example of a similar case that transferred an action from Connecticut to California notwithstanding a forum selection clause that designated Connecticut as the proper forum. However, in *United Rentals,* the court first addressed a Rule 12(b)(3) and 28 U.S.C. § 1406 argument and held that the forum selection clause defeated those motions. *See id.* at 228.The *United Rentals* court then addressed the alternative motion for transfer under 28 U.S.C. § 1404. *See id.* at 223, 228.In contrast, there is no 28 U.S.C. § 1404 motion before this Court. Again, how an Indiana court will view or rule on a 28 U.S.C. § 1404 motion is too speculative

to influence the rulings in this case; *United Rentals* does not help Mahoney here.

Finally, as to Mahoney's argument that DePuy selectively enforces forum selection clauses, this argument is frivolous. Mahoney's argument is based on one, unrelated action filed by DePuy in 2007 in Indiana. That lawsuit contained a permissive forum selection clause for New Jersey and was against an Indiana corporation, an individual citizen of Indiana, and an individual citizen of Mississippi. *See* Mahoney Request for Judicial Notice Exhibit A. This Court does not know why DePuy chose to file suit in Indiana instead of New Jersey in that case, although it could be that the forum selection clause was not mandatory or that DePuy and two of the three defendants are located in Indiana and that Indiana and New Jersey are equally inconvenient for the Mississippi resident. The fact of the matter is that the events of a completely unrelated case are irrelevant to DePuy exercising the contractual rights it has with Mahoney in this case.[FN7]The wholly unrelated Indiana case identified by Mahoney is no ground for refusing to enforce the forum selection clause in this case.

> FN7. Mahoney requests that the Court take judicial notice of the Indiana case. Although it is generally appropriate to take judicial notice of public documents, because the Indiana case is irrelevant to this motion, the Court declines to take judicial notice.

**\*10** Mahoney has a heavy burden in showing that enforcement of selection of a forum selection clause is unreasonable. Mahoney has not shown fraud or overreaching, that enforcing the forum selection clause would violate a strong California public policy, or that enforcing the forum selection clause would be fundamentally unfair. There is insufficient evidence to indicate that Indiana courts cannot or will not be able to resolve and address the issues in this case, and Mahoney has not shown that enforcement of the forum selection clause will deny him his day in court. The proper venue for this case is Indiana-it is not the Eastern District of California. *See Murphy, 362 F.3d at 1140;Manetti-Farrow, 858 F.2d at 514-15;Pelleport Investors, 741 F.2d at 280;Swenson, 415 F.Supp.2d at 1104-05;Multimin USA, 2006 U.S. Dist. LEXIS 33624 at \*17-\*18, 2006 WL 1046964.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Where venue is improper, the district court has the discretion to dismiss the case or transfer the case, if it is in the interests of justice, to an appropriate jurisdiction under 28 U.S.C. § 1406(a).*See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir.1993); King v. Russell, 963 F.2d 1301, 1304 (9th Cir.1992); Cook v. Fox, 537 F.2d 370, 371 (9th Cir.1976); Citizens For A Better Environment v. Union Oil Co., 861 F.Supp. 889, 897 (N.D.Cal.1994). Here, DePuy's motion in the main requests dismissal. There does not appear to be any statute of limitations issue, and Mahoney does not argue that the Court should transfer this case or argue that the interests of justice require transfer. Mahoney did argue *forum non conveniens* considerations and that, if the case was transferred, he would file a motion to transfer back to the Eastern District of California under 28 U.S.C. § 1404. Mahoney also filed a motion to remand and has consistently argued only that DePuy's motion should be denied. In light of the above, the Court will dismiss this case without prejudice to refiling in a state or federal court in Indiana.

### CONCLUSION

There are two motions before the Court. With respect to Mahoney's motion to remand, the evidence submitted shows that Mahoney generated sales/revenues of over $6 million from January 2006 to August 2007, and generated over $75,000 in profit per year for DePuy. The evidence submitted by DePuy corrects any deficiencies in the removal petition and also establishes that it is more likely than not that the amount in controversy in this case exceeds $75,000. Accordingly, Mahoney's motion to remand will be denied.

With respect to DePuy's Rule 12(b)(3) motion, this case fits within the coverage of the forum selection clause and the forum selection clause contains mandatory language that identifies the state and federal courts of Indiana as the proper venue for this action. Mahoney has a heavy burden of showing that enforcement of the forum selection clause would be unreasonable. However, Mahoney has failed to show that the forum selection clause was a product of fraud or overreaching, that enforcement of the forum selection clause would contravene a strong California public policy, or that enforcing the forum selection clause would effectively deny him his day in court. Indiana is therefore the proper venue for this case.

Although the Court has discretion, in light of the filings of the parties, the Court will not transfer this case, but will instead dismiss.

*11 Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to remand is DENIED;

2. Defendant's Rule 12(b)(3) motion to dismiss is GRANTED and this case is DISMISSED without prejudice to refiling in either the state or federal courts for the state of Indiana; and

3. The Clerk is directed to CLOSE this case.

IT IS SO ORDERED.

E.D.Cal.,2007.
Mahoney v. Depuy Orthopaedics, Inc.
Slip Copy, 2007 WL 3341389 (E.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT E



Larkin Hoffman Daly & Lindgren Ltd.

1500 Wells Fargo Plaza
7900 Xerxes Avenue South
Minneapolis, Minnesota 55431-1194

GENERAL: 952-835-3800
FAX:      952-896-3333
WEB:      www.larkinhoffman.com

July 7, 2008

Brock Peterson
Case Coordinator
National Arbitration Forum
P.O. Box 50191
Minneapolis, MN  55405-0191

Re:   *The Bergquist Company v. Michel Gelinas*
      File No.:  MX0802002048690

Dear Mr. Peterson:

In connection with certain pending judicial proceedings, the Respondent has questioned the amount in controversy in this arbitration proceeding.  In our letter dated March 11, 2008, we paid an additional filing fee and stated the amount in controversy to be $75,000.

As you know, the NAF's Rules and filing fees include all matters in the range of $75,000 and greater in a single category.  To be clear, The Bergquist Company claims an amount in excess of $75,000 in this proceeding.

Sincerely,

Bruce J. Douglas, for
Larkin Hoffman Daly & Lindgren Ltd.

1208962.1

1  Richard Osen (SBN 042566)
   Ann Taylor Schwing (SBN 91914)
2  Julie A. Raney (SBN 176060)
   McDONOUGH HOLLAND & ALLEN PC
3  Attorneys at Law
   555 Capitol Mall, 9th Floor
4  Sacramento, CA  95814
   Phone: 916.444.3900
5  Fax:    916.444.8334

6  Bruce J. Douglas (Pro Hac Vice, SBN 23966MN)
   Willow J. Najjar (Pro Hac Vice, SBN 320948MN)
7  LARKIN HOFFMAN DALY & LINDGREN Ltd.
   1500 Wells Fargo Plaza
8  7900 Xerxes Avenue South
   Minneapolis, MN 55431-1194
9  Phone: 952.896.1569
   Fax:    952.842.1717
10

11  Attorneys for Defendant THE BERGQUIST COMPANY

12                  UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14  MICHEL GELINAS,                    )   NO. 08-CV-02137 (PVT)
                                       )
15                  Plaintiff,         )
                                       )   **DECLARATION OF GEORGE LUCIA**
16      v.                             )
                                       )   **DATE:      JULY 29, 2008**
17  THE BERGQUIST COMPANY,             )   **TIME:      10:00 A.M.**
                                       )   **DEPT:      COURTROOM 4TH FL.**
18                  Defendant.         )
                                       )
19  ─────────────────────────────────

20      George Lucia declares as follows:

21      1.      I am employed by the Defendant, The Bergquist Company ("Bergquist"), as its Senior

22  Vice President and General Manager, Thermal Products.  I have held this position since May 26,

23  2007.  I have, however, been employed by the Bergquist Company since January 22, 2001.

24      2.      I am at least 18 years of age and under no disability.  I make this Declaration based

25  upon my personal knowledge, except where I may state a matter upon information and belief.

26      3.      During his employment with The Bergquist Company, Michel Gelinas served as the

27  Regional Sales Manager (Western Region) engaged in the solicitation of customers, and the sale of

28  Bergquist thermal management products.

4.    The Bergquist Company is a manufacturer of, among other things, thermal management products.

5.    Mr. Gelinas's current employer, Laird Technologies, is a direct competitor of The Bergquist Company and also sells thermal management products.

6.    Based upon information that I have learned from sales persons who report to me, Mr. Gelinas is employed by Laird Technologies and is engaged in selling thermal products in a territory which I believe to be the western half of the United States (west of the Mississippi).

7.    When he was employed by The Bergquist Company, Mr. Gelinas reported to Mr. Gene Montgomery, Director of Sales Americas.  Mr. Gelinas also performed services at The Bergquist Company's headquarters in Chanhassen, where he came for meetings on approximately a quarterly basis.

8.    During his employment, Mr. Gelinas participated in the servicing of various accounts, including Apple, Cisco, ATI, and Nvidia.

9.    Mr. Gelinas also participated in our efforts to attract additional business from Microsoft Corporation as a customer, and Mr. Gelinas was the principal account manager for that account.  Mr. Gelinas spent approximately 20 to 25 percent of his time servicing the Microsoft Corporation account and he controlled access to that client tightly.

10.    While Mr. Gelinas was employed with The Bergquist Company, he expressed disagreement with the structure of Bergquist's sales group, and he refused to allow others, most notably the Business Development Manager, access to the Microsoft Corporation account.

11.    During his employment with The Bergquist Company, Mr. Gelinas participated in the generation of substantial revenue, in excess of $1 million annually to The Bergquist Company from the Microsoft account.  The net revenue or gross profit on those sales was in excess of $100,000 annually.

12.    In October 23, 2007, Mr. Gelinas and The Bergquist Company agreed to part ways and memorialized that agreement in a Separation Agreement.

/ / /

/ / /

13.    Upon his departure, Mr. Gelinas became an employee of a competitor, Laird Technologies.  Mr. Gelinas moved to Laird Technologies the Microsoft business relationship that he had developed for Bergquist.

14.    Under the terms of the Incentive Compensation Program applicable to Mr. Gelinas, if he had remained an employee of the Company and satisfied the other terms and conditions of the program, he could have been eligible for an additional bonus or commission on sales made by him during the period October 30, 2006 through October 26, 2007.

15.    However, the Incentive Compensation Program for The Bergquist Company's sale personnel, which in my experience is not unusual, is that a sales person must be employed on the date that commissions or bonuses are to be paid.  No exceptions to this policy were made for the Incentive Compensation Program applicable to Mr. Gelinas.

16.    In Mr. Gelinas's case, he was not employed on the date commissions or bonuses were to be paid because his employment had terminated.

17.    However, although Mr. Gelinas was not eligible for commissions or bonuses under the Incentive Compensation Program, we provided  him with a Separation Agreement that, in exchange for a release of claims against the Company and other consideration, would provide him with a payment equivalent to the additional bonus or compensation that he would have received had he remained an employee.  Mr. Gelinas accepted this offer and signed the agreement.  The Bergquist Company paid Mr. Gelinas the monetary consideration provided for in the Separation Agreement.

18.    Mr. Gelinas has violated his Separation Agreement and his Non-Competition Agreement by entering into employment or another type of work relationship with Laird Technologies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 8, 2008 at Chanhassen, Minnesota.


                                    /s/ George Lucia
                                    George Lucia



1  Richard Osen (SBN 042566)
   Ann Taylor Schwing (SBN 91914)
2  Julie A. Raney (SBN 176060)
   McDONOUGH HOLLAND & ALLEN PC
3  Attorneys at Law
   555 Capitol Mall, 9th Floor
4  Sacramento, CA  95814
   Phone: 916.444.3900
5  Fax:    916.444.3249

6  Bruce J. Douglas (Pro Hac Vice, SBN 23966MN)
   Willow J. Najjar (Pro Hac Vice, SBN 320948MN)
7  LARKIN HOFFMAN DALY & LINDGREN Ltd.
   1500 Wells Fargo Plaza
8  7900 Xerxes Avenue South
   Minneapolis, MN 55431-1194
9  Phone: 952.896.1569
   Fax:    952.842.1717
10
   Attorneys for Defendant THE BERGQUIST COMPANY
11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14  MICHEL GELINAS,                    )   NO. 08-CV-02137 (PVT)
                                       )
15                Plaintiff,           )
                                       )   **DECLARATION OF JOHN CAMP**
16       v.                            )
                                       )   **DATE:      JULY 29, 2008**
17  THE BERGQUIST COMPANY,             )   **TIME:      10:00 A.M.**
                                       )   **DEPT:      COURTROOM 4TH FL.**
18                Defendant.           )
                                       )
19  _____)

20       John Camp declares as follows:

21       1.    I am employed by the Defendant, The Bergquist Company ("Bergquist"), as its Vice

22  President of Human Resources.  I have held this position since November 18, 2003.

23       2.    I am at least 18 years of age and under no disability.  I make this Declaration based

24  upon my personal knowledge, except where I may state a matter upon information and belief.

25       3.    It is the practice of Bergquist to require all employees to sign a confidentiality

26  agreement at the time they are hired.

27       4.    It is the practice of the Human Resources Department of Bergquist to inform

28  specifically candidates for employment with Bergquist that they will be required to sign a

**MHA**
cDonough Holland & Allen PC
Attorneys at Law

Confidentiality Agreement and/or a Non-Competition Agreement, depending upon the position for which they have applied or for which they would be hired.

5.    It is the practice of the Human Resources Department of Bergquist and the particular hiring manager to communicate Bergquist's requirement of a Confidentiality Agreement and/or a Non-Competition Agreement either verbally or in writing during the pre-hire interview and application process.

6.    Based upon my review of The Bergquist Company's personnel records regarding Plaintiff Michel Gelinas, this practice was followed, and it is apparent that Mr. Gelinas was informed prior to the commencement of his employment that he would be required to sign a Non-Competition Agreement and Confidentiality Agreement.

7.    It appears that Mr. Gelinas signed and dated his Non-Competition Agreement on April 27, 2004.  His employment did not begin with Bergquist until approximately one week later on or about May 3, 2004.

8.    When Mr. Gelinas and The Bergquist Company agreed that his employment with Bergquist would be terminated, he requested that he be paid a portion or all of an estimated payment to which he might have been eligible to receive had his employment continued.

9.    As an accommodation to Mr. Gelinas, and in consideration of his agreement to sign the Separation Agreement and General Release of Claims against The Bergquist Company, Bergquist agreed to pay, and in fact has paid, to Mr. Gelinas the bonus payment as he requested.

10.    Mr. Gelinas has violated his Separation Agreement and his Non-Competition Agreement by entering into employment or another type of work relationship with Laird Technologies.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 8, 2008 at Chanhassen, Minnesota.

_____/s/John Camp_____
John Camp

